**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

CHRIS BROWN, ALLEN MAYVILLE; PRIME PROTECTION STL, LLC D/B/A PRIME PROTECTION STL TACTICAL BOUTIQUE; NATIONAL RIFLE ASSOCIATION OF AMERICA; FIREARMS POLICY COALITION, INC.; SECOND AMENDMENT FOUNDATION; and AMERICAN SUPPRESSOR ASSOCIATION,

*Plaintiffs*,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; DANIEL P. DRISCOLL, in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; UNITED STATES DEPARTMENT OF JUSTICE; and PAMELA J. BONDI, in her official capacity as Attorney General of the United States,

*Defendants*.

No. 4:25-cv-1162

**[PROPOSED]**
**BRIEF OF *AMICI CURIAE***
**THE STATES OF KANSAS, ALABAMA, ALASKA, ARKANSAS, FLORIDA, GEORGIA, IDAHO, INDIANA, IOWA, LOUISIANA, MISSOURI, MONTANA, NEBRASKA, NORTH DAKOTA, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, TEXAS, UTAH, WEST VIRGINIA, AND WYOMING AND THE ARIZONA LEGISLATURE**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**INTRODUCTION AND INTEREST OF *AMICI CURIAE*** .................................... 1

**ARGUMENT** ........................................................................................ 3

**(1) The Challenged Provisions Fail The Substantial-Effects Test Because They Were Not Enacted With The Purpose Of Regulating Interstate Commerce.** ........................................................................ 4

**(2) The Challenged Provisions Fail The Substantial-Effects Test Under *Morrison*.** ........................................................................ 5

**i. Economic Activity** ........................................................................ 6

**ii. Jurisdictional Element** ........................................................................ 9

**iii. Congressional Findings** ........................................................................ 10

**iv. Attenuation** ........................................................................ 10

**v. Implications For Federal Power** ........................................................ 11

**CONCLUSION** ........................................................................................ 13

**ADDITIONAL SIGNATORIES** ........................................................................ 14

**CERTIFICATE OF SERVICE** ........................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Bond v. United States*,
572 U.S. 844 (2014) .......... 8

*California v. Texas*,
593 U.S. 659 (2021) .......... 2

*Gibbons v. Ogden*,
22 U.S. 1 (1824) .......... 3

*Gonzales v. Raich*,
545 U.S. 1 (2005) .......... 7, 8

*Hughes v. Oklahoma*,
441 U.S. 322 (1979) .......... 10

*Nat'l Fed. of Indep. Bus. v. Sebelius*,
567 U.S. 519 (2012) .......... 2, 6, 12

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) .......... 2

*Sonzinsky v. United States*,
300 U.S. 506 (1937) .......... 1, 2, 4, 10

*Tex. Top Cop Shop, Inc. v. Garland*,
758 F. Supp. 3d 607 (E.D. Tex. 2024) .......... 7

*Texas v. United States*,
945 F.3d 355 (5th Cir. 2019) .......... 2

*United States v. Bird*,
124 F.3d 667 (5th Cir. 1997) .......... 5

*United States v. Crenshaw*,
359 F.3d 977 (8th Cir. 2023) .......... 5

*United States v. Hall*,
171 F.3d 1133 (8th Cir. 1999) .......... 4, 6, 7, 9, 10

*United States v. Kagama*,
118 U.S. 375 (1886) .......... 9

*United States v. Lopez*,
514 U.S. 549 (1995) .................................................. 3, 4, 5, 6, 7, 8, 9, 10, 11

*United States v. McKee*,
68 F.4th 1100 (8th Cir. 2023) .................................................. 5

*United States v. Morrison*,
529 U.S. 598 (2000) .................................................. 3, 4, 5, 6, 12

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 1 .................................................. 1

U.S. Const. art. I, § 8, cl. 3 .................................................. 3

**Statutes and Regulations**

Pub. L. No. 119-21, 139 Stat. 72 (2025) .................................................. 1

26 U.S.C. § 5812 .................................................. 6, 7, 11

26 U.S.C. § 5841 .................................................. 6, 7

26 U.S.C. § 5861 .................................................. 6, 7, 11

27 C.F.R. § 479.84 .................................................. 7, 11

27 C.F.R. § 479.62 .................................................. 7

## INTRODUCTION AND INTEREST OF *AMICI CURIAE*

*Amici curiae*—the States of Kansas, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Louisiana, Missouri, Montana, Nebraska, North Dakota, Oklahoma, South Carolina, South Dakota, Texas, Utah, West Virginia, and Wyoming and the Arizona Legislature—have a bedrock interest in protecting their authority under the Constitution. And they have a strong interest in protecting the Second Amendment rights of their citizens, which includes defending them from unconstitutional federal registration requirements and criminal penalties.

Until 1934, when Congress enacted the National Firearms Act (NFA), there was no significant regulation of firearms commerce in the United States. The NFA required any owner, maker, or seller of short-barreled firearms and silencers ("NFA firearms") to register with the federal government or face felony criminal charges. Congress chose to structure the NFA as a tax pursuant to its authority to "lay and collect Taxes." *See* U.S. Const. art. I, § 8, cl. 1. Each registrant would therefore be required to pay a tax concurrent with registration. Shortly after its passage, the Supreme Court upheld the NFA as "only a taxing measure." *Sonzinsky v. United States*, 300 U.S. 506, 513 (1937).

Earlier this year, in the One Big Beautiful Bill Act (OBBBA), Congress eliminated the NFA's tax on short-barreled shotguns, short-barreled rifles, silencers, and a class of firearms called "any other weapon." Pub. L. No. 119-21, § 70436, 139 Stat. 72, 247–48 (2025). OBBBA did not, however, remove the onerous regulatory requirements on the possession, transfer, and making of these now

*untaxed* NFA firearms—the same provisions the Supreme Court once upheld only "as in aid of a revenue purpose." *Sonzinsky*, 300 U.S. at 513.

The remaining NFA requirements, detached from their tax justification, are now without a constitutional leg on which to stand. Congress cannot use its taxing power to sustain a statute that does not collect a tax. *See Nat'l Fed. of Indep. Bus. v. Sebelius*, 567 U.S. 519, 558 (2012); *Texas v. United States*, 945 F.3d 355, 390 (5th Cir. 2019), *rev'd on other grounds*, *California v. Texas*, 593 U.S. 659 (2021). The NFA is thus unconstitutional as applied to firearms that it does not tax. As the Supreme Court recognized, the NFA is "only a taxing measure," and courts may "not … ascribe to Congress an attempt … to exercise another power" to sustain the act. *Sonzinsky*, 300 U.S. at 513–14. In other words, OBBBA and *Sonzinsky* now shut the door on the constitutionality of the registration requirement.

Defendants will almost certainly try to defend their continued enforcement of the NFA under the Commerce Clause. But the NFA cannot be sustained under the Commerce Clause as applied to the purely intrastate possession, transfer, and making of NFA firearms, and these firearms do not have any substantial relation to interstate commerce.[1]

---

[1] In any event, the NFA requirements do not withstand Second Amendment scrutiny under *Bruen*. Short-barreled firearms and suppressors are not especially dangerous or unusual, and there is no Founding-era tradition of registration requirements for these arms in common use. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022). This Court can and should grant summary judgment for Plaintiffs on these grounds. Because the States have a unique interest in limiting federal agency attempts to expand the Commerce Clause, they focus on this issue.

## ARGUMENT

Despite what Defendants will inevitably argue, the NFA's registration requirements are not a valid exercise of Congress's power to regulate interstate commerce. The Commerce Clause cannot sustain the challenged provisions as applied to the intrastate possession, transfer, and making of short-barreled firearms and silencers. After all, *intrastate* possession, transfer, and making of NFA firearms is not *interstate* commerce. And Defendants cannot mischaracterize these purely intrastate activities as interstate by reference to any "substantial effects" on interstate commerce. *See United States v. Lopez*, 514 U.S. 549, 558–59 (1995). The challenged NFA provisions flunk each of the "significant considerations" outlined by the Supreme Court to assess the constitutionality of laws under the substantial-effects doctrine. *See United States v. Morrison*, 529 U.S. 598, 609–13 (2000).

The Commerce Clause authorizes Congress "[t]o regulate Commerce … among the several States." U.S. Const. art. I, § 8, cl. 3. As the Supreme Court recognized early on, "the word 'among'" means the Commerce Clause is "restricted to that commerce which concerns more States than one." *Gibbons v. Ogden*, 22 U.S. 1, 194 (1824). It does not extend to "commerce, which is completely internal, which is carried on between man and man in a State." *Lopez*, 514 U.S. at 553. To ensure Congress does not go beyond its authority, the Supreme Court in *Lopez* identified three categories of permissible Commerce Clause regulation: "the channels of interstate commerce," "the instrumentalities of interstate commerce," and "activities that substantially affect interstate commerce." *Id.* at 558–59. Because the

intrastate possession, making, and transfer of NFA firearms are neither channels nor instrumentalities of interstate commerce, "[t]he first two categories … may be quickly disposed of" in this case. *See id.* at 559.

The NFA provisions also do not qualify as the regulation of intrastate commerce with "substantial effects" on interstate commerce, *id.* at 558–59, for two primary reasons. *First*, the provisions were not enacted with "the purpose" of regulating interstate commerce. *See, e.g.*, *United States v. Hall*, 171 F.3d 1133, 1141 (8th Cir. 1999) (upholding NFA requirements as "in aid of a revenue purpose") (quoting *Sonzinsky*, 300 U.S. at 513)). *Second*, the challenged provisions do not pass muster under the five-prong analysis in *Morrison*.

**(1) The Challenged Provisions Fail The Substantial-Effects Test Because They Were Not Enacted With The Purpose Of Regulating Interstate Commerce.**

The challenged NFA provisions were enacted only to *tax*, not to regulate interstate commerce. *Sonzinsky*, 300 U.S. at 513. In recognizing this fact, the Supreme Court also held that courts "*will not* undertake, by collateral inquiry as to the measure of the regulatory effect of [the NFA's] tax, to ascribe to Congress an attempt, under the guise of taxation, to exercise another power." *Id.* at 514 (emphasis added). The Court further explained that any "[i]nquiry into the hidden motives" of Congress in enacting the NFA "is beyond the competency of courts." *Id.* at 513–14. Thus, courts "*are not free to speculate* as to the motives which moved Congress to impose" its taxing scheme under the NFA. *Id.* at 514 (emphasis added).

The Supreme Court has foreclosed Defendants from relying on the Commerce Clause to reach purely intrastate activity under the NFA. Because the NFA's regulation of intrastate activity was not enacted pursuant to Congress's power to regulate interstate commerce, it cannot be sustained under the Commerce Clause. *See United States v. McKee*, 68 F.4th 1100, 1108 (8th Cir. 2023); *see also United States v. Bird*, 124 F.3d 667, 682 n.15 (5th Cir. 1997) (holding that when "Congress is regulating purely *intra* state, noncommercial activity because of its *substantial affect* on interstate commerce, the purpose must in fact be to regulate interstate commerce"). Thus, this Court may quickly dispense with any arguments from Defendants about the Commerce Clause.

**(2) The Challenged Provisions Fail The Substantial-Effects Test Under *Morrison*.**

In any event, "when Congress nears the outer limits of its power under the Commerce Clause by regulating intrastate activity that may only 'affect' interstate commerce, courts must apply the substantial effects test." *United States v. Crenshaw*, 359 F.3d 977, 986 (8th Cir. 2023). In *Morrison*, the Supreme Court identified five "significant considerations" that govern whether intrastate regulation substantially affects interstate commerce. 529 U.S. at 609.

1. Whether the law is "economic" in "nature" or is instead "a criminal statute." *Id.* at 610–11; *Lopez*, 514 U.S. at 561.
2. Whether the law contains an "express jurisdictional element" to "limit its reach to" activities with "an explicit connection with or effect on interstate commerce." *Morrison*, 529 U.S. at 611–12; *Lopez*, 514 U.S. at 561–62.

3. The existence of any "express congressional findings regarding the effects upon interstate commerce of" the regulated activity. *Morrison*, 529 U.S. at 612; *Lopez*, 514 U.S. at 562–63.
4. Whether "the link between" the regulated activity "and a substantial effect on interstate commerce" is "attenuated." *Morrison*, 529 U.S. at 612; *Lopez*, 514 U.S. at 563–64.
5. The "implications of the Government's" claimed Commerce Clause power—and, in particular, whether they would effectively remove "any limitation on federal power." *Lopez*, 514 U.S. at 564; *Morrison*, 529 U.S. at 615–16; *accord Sebelius*, 567 U.S. at 536 (recognizing that "the Constitution … must be read carefully to avoid creating a general federal authority akin to the police power").

Each factor establishes that the NFA exceeds Congress's authority under the Commerce Clause, a conclusion with which the Eighth Circuit agrees. In reviewing the NFA when the tax still applied to registrants, the Eight Circuit held that applying the NFA to the "possession of an unregistered silencer" with no "direct connection [to] interstate commerce" failed each of the Supreme Court's substantial-effect "inquiries." *Hall*, 171 F.3d at 1138. This reasoning readily applies here.

**i. Economic Activity**

The possession, transfer, and making of NFA firearms is "noneconomic" activity under the Commerce Clause. *Morrison*, 529 U.S. at 610. The NFA expressly regulates "possession" and "receipt," 26 U.S.C. §§ 5841(e), 5812(b), 5861(b)–(d),

"transfers," *id.* §§ 5812(a), 5861(e); 27 C.F.R. §§ 479.84(a)–(d), and "manufacturing" and "making," 26 U.S.C. §§ 5841(a)–(c), 5861(f); 27 C.F.R. §§ 479.62(a)–(d). These activities are noneconomic in nature.

The Supreme Court has already held that firearm possession "has nothing to do with 'commerce' or any sort of economic enterprise," *Lopez*, 514 U.S. at 561, even though someone may have previously purchased the firearm. *See also Hall*, 171 F.3d at 1139 ("possession of a silencer solely within one state has nothing to do with commerce or any sort of economic enterprise" (quotation marks omitted)). Further, while transferring and making firearms *may* occur in exchange for money, that is not a requirement. An individual who converts his own firearm into a short-barreled firearm *with no intention of selling it* does not engage in any economic activity. Nor does an individual who transfers a silencer without compensation. These only become economic activities with the addition of some commercial act that is incidental to the core conduct reached by the NFA. *See, e.g.*, *Tex. Top Cop Shop, Inc. v. Garland*, 758 F. Supp. 3d 607, 652–53 (E.D. Tex. 2024) (finding that "compel[ling the] disclosure of information" by commercial businesses did "not facially regulate commerce").

*Gonzales v. Raich*, 545 U.S. 1 (2005), is consistent with this view. In *Raich*, the Court held that the "production" and "distribution" of marijuana were economic activities, *id.* at 25, but only in the context of "comprehensive legislation to regulate the interstate market in a fungible commodity," *id.* at 22. Due to the federal government's comprehensive control in the relevant market, everything to do with

marijuana was necessarily economic activity. Absent that comprehensive market control, possession, transfer, or production are not necessarily economic activities.

*Raich* noted this distinction: It reaffirmed *Lopez*'s holding that "possession of a gun" does "not regulate any economic activity," 545 U.S. at 23, but nevertheless held that "possession" of marijuana *was* "economic, commercial activity," *id.* at 26. The two activities received different treatment because "the statutory scheme" regulating marijuana was "at the opposite end of the regulatory spectrum" from *Lopez*'s firearms restriction. *Id.* at 24. Unlike the NFA, the Controlled Substances Act "creat[ed] a comprehensive framework" that sought to exercise total market control over "the production, distribution, and possession" of marijuana. *Id*. Because the challenged NFA provisions are not part of a statute that comprehensively controls the market for firearms, they are controlled by *Lopez*, not *Raich*.

Finally, this factor cuts sharply against Defendants because the NFA "is a criminal statute that by its terms has nothing to do with 'commerce.'" *Lopez*, 514 U.S. at 561. Just as *Lopez* concerned a law criminalizing possession of a handgun, so too does the NFA. The NFA provisions establish criminal violations with serious penalties: violators can expect to spend ten years in prison. 26 U.S.C. § 5871.

The NFA's criminal violations are additional evidence that it does not regulate interstate commerce. Instead, the NFA usurps state police powers. "Under our federal system, the States possess primary authority for defining and enforcing the criminal law." *Lopez*, 514 U.S. at 561 n.3; *accord Bond v. United States*, 572 U.S. 844, 854 (2014) ("The States have broad authority to enact legislation for the

public good—what we have often called a 'police power.' The Federal Government, by contrast, has no such authority[.]" (quoting *Lopez*, 514 U.S. at 576)). Congress's criminalization of NFA firearms therefore "displaces state policy choices." *Lopez*, 514 U.S. at 561 n.3 (cleaned up). For example, despite the NFA's ban on short-barreled firearms and silencers, many *Amici* have not established similar state-level bans.

The regulated activities are noneconomic, undermining any assertion that the federal government may regulate them via the *Commerce* Clause.

**ii. Jurisdictional Element**

The challenged NFA provisions do not contain a "jurisdictional element which would ensure, through case-by-case inquiry that the firearm possession in question affects interstate commerce." *Lopez*, 514 U.S. at 561; *see Hall*, 171 F.3d at 1138–39. The absence of any jurisdictional element, such as a requirement that a violation have some nexus to interstate commerce, is strong evidence that the NFA's provisions were not enacted pursuant to the Commerce Clause. *See Hall*, 171 F.3d at 1138–40 (finding that "[n]one of the relevant [NFA] statutes in this case contains such a[ jurisdictional] element" and, therefore, the NFA "cannot be sustained under the commerce clause"); *United States v. Kagama*, 118 U.S. 375, 378–79 (1886) (rejecting argument "that the statute under consideration is a regulation of commerce" where it criminalized actions "without any reference to their relation to any kind of commerce").

**iii. Congressional Findings**

In enacting the NFA, Congress made no "findings regarding the effects upon interstate commerce of gun possession," transfer, or making. *See Lopez*, 514 U.S. at 562. In *Hall*, the Eighth Circuit conducted an exhaustive review of the NFA's legislative history and identified "no findings" "with respect to the effect on interstate commerce of … intrastate activity" related to NFA firearms. 171 F.3d. at 1139–40. The absence of congressional findings concerning the NFA's effect on commerce is consistent with Congress's purpose in enacting the NFA "only" as a "taxing measure." *Sonzinsky*, 300 U.S. at 513.

Because "no such substantial effect [i]s visible to the naked eye" under Congress's "federal firearms legislation," this factor cuts sharply against Defendants. *Lopez*, 514 U.S. at 563; *Hall*, 171 F.3d at 1139–40; *see also Hughes v. Oklahoma*, 441 U.S. 322, 338 & n.20 (1979) (striking down statute under Commerce Clause while recognizing that "[t]he late appearance of this argument and the total absence of any record support for the questionable factual assumptions that underlie it give it the flavor of a *post hoc* rationalization").

**iv. Attenuation**

The challenged NFA provisions are not related to interstate commerce at all. *See, e.g.*, *Hall*, 171 F.3d at 1140 (holding no "proof of a connection between interstate commerce" and intrastate possession of a "silencer"). Defendants and the courts have agreed with that characterization for nearly a century, stressing that the statute was "only a taxing measure." *See, e.g.*, *Sonzinsky*, 300 U.S. at 513. Thus, the effect of the regulated intrastate activity on interstate commerce is not merely

"attenuated"; it is not in evidence at all. This factor also cuts against any argument by Defendants that intrastate possession of the NFA firearms can be prohibited under the Commerce Clause.

**v. Implications For Federal Power**

Finally, if the Court accepts Defendants' assertion of the Commerce Clause here, then it would be "hard pressed to posit any activity by an individual that Congress is without power to regulate." *Lopez*, 514 U.S. at 564. Through statutes and regulations, Defendants assert authority to require law-abiding citizens to register otherwise lawfully-owned firearms in a federal database, 26 U.S.C. §§ 5812, 5861, to submit their fingerprints as a precondition to own NFA firearms, *id.* § 5812, and to notify local law enforcement before they make or transfer NFA firearms, 27 C.F.R. § 479.84. But this authority is based only on the bare possibility that an NFA firearm could cross state lines in interstate commerce. Because this attenuated connection to interstate commerce is no stronger for NFA firearms than for any other currently unregulated firearm, Defendants' claimed authority would equally justify imposing the NFA's registration requirements for every firearm nationwide. Such an excessive, historically-unprecedented regulation of the right to possess arms in common use would constitute a clear violation of the Second Amendment under *Bruen*.

And Defendants' unlimited power would not be cabined to firearms. Their claimed authority would also allow them to require federal registration, fingerprinting, and law-enforcement notification for nearly any consumer good

which could plausibly cross state lines someday. But the Supreme Court has squarely rejected this theory: "The proposition that Congress may dictate the conduct of an individual today because of prophesied future activity finds no support in our precedent.... The Commerce Clause is not a general license to regulate an individual from cradle to grave, simply because he will predictably engage in particular transactions." *Sebelius*, 567 U.S. at 557. And unlike the market for health insurance considered in *Sebelius*, Defendants cannot show that it is even predictable that NFA firearms will ever become involved in interstate commerce. Their asserted authority under the NFA would even more expansive than what the Court rejected in *Sebelius*.

Defendants' asserted authority would erase any "distinction between what is truly national and what is truly local" and establish "a plenary police power" for the federal government. *Morrison*, 529 U.S. at 617–19. That power cannot be sustained under the Commerce Clause, and it should be swiftly rejected by this Court.

*          *          *

The five *Morrison* factors establish that the NFA's regulation of short-barreled firearms and silencers fails cannot be sustained under Congress's commerce power. The NFA is a criminal statute and is only occasionally and incidentally related to an economic activity. It has no jurisdictional element linking its prohibitions and requirements to interstate commerce, nor did Congress make any finding related to commerce at its enactment. Any *post hoc* attempt to link NFA firearms to interstate commerce is too attenuated to take seriously and must fail.

And the breadth of the power Congress must assert to sustain the challenged NFA provisions under the Commerce Clause is breathtakingly broad and contrary to Supreme Court precedent and the Constitution. Simply put, possessing, transferring, and making NFA firearms does not have a substantial relationship to interstate commerce.

## CONCLUSION

For the foregoing reasons, this Court should grant summary judgment for Plaintiffs.

**Dated:** December 9, 2025

Respectfully submitted,

**KRIS W. KOBACH**
**Attorney General of Kansas**

*/s/ Anthony J. Powell*
Anthony J. Powell, #14981KS
*Solicitor General*
James R. Rodriguez, #29172KS
*Assistant Attorney General*
Adam T. Steinhilber, #30468KS
*Assistant Solicitor General*
**Office of the Kansas Attorney General**
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-2215
Anthony.Powell@ag.ks.gov
Jay.Rodriguez@ag.ks.gov
Adam.Steinhilber@ag.ks.gov

*Counsel for Amici Curiae*

## ADDITIONAL SIGNATORIES

**Steve Marshall**
**Attorney General of Alabama**

**Stephen J. Cox**
**Attorney General of Alaska**

**Tim Griffin**
**Attorney General of Arkansas**

**James Uthmeier**
**Attorney General of Florida**

**Christopher M. Carr**
**Attorney General of Georgia**

**Raúl R. Labrador**
**Attorney General of Idaho**

**Theodore E. Rokita**
**Attorney General of Indiana**

**Brenna Bird**
**Attorney General of Iowa**

**Liz Murrill**
**Attorney General of Louisiana**

**Catherine L. Hanaway**
**Attorney General of Missouri**

**Austin Knudsen**
**Attorney General of Montana**

**Michael T. Hilgers**
**Attorney General of Nebraska**

**Drew H. Wrigley**
**Attorney General of North Dakota**

**Gentner Drummond**
**Attorney General of Oklahoma**

**Alan Wilson**
**Attorney General of South Carolina**

**Marty J. Jackley**
**Attorney General of South Dakota**

**Ken Paxton**
**Attorney General of Texas**

**Derek Brown**
**Attorney General of Utah**

**John B. McCuskey**
**Attorney General of West Virginia**

**Keith G. Kautz**
**Attorney General of Wyoming**

**Steve Montenegro**
**Speaker of the Arizona House of Representatives**

**Warren Petersen**
**President of the Arizona Senate**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of December 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have entered an appearance.

*/s/ Anthony J. Powell*
Anthony J. Powell