# Exhibit 4

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

|  |  |
|---|---|
| CHRIS BROWN, *et al.*, |  |
| *Plaintiffs*, |  |
| v. | No. 4:25-cv-1162 |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, *et al.*, |  |
| *Defendants*. |  |

## DECLARATION OF STEPHEN ALBRO

I, Stephen Albro, of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), declare that the following statements are true and correct to the best of my knowledge and belief, and that they are based on my personal knowledge as well as information provided to me in the ordinary course of my official duties.

1.       I am employed by ATF in the National Firearms Act ("NFA") Division. I am the Chief of the Division. In this capacity, I am responsible for overseeing ATF's administration of the NFA and the regulations issued thereunder, including maintaining and amending the National Firearms Registration and Transfer Record ("NFRTR"), processing notices of NFA firearms manufactured or imported, and acting on all applications to make, export, transfer and register NFA firearms.  In addition, I am responsible for planning and managing the full range of NFA Division operations and programs, which include workload and resource projections, staffing levels, budget allocations, and monitoring compliance with Division policies, procedures and guidelines in order to most effectively and efficiently achieve Division goals.

2.      I have been employed by ATF since 1999 and have been the NFA Division Chief since 2024, in addition to having been the NFA Branch Chief (before it was designated a division) in 2009.  In between my supervisory roles in the NFA Division, I was the ATF Charlotte Field Division's Director of Industry Operations and the Deputy Chief and Chief of the Firearms and Explosives Services Division.

3.      As Chief of the NFA Division, I am knowledgeable about the requirements of the NFA, including the registration, transfer and making requirements. And, based on my role at ATF, I am likewise familiar with ATF's protocols and processes for implementing the NFA.

## THE NATIONAL FIREARMS ACT

*Registration*

4.      The NFA requires that the Attorney General "maintain a central registry of all [NFA] firearms in the United States which are not in the possession or under the control of the United States." 26 U.S.C. § 5841(a); *see also* 26 U.S.C. § 5845(a) (defining eight categories of NFA "firearms").

5.      This registry is known as "the National Firearms Registration and Transfer Record." *See* 26 U.S.C. § 5841(a).

6.      To support the maintenance of this registry, the NFA requires that "[e]ach manufacturer, importer, and maker … register each firearm he manufacturers, imports or makes" and that "[e]ach firearm transferred … be registered to the transferee by the transferor." 26 U.S.C. § 5841(b).

*Manufacturing & Making*

7.      The NFA requires that any person who would manufacture or make an NFA firearm first seek and obtain approval from the Attorney General.  26 U.S.C. §§ 5821, 5822, 5841(c).

8.      The NFA differentiates between a "manufacturer" of NFA firearms and a person who "makes" such a firearm.

9.      A manufacturer is "any person who is engaged in the business of manufacturing firearms." 26 U.S.C. § 5845(m). A manufacturer must register with the Attorney General before first engaging in the business of manufacturing firearms, and pay a special occupational tax as described below. 26 U.S.C. §§ 5801, 5802.

10.      The term "make" includes "manufacturing (*other than by one qualified to engage in such business under this chapter*), putting together, altering, any combination of these, or otherwise producing a firearm." 26 U.S.C. § 5845(i) (emphasis added).

11.      Qualified manufacturers must submit an ATF Form 2, *Notice of Firearms Manufactured or Imported*, for all NFA firearms manufactured. The form requires the manufacturer's name, address, and Federal Firearms License Number; the number of firearms manufactured; the date of manufacture; and a description of the firearms. The form must be signed and dated by an authorized official of the Federal Firearms Licensee. Form 2 registers these firearms in the NFRTR.

12.      A person who is not a qualified manufacturer and who is not prohibited from possessing firearms must submit an ATF Form 1, *Application to Make and Register a Firearm*, to make an NFA firearm. The form must be accompanied by an FBI FD-258, Fingerprint Card, in duplicate; a 2-inch by 2-inch photograph; and payment of any applicable making tax. *See* 26 U.S.C. § 5822; 27 C.F.R. § 479.62-63. The form requires the applicant's name and address, country of citizenship, date and place of birth, social security number, and other identifying information; a description of the firearm to be made, including a unique serial number created by the applicant; answers to a list of questions; and the notification to the chief law enforcement officer of the applicant's city or county. The form must be signed and dated by the applicant. This application must be approved by the Attorney General prior to making an NFA firearm.

*Transferring*

13.     The NFA provides that an NFA firearm "shall not be transferred unless (1) the transferor of the firearm has filed with the [Attorney General] a written application, in duplicate, for the transfer and registration of the firearm to the transferee on the application form prescribed …; (2) any tax payable on the transfer is paid …; (3) the transferee is identified on the application form …; (4) the transferor of the firearm is identified …; (5) the firearm is identified …; and (6) the application form shows that the [Attorney General] has approved the transfer and registration of the firearm to the transferee." 26 U.S.C. § 5812(a).

14.     Additionally, the transferee of an NFA firearm "shall not take possession of the firearm unless the [Attorney General] has approved the transfer and registration of the firearm to the transferee." 26 U.S.C. § 5812(b).

15.     Applications to transfer an NFA firearm must be made on ATF Form 4, *Application for Tax Paid Transfer and Registration of Firearm.* The form requires the name and address of the transferee and transferor; the Federal Firearms License number of the transferee and/or transferor, if applicable; the fingerprints and photograph of the transferee; a description of the firearm(s); answers from the transferee to a list of questions; and that it be accompanied by any applicable tax payment.

16.     Finally, ATF Form 3, *Application for Tax Exempt Transfer of Firearm and Registration to Special Occupational Taxpayer,* is used to request approval to transfer NFA firearms from one qualified Federal Firearms Licensee (FFL)—whether an importer, manufacturer or dealer—to another. Form 3 requires the name and address of the transferee, the name and address of the transferor, Federal Firearms License numbers and a description of the firearm(s).

*Making & Transfer Taxes*

17.     The NFA imposes a tax on the making of an NFA firearm, 26 U.S.C. § 5821, and a tax on the transferring of an NFA firearm, 26 U.S.C. § 5811.

18.    Historically, both taxes have been set at $200.

19.    On July 4, 2025, the One Big Beautiful Bill Act ("OBBB"), Pub. L. No. 119-21, section 70436, 139 Stat. 72, 247-48, amended section 5811(a) to read, "There shall be levied, collected, and paid on firearms transferred a tax at the rate of … $0" for silencers, short-barreled rifles, short-barreled shotguns and any other weapon (AOW).

20.    Likewise, the OBBB amended section 5821(a) to read, "There shall be levied, collected, and paid upon the making of a firearm a tax at the rate of … $0" for silencers, short-barreled rifles, short-barreled shotguns and AOWs.

21.    The OBBB left the making and transfer taxes on machineguns and destructive devices at $200. *See* 139 Stat. at 247.

22.    NFA registration forms contain a canceled tax stamp indicating the transfer tax has been paid for the firearm. For transfers that occurred before the OBBB's effective date, that tax would have been either $200 or $5, depending on the type of weapon. Failure to pay all applicable NFA taxes for a particular firearm (*i.e.*, SOT, making, transfer taxes) makes the firearm contraband and prevents its further transfer. 26 U.S.C. § 5861(b), (c). Requiring that NFA firearms be registered throughout their existence helps ATF identify which firearms have been properly taxed and are thus lawfully possessed and transferred and which of those are contraband.

*The Special Occupational Tax*

23.    The NFA also imposes a special occupational tax, or "SOT." On first "engaging in the business," "every importer, manufacturer, and dealer in firearms shall pay a special (occupational) tax for each place of business" at $1000 a year for importers and manufacturers and $500 a year for dealers.  26 U.S.C. § 5801.

24.    The OBBB did not amend the NFA's provisions regarding the SOT.

25. A qualified manufacturer that pays the SOT is exempt from the individual making tax, and all qualified businesses that pay the SOT are exempt from the transfer tax for any transfers to another qualified business that pays the SOT.  *See* 26 U.S.C. § 5852(c), (d).

26. The payment of the SOT qualifies persons licensed under the Gun Control Act to manufacture, import, or deal in NFA firearms. This tax payment authorizes these licensees to engage in the business of NFA firearms and enjoy tax-free registration of firearms manufactured or imported by a qualified licensee and the tax-free transfer of NFA firearms between qualified licensees. Licensed dealers who pay the SOT are qualified to deal NFA firearms to retail customers.

27. The NFA's requirements support the assessment, collection, and enforcement of the SOT. The NFA Division reviews every application to make or transfer.  The review includes checking the NFRTR for applications to make to ensure the firearm and proposed serial number will not be a duplicative entry, and for applications to transfer to match the information on the application and accompanying forms to ensure the accuracy of and make any necessary updates to the NFRTR.  Part of this review is to determine whether the transaction is a tax-paid or tax-exempt transfer.  If the transaction requires a tax to be paid, the NFA Division confirms the tax payment was in fact made. If the application contains information regarding an FFL and SOT, the NFA Division confirms the information is accurate and that the status of the FFL is active and that the SOT has been paid.  No application is approved—and the firearms subsequently registered—without the applicable tax being paid. The NFRTR thus provides accurate, current tax collection information.

28. While these requirements ensure that qualified manufacturers and dealers are meeting their tax obligations, for instance, a manufacturer could not avoid paying the SOT and still register its silencers or short-barreled rifles, it also provides additional information in aid of the collection and enforcement of the SOT. A sustained increase in the transfer of NFA firearms may indicate that an individual is engaged in the business of dealing in firearms and should be licensed and paying the SOT.

Similarly, the repetitive making of certain firearms by the same individual may indicate that individual is engaged in the business of manufacturing those firearms and should again be licensed and paying the SOT. The registration and approval requirements thereby aid in preventing the circumvention of the NFA and the Gun Control Act.

*Life Cycle of a Typical NFA Firearm*

29.     The vast majority of NFA firearms are made by qualified manufacturers that must be FFLs and pay the SOT. *See* ATF, *National Firearms Commerce and Trafficking Assessment: Firearms in Commerce*, at 99-100 (May 2022). For example, between 2016 and 2020, silencers made by private individuals and approved on ATF Form 1 totaled 138,294. By contrast, in this same time period, silencers made by qualified manufacturers and approved on ATF Form 2 totaled 1,102,030. Therefore, 87.5% of silencers were made by qualified manufacturers, engaged in the business of manufacturing. Additionally, in this same time period: 29,965 short-barreled rifles were approved on Form 1, while 135,658, or 88%, of short-barreled rifles were approved on Form 2; 385 AOWs were approved on Form 1, while 10,579, or 97%, of AOWs were approved on Form 2; and 211 short-barreled shotguns were approved on Form 1, while 13,520, or 98.5%, of short-barreled shotguns were approved on Form 2.

30.     The initial transfer is typically from a qualified manufacturer to a qualified distributor, both of whom must be FFLs and pay the SOT. The firearm must be registered and the transfer approved on ATF Form 3, *Application for Tax-Exempt Transfer of Firearm and Registration to Special Occupational Taxpayer.*

31.     The next transfer is typically from a qualified distributor to a qualified dealer, both of whom must be FFLs and pay the SOT. The firearm again must be registered and the transfer approved on ATF Form 3.

32.     By this point, most NFA firearms have been shipped and transferred interstate.  Every state has NFA Special Occupational Taxpayers, with the largest numbers in Texas, Florida and Arizona, respectively. ATF, *Firearms Commerce in the United States*, Statistical Update, 2024, Exhibit 11. www.atf.gov/resource-center/docs/report/2024firearmscommercereportpdf/download.  In FY 25, 2,195,034 total NFA weapons were transferred, with a distinct application count of 478,709.  Of those total NFA weapons transferred, 1,997,787, or 91%, were transferred interstate.  This percentage was arrived at by reviewing all Form 3s received by ATF in FY 2025 and comparing the transferor state and transferee state; if they did not match, the transaction was an interstate transfer.  Only actual transactions were considered; transactions that were withdrawn, disapproved, voided or were pending were not counted.

33.     The last transfer is the retail sale between a qualified dealer and an individual purchaser. The qualified dealer, who must be an FFL and pay the SOT, must register the firearm to the purchaser and keep records of the sale, as with all NFA firearm transfers.

Executed on this fifteenth day of December, 2025.

_____

Stephen Albro
Chief
National Firearms Act Division
Bureau of Alcohol, Tobacco, Firearms and
Explosives