IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHRIS BROWN; ALLEN MAYVILLE; PRIME PROTECTION STL, LLC D/B/A PRIME PROTECTION STL TACTICAL BOUTIQUE; NATIONAL RIFLE ASSOCIATION OF AMERICA; FIREARMS POLICY COALITION, INC.; SECOND AMENDMENT FOUNDATION; and AMERICAN SUPPRESSOR ASSOCIATION, | : : : : : : : : |
| *Plaintiffs*, | : No. 4:25-cv-1162 |
| v. | : : |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; DANIEL P. DRISCOLL, in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; UNITED STATES DEPARTMENT OF JUSTICE; and PAMELA J. BONDI, in her official capacity as Attorney General of the United States, | : : : : : : : : : |
| *Defendants*. | : |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS AND COUNTERSTATEMENT

Pursuant to Local Rule 4.01(E), Plaintiffs Chris Brown ("Brown"), Allen Mayville ("Mayville," and together with Brown, "Individual Plaintiffs"), Prime Protection STL, LLC d/b/a Prime Protection STL Tactical Boutique ("Prime Protection"), National Rifle Association of America, Firearms Policy Coalition, Inc., Second Amendment Foundation, and American Suppressor Association submit the following Response to Defendants' Statement of Uncontroverted Material Facts and Counterstatement.[1]

---

[1] Defendants failed to submit a response to Plaintiffs' Statement of Uncontroverted Material Facts (Nov. 14, 2025), ECF No. 23. Consequently, per Local Rule 4.01(E), "[a]ll matters set forth in [Plaintiffs'] Statement of Uncontroverted Material Facts shall be deemed admitted for

## **RESPONSE TO DEFENDANTS' STATEMENT OF UNCONTROVERTED MATERIAL FACTS**

1. **Defendants' Statement:** Qualified manufacturers must submit an ATF Form 2, *Notice of Firearms Manufactured or Imported*, for all NFA firearms manufactured. *See* Decl. of Stephen Albro ("Albro Decl.") ¶ 11, Ex. 4 at 3.

    a. **Plaintiffs' Response:** Not Disputed.

2. **Defendants' Statement:** ATF Form 2 requires the manufacturer's name, address, and Federal Firearms License Number; the number of firearms manufactured; the date of manufacture; and a description of the firearms. *See* Albro Decl. ¶ 11, Ex. 4 at 3.

    a. **Plaintiffs' Response:** Not Disputed.

3. **Defendants' Statement:** An approved ATF Form 2 registers the subject firearm in the National Firearms Registration and Transfer Record ("NFRTR"). *See* Albro Decl. ¶ 11, Ex. 4 at 3.

    a. **Plaintiffs' Response:** Not Disputed.

4. **Defendants' Statement:** A person who is not a qualified manufacturer and who is not prohibited from possessing firearms must submit an ATF Form 1, *Application to Make and Register a Firearm*, to make an NFA firearm. *See* Albro Decl. ¶ 12, Ex. 4 at 3.

    a. **Plaintiffs' Response:** Not Disputed.

5. **Defendants' Statement:** ATF Form 1 must be accompanied by an FBI FD-258, Fingerprint Card, in duplicate; a 2-inch by 2-inch photograph; and payment of any applicable making tax. *See* Albro Decl. ¶ 12, Ex. 4 at 3.

    a. **Plaintiffs' Response:** Not Disputed.

---

purposes of summary judgment" because Defendants, the opposing parties, did not "specifically controvert[ ]" them.

2

6. **Defendants' Statement:** ATF Form 1 requires the applicant's name and address, country of citizenship, date and place of birth, social security number, and other identifying information; a description of the firearm to be made, including a unique serial number created by the applicant; answers to a list of questions; and the notification to the chief law enforcement officer of the applicant's city or county. *See* Albro Decl. ¶ 12, Ex. 4 at 3.

    a. **Plaintiffs' Response:** Not Disputed.

7. **Defendants' Statement:** Applications to transfer an NFA firearm must be made on ATF Form 4, *Application for Tax Paid Transfer and Registration of Firearm*. *See* Albro Decl. ¶ 15, Ex. 4 at 4.

    a. **Plaintiffs' Response:** Not Disputed.

8. **Defendants' Statement:** ATF Form 4 requires the name and address of the transferee and transferor; the Federal Firearms License number of the transferee and/or transferor, if applicable; the fingerprints and photograph of the transferee; a description of the firearm(s); answers from the transferee to a list of questions; and that it be accompanied by any applicable tax payment. *See* Albro Decl. ¶ 15, Ex. 4 at 4.

    a. **Plaintiffs' Response:** Not Disputed.

9. **Defendants' Statement:** ATF Form 3, *Application for Tax Exempt Transfer of Firearm and Registration to Special Occupational Taxpayer*, is used to request approval to transfer NFA firearms from one qualified Federal Firearms Licensee ("FFL")—whether an importer, manufacturer or dealer—to another. *See* Albro Decl. ¶ 16, Ex. 4 at 4.

    a. **Plaintiffs' Response:** Not Disputed.

10. **Defendants' Statement:** ATF Form 3 requires the name and address of the transferee, the name and address of the transferor, the Federal Firearms License numbers and a description of the firearm(s). *See* Albro Decl. ¶ 16, Ex. 4 at 4.

    a. **Plaintiffs' Response:** Not Disputed.

11. **Defendants' Statement:** Requiring that NFA firearms be registered throughout their existence helps ATF identify which firearms have been properly taxed and are thus lawfully possessed and transferred and which of those are contraband. *See* Albro Decl. ¶ 22, Ex. 4 at 5.

    a. **Plaintiffs' Response:** Not Disputed, on the understanding that whether firearms are "lawfully possessed and transferred" or are "contraband" turns on whether they have been properly taxed.

12. **Defendants' Statement:** The NFA's requirements support the assessment, collection, and enforcement of the SOT. *See* Albro Decl. ¶ 27, Ex. 4 at 6.

    a. **Plaintiffs' Response:** Disputed. Paragraph 12 constitutes a legal conclusion to which no response is required, not a statement of material fact. To the extent a response is required, Plaintiffs dispute that "[t]he NFA's requirements support the assessment, collection, and enforcement of the SOT." As Plaintiffs' explain in their Combined Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Summary Judgment and Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, filed together herewith, the NFA's statutory design is that the *occupational registration requirements* (26 U.S.C. § 5802) facilitate the collection of the *special*

4

*occupational tax* (26 U.S.C. § 5801), whereas the *firearm registration requirements* (26 U.S.C. §§ 5812, 5822, 5841) facilitate the collection of the *firearm making and transfer taxes* (26 U.S.C. §§ 5811, 5821). Furthermore, Defendants do not claim to have ever found even a single occupational tax evader by reviewing applications to make or transfer under the NFA. *See* Albro Decl. ¶ 27, Ex. 4 at 6. Defendants do not even claim to have ever launched an investigation of special occupational tax evasion based on this information. *See* Albro Decl. ¶ 28, Ex. 4 at 6–7. Defendants posit nothing more than speculation about a remote compliance risk.

13. **Defendants' Statement:** ATF's NFA Division reviews every application to make or transfer an NFA firearm. *See* Albro Decl. ¶ 27, Ex. 4 at 6.

    a. **Plaintiffs' Response:** Not Disputed.

14. **Defendants' Statement:** That review includes checking the NFRTR for applications to make to ensure the firearm and proposed serial number will not be a duplicative entry, and for applications to transfer to match the information on the application and accompanying forms to ensure the accuracy of and make any necessary updates to the NFRTR. *See* Albro Decl. ¶ 27, Ex. 4 at 6.

    a. **Plaintiffs' Response:** Not Disputed.

15. **Defendants' Statement:** Part of that review is to determine whether the transaction is a tax-paid or tax-exempt transfer. *See* Albro Decl. ¶ 27, Ex. 4 at 6.

    a. **Plaintiffs' Response:** Not Disputed.

5

16. **Defendants' Statement:** If the transaction requires a tax to be paid, the NFA Division confirms the tax payment was in fact made. *See* Albro Decl. ¶ 27, Ex. 4 at 6.

    a. **Plaintiffs' Response:** Not Disputed.

17. **Defendants' Statement:** If the application contains information regarding an FFL and SOT, the NFA Division confirms the information is accurate and that the status of the FFL is active and that the SOT has been paid. *See* Albro Decl. ¶ 27, Ex. 4 at 6.

    a. **Plaintiffs' Response:** Not Disputed.

18. **Defendants' Statement:** No application is approved—and the firearms subsequently registered—without the applicable tax being paid. *See* Albro Decl. ¶ 27, Ex. 4 at 6.

    a. **Plaintiffs' Response:** Not Disputed to the extent that by "applicable tax," Defendants mean the applicable tax on the firearm(s) that are the subject of the application.

19. **Defendants' Statement:** The NFRTR provides accurate, current tax collection information. *See* Albro Decl. ¶ 27, Ex. 4 at 6.

    a. **Plaintiffs' Response:** Not Disputed.

20. **Defendants' Statement:** While the NFA's requirements help ensure that qualified manufacturers and dealers are meeting their tax obligations—*e.g.*, a manufacturer could not avoid paying the SOT and still register its silencers or short-barreled rifles—they also provide additional information in aid of the collection and enforcement of the special occupational tax ("SOT"). *See* Albro Decl. ¶ 28, Ex. 4 at 6.

    a. **Plaintiffs' Response:** Disputed. Paragraph 20 constitutes a legal conclusion to which no response is required, not a statement of material fact. To the extent a response is required, Plaintiffs dispute that "the

6

NFA's requirements . . . provide additional information in aid of the collection and enforcement of the special occupational tax." As Plaintiffs' explain in their Combined Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Summary Judgment and Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, filed together herewith, the NFA's statutory design is that the *occupational registration requirements* (26 U.S.C. § 5802) facilitate the collection of the *special occupational tax* (26 U.S.C. § 5801), whereas the *firearm registration requirements* (26 U.S.C. §§ 5812, 5822, 5841) facilitate the collection of the *firearm making and transfer taxes* (26 U.S.C. §§ 5811, 5821). Furthermore, Defendants do not claim to have ever found even a single occupational tax evader by reviewing applications to make or transfer under the NFA. *See* Albro Decl. ¶ 27, Ex. 4 at 6. Defendants do not even claim to have ever launched an investigation of SOT evasion based on this information. *See* Albro Decl. ¶ 28, Ex. 4 at 6–7. Defendants posit nothing more than speculation about a remote compliance risk.

21. **Defendants' Statement:** For example, a sustained increase in the transfer of NFA firearms may indicate that an individual is engaged in the business of dealing in firearms and should be licensed and paying the SOT. *See* Albro Decl. ¶ 28, Ex. 4 at 6.

    a. **Plaintiffs' Response:** Disputed. Paragraph 21 constitutes a legal conclusion to which no response is required, not a statement of material fact. To the extent a response is required, Plaintiffs dispute that "a

7

sustained increase in the transfer of NFA firearms may indicate that an individual is engaged in the business of dealing in firearms and should be licensed and paying the SOT." First, as Plaintiffs explained above, the NFA's statutory design is that the *occupational registration requirements* (26 U.S.C. § 5802) facilitate the collection of the *special occupational tax* (26 U.S.C. § 5801), whereas the *firearm registration requirements* (26 U.S.C. §§ 5812, 5822, 5841) facilitate the collection of the *firearm making and transfer taxes* (26 U.S.C. §§ 5811, 5821). The design is not that the *firearm registration requirements* facilitate the collection of the *special occupational tax*. Second, as Defendants themselves argue, "[t]he vast majority of NFA firearms" are made and transferred by "qualified manufacturers" already within the occupational tax regime. *See* Albro Decl. ¶ 29, Ex. 4 at 7 (98.5% of short-barreled shotguns; 97% of AOWs; 88% of short-barreled rifles; 87.5% of silencers). And the ATF recently rejected the proposition that any "minimum standard of how many firearms" transacted would make someone a firearms dealer under the Gun Control Act. *See* Definition of "Engaged in the Business" as a Dealer in Firearms, 89 Fed. Reg. 28968, 28990 (Apr. 19, 2024); *see also id.* at 29091 ("whether a person is engaged in the business of dealing in firearms is based on the totality of the circumstances"; "even a single firearm transaction . . . may require

8

a license").[2] Defendants' anticircumvention theory is essentially that the firearm registration requirements might help support collection of the special occupational tax by gathering information that is likely irrelevant in 88% to 99% of NFA transactions and is non-dispositive in others. What is more, Defendants provide no substantiation for the speculative proposition that a person would systematically comply with the NFA's registration requirements for transferring firearms yet fail to comply with the NFA's requirements for dealing in firearms.

22. **Defendants' Statement:** Likewise, the repetitive making of certain firearms by the same individual may indicate that individual is engaged in the business of manufacturing those firearms and should again be licensed and paying the SOT. *See* Albro Decl. ¶ 28, Ex. 4 at 7.

    a. **Plaintiffs' Response:** Disputed. Plaintiffs dispute that "the repetitive making of certain firearms by the same individual may indicate that individual is engaged in the business of manufacturing those firearms and should again be licensed and paying the SOT" and incorporate by reference their response to Paragraph 21 in full. What is more, Defendants provide no substantiation for the speculative proposition that a person would systematically comply with the NFA's registration requirements for making firearms yet fail to comply with the NFA's requirements for being a firearms manufacturer.

---

[2] To be sure, the rule acknowledges that selling large numbers of firearms "may be" indicative of business activity. 89 Fed. Reg. at 28990. But that just underscores the mismatch here. Registration requirements designed to collect information about a single, non-dispositive fact are not well suited to assessing the "totality of the circumstances."

9

23. **Defendants' Statement:** The NFA's registration and approval requirements aid in preventing the circumvention of the NFA and the Gun Control Act. *See* Albro Decl. ¶ 28, Ex. 4 at 7.

    a. **Plaintiffs' Response:** Disputed. Plaintiffs dispute that "[t]he NFA's registration and approval requirements aid in preventing the circumvention of the NFA and the Gun Control Act" and incorporate by reference their responses to Paragraphs 21 and 22 in full.

24. **Defendants' Statement:** The vast majority of NFA firearms are made by qualified manufacturers that must be FFLs and pay the SOT. *See* Albro Decl. ¶ 29, Ex. 4 at 7 (citing ATF, *National Firearms Commerce and Trafficking Assessment: Firearms in Commerce*, at 99–100 (May 2022)).

    a. **Plaintiffs' Response:** Not Disputed.

25. **Defendants' Statement:** For example, between 2016 and 2020, silencers made by private individuals and approved on ATF Form 1 totaled 138,294. *See* Albro Decl. ¶ 29, Ex. 4 at 7 (citing ATF, *National Firearms Commerce and Trafficking Assessment: Firearms in Commerce*, at 99–100 (May 2022))

    a. **Plaintiffs' Response:** Not Disputed.

26. **Defendants' Statement:** By contrast, in this same time period, silencers made by qualified manufacturers and approved on ATF Form 2 totaled 1,102,030. *See* Albro Decl. ¶ 29, Ex. 4 at 7 (citing ATF, *National Firearms Commerce and Trafficking Assessment: Firearms in Commerce*, at 99–100 (May 2022)).

    a. **Plaintiffs' Response:** Not Disputed.

27. **Defendants' Statement:** Therefore, 87.5% of silencers were made by qualified manufacturers engaged in the business of manufacturing. *See* Albro Decl. ¶ 29, Ex. 4 at 7 (citing ATF, *National Firearms Commerce and Trafficking Assessment: Firearms in Commerce*, at 99–100 (May 2022)).

    a. **Plaintiffs' Response:** Not Disputed.

28. **Defendants' Statement:** Additionally, in this same time period: 29,965 short-barreled rifles were approved on ATF Form 1, while 135,658, or 88%, of short-barreled rifles were approved on ATF Form 2; 385 AOWs were approved on ATF Form 1, while 10,579, or 97%, of AOWs were approved on ATF Form 2; and 211 short-barreled shotguns were approved on ATF Form 1, while 13,520, or 98.5%, of short-barreled shotguns were approved on ATF Form 2. *See* Albro Decl. ¶ 29, Ex. 4 at 7 (citing ATF, *National Firearms Commerce and Trafficking Assessment: Firearms in Commerce*, at 99–100 (May 2022)).

    a. **Plaintiffs' Response:** Not Disputed.

29. **Defendants' Statement:** The initial transfer of an NFA firearm is typically from a qualified manufacturer to a qualified distributor, both of whom must be FFLs and pay the SOT, and the firearm must be registered and the transfer approved on ATF Form 3, *Application for Tax-Exempt Transfer of Firearm and Registration to Special Occupational Taxpayer*. *See* Albro Decl. ¶ 30, Ex. 4 at 7.

    a. **Plaintiffs' Response:** Not Disputed.

30. **Defendants' Statement:** The next transfer is typically from a qualified distributor to a qualified dealer, both of whom must be FFLs and pay the SOT, and the firearm again must be registered and the transfer approved on ATF Form 3. *See* Albro Decl. ¶ 31, Ex. 4 at 7.

11

  a. **Plaintiffs' Response:** Not Disputed.

31. **Defendants' Statement:** Most NFA firearms have been shipped and transferred interstate by the time they are transferred to a qualified dealer. *See* Albro Decl. ¶ 32, Ex. 4 at 8.

  a. **Plaintiffs' Response:** Not Disputed.

32. **Defendants' Statement:** Every state has NFA Special Occupational Taxpayers, with the largest numbers in Texas, Florida and Arizona, respectively. *See* Albro Decl. ¶ 32, Ex. 4 at 8 (citing ATF, *Firearms Commerce in the United States*, Statistical Update, 2024, Exhibit 11, www.atf.gov/resource-center/docs/report/2024firearmscommercereportpdf/download).

  a. **Plaintiffs' Response:** Not Disputed.

33. **Defendants' Statement:** In fiscal year 2025, 2,195,034 total NFA weapons were transferred, with a distinct application count of 478,709. *See* Albro Decl. ¶ 32, Ex. 4 at 8.

  a. **Plaintiffs' Response:** Not Disputed.

34. **Defendants' Statement:** Of those total NFA weapons transferred, 1,997,787, or 91%, were transferred interstate. *See* Albro Decl. ¶ 32, Ex. 4 at 8.

  a. **Plaintiffs' Response:** Not Disputed.

35. **Defendants' Statement:** The last transfer for an NFA firearm is typically the retail sale between a qualified dealer and an individual purchaser, and the qualified dealer, who must be an FFL and pay the SOT, must register the firearm to the purchaser and keep records of the sale, as with all NFA firearm transfers. *See* Albro Decl. ¶ 33, Ex. 4 at 8.

  a. **Plaintiffs' Response:** Not Disputed, on the understanding that the transfer of an NFA firearm from a qualified dealer to an individual

purchaser must occur intrastate under federal law. *See, e.g.*, 18 U.S.C. § 922(b)(3).

## COUNTERSTATEMENT WITH ADDITIONAL UNCONTROVERTED MATERIAL FACTS

1. Given the One Big Beautiful Bill Act's, Pub. L. No. 119-21, 139 Stat. 72 (2025), reduction of the NFA's excise tax for the majority of covered firearms to $0.00, Plaintiffs Brown and Mayville plan to take the following additional actions with respect to NFA-covered firearms (in addition to the actions they mentioned in their original Declarations). Suppl. Decl. of Chris Brown ¶ 3 (Jan. 15, 2026) ("Brown Suppl. Decl."), attached as **Exhibit 1**; Suppl. Decl. of Allen Mayville ¶ 3 (Jan. 15, 2026) ("Mayville Suppl. Decl."), attached as **Exhibit 2**.

2. Brown wants to make a short-barreled rifle but has declined to do so because of the NFA provisions being challenged in this case. He is familiar with the general process of making rifles because he has done so in the past. Brown Suppl. Decl. ¶ 4.

3. Brown would make the short-barreled rifle within the State of Missouri within 30 days if it were not a violation of federal law to do so without complying with the challenged NFA provisions. *Id.* ¶ 5.

4. Mayville wants to reconfigure a rifle that he currently lawfully owns into a short-barreled rifle but has declined to do so because of the NFA provisions being challenged in this case. Mayville Suppl. Decl. ¶ 4.

5. Mayville would reconfigure the rifle within the State of Nebraska within 30 days if it were not a violation of federal law to do so without complying with the challenged NFA provisions. *Id.* ¶ 5.

6. Were Individual Plaintiffs to take these respective actions without complying with the challenged NFA provisions, they would face arrest, prosecution, and imprisonment for felony violations of federal law. *See* 26 U.S.C. §§ 5861, 5871. Consequently, Individual Plaintiffs will not take these respective actions unless it would not be a violation of federal law for them to do so without complying with the NFA's registration provisions. Brown Suppl. Decl. ¶ 5; Mayville Suppl. Decl. ¶ 5.

7. In addition to the NFA firearms mentioned in Plaintiff Prime Protection's original Declaration, Prime Protection also sells firearms that qualify as "any other weapon" under the NFA. Suppl. Decl. of Prime Protection STL, LLC d/b/a Prime Protection STL Tactical Boutique ¶ 4 (Jan. 20, 2026), attached as **Exhibit 3**.

8. If it were not a violation of federal law to do so, Prime Protection would sell firearms that qualify as "any other weapon" under the NFA without complying with the challenged NFA provisions. *Id.* ¶ 5.

Dated: January 21, 2026

Respectfully submitted,

/s/ David H. Thompson
David H. Thompson*
Peter A. Patterson*
Nicholas A. Varone*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
Tel: (202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
nvarone@cooperkirk.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

On January 21, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of Missouri, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ David H. Thompson
David H. Thompson
COOPER & KIRK, PLLC