**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| CHRIS BROWN, *et al.*, | |
| *Plaintiffs*, | |
| v. | No. 4:25-cv-1162 |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, *et al.*, | |
| *Defendants*. | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................1

I.      Plaintiffs lack Article III standing to challenge several NFA regulations. ...................1

II.     Plaintiffs assert facial challenges to the relevant NFA requirements and prohibitions, not as-applied challenges. .........................................................................................2

III.    The Constitution empowers Congress to adopt the challenged NFA requirements. ...............6

        A.      The challenged NFA regulations remain a valid exercise of Congress's taxing power. .................6

        B.      Congress's power under the Commerce Clause independently authorizes the challenged NFA regulations. ...............10

                1.      The NFA is not solely an exercise of Congress's taxing power. ......................10

                2.      The NFA regulates persons and things in interstate commerce. ....................14

                3.      The NFA regulates intrastate activities that substantially affect interstate commerce. ...............17

        C.      The Necessary and Proper Clause further supports the challenged NFA regulations. .................19

IV.     The challenged NFA requirements comport with the Second Amendment. ...........................20

V.      Any relief should be no more burdensome than necessary. ....................................28

CONCLUSION ..............................................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Andrews v. State,*
　50 Tenn. 165 (1871) ................................................................................................................... 24

*Bevis v. City of Naperville,*
　85 F.4th 1175 (7th Cir. 2023) .................................................................................................... 22

*Bianchi v. Brown,*
　111 F.4th 438 (4th Cir. 2024) ............................................................................................... 23, 25

*Bondi v. VanDerStok,*
　604 U.S. 458 (2025) ..................................................................................................................... 4

*Burns Prescription Pharm, Inc. v. Express Scripts, Inc.,*
　2022 WL 17718616 (E.D. Mo. Dec. 15, 2022) ........................................................................ 28

*Burroughs v. United States,*
　290 U.S. 534 (1934) ................................................................................................................... 20

*Carney v. Adams,*
　592 U.S. 53 (2020) ....................................................................................................................... 1

*Christian Labor Ass'n v. City of Duluth,*
　142 F.4th 1107 (8th Cir. 2025) .................................................................................................... 2

*Collins-Myers v. Triangle Trucking, Inc.,*
　2020 WL 1455743 (E.D. Mo. Mar. 25, 2020) ............................................................................ 7

*Department of Commerce v. New York,*
　588 U.S. 752 (2019) ................................................................................................................... 28

*District of Columbia v. Heller,*
　554 U.S. 570 (2008) ............................................................................................... 20, 22, 23, 25

*Express Scripts, Inc. v. FTC,*
　2025 WL 521812 (E.D. Mo. Feb. 18, 2025) ............................................................................... 8

*F.B. v. Our Lady of Lourdes Parish & Sch.,*
　125 F.4th 898 (8th Cir. 2025) .................................................................................................... 30

*Fife v. State,*
　31 Ark. 455 (1876) ..................................................................................................................... 24

*Free the Nipple – Springfield Residents Promoting Equality v. City of Springfield,*
　923 F.3d 508 (8th Cir. 2019) ....................................................................................................... 4

*Garcia v. Vanguard Car Rental USA, Inc.*,
540 F.3d 1242 (11th Cir. 2008)......................................................................................19

*Gonzales v. Raich*,
545 U.S. 1 (2005).................................................................................................*passim*

*Hanson v. Dist. of Columbia*,
120 F.4th 223 (D.C. Cir. 2024)......................................................................................23

*Haynes v. United States*,
390 U.S. 85 (1968)..........................................................................................................11

*Heart of Atlanta Motel, Inc. v. United States*,
379 U.S. 241 (1964)........................................................................................................18

*Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*,
740 F. Supp. 3d 509 (N.D. Tex. 2024).............................................................................9

*Hodel v. Va. Surface Mining & Reclamation Ass'n*,
452 U.S. 264 (1981)........................................................................................................18

*Holloway v. City of Des Arc Ark.*,
299 F. App'x 611 (8th Cir. 2008) .....................................................................................6

*John Doe Co. v. CFPB*,
849 F.3d 1129 (D.C. Cir. 2017) .....................................................................................28

*John Doe No. 1 v. Reed*,
561 U.S. 186 (2010) ................................................................................................. 2, 3, 5

*Johnson v. United States*,
576 U.S. 591 (2015) .......................................................................................................26

*Legal Tender Cases*,
79 U.S. (12 Wall) 457 (1870) .........................................................................................11

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .....................................................................................................2, 7

*Martin v. United Collections Bureau, Inc.*,
2015 WL 4255405 (E.D. Mo. July 14, 2015) ..................................................................7

*Meuir v. Greene Cty. Jail Emps.*,
487 F.3d 1115 (8th Cir. 2007).........................................................................................30

*Mock v. Garland*,
75 F.4th 563 (5th Cir. 2023).....................................................................................22, 25

*Moody v. NetChoice, LLC,*
   603 U.S. 707 (2024) ..................................................................................................16

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
   597 U.S. 1 (2022) ................................................................................................ 22, 23

*NFIB v. Sebelius,*
   567 U.S. 519 (2012) .......................................................................................... 11, 15

*Paxton v. Dettelbach,*
   105 F.4th 708 (5th Cir. 2024) .................................................................................2

*Perez v. United States,*
   402 U.S. 146 (1971) ..............................................................................................18

*Religious Sisters of Mercy v. Becerra,*
   55 F.4th 583 (8th Cir. 2022) ................................................................................30

*Sabri v. United States,*
   541 U.S. 600 (2004) ..............................................................................................16

*Second Amend. Found., Inc v. ATF,*
   702 F. Supp. 3d 513 (N.D. Tex. 2023) ............................................................ 21, 28

*Sipes v. United States,*
   21 F.2d  (8th Cir. 1963) ........................................................................................11

*Sonzinsky v. United States,*
   300 U.S. 506 (1937) ........................................................................................... 6, 11

*State v. Kerner,*
   107 S.E. 222 (N.C. 1921) ......................................................................................25

*Teixeira v. Cty. of Alameda,*
   873 F.3d 670 (9th Cir. 2017) ................................................................................27

*Tex. Top Cop Shop, Inc. v. Garland,*
   2024 WL 5203138 (5th Cir. Dec. 23, 2024) ........................................................16

*Tincher v. Noem,*
   164 F.4th 1097 (8th Cir. 2026) .............................................................................29

*Trump v. CASA, Inc.,*
   606 U.S. 831 (2025) ..............................................................................................30

*United States v. Adams,*
   914 F.3d 602 (8th Cir. 2019) ..................................................................................4

*United States v. Ardoin*,
  19 F.3d 177 (5th Cir. 1994) .................................................................................................12

*United States v. Articles of Drug*,
  825 F.2d 1238 (8th Cir. 1987) ............................................................................................29

*United States v. Barbeau*,
  2016 WL 1046093 (W.D. Wash. Mar. 16, 2016) ................................................................22

*United States v. Beaty*,
  2023 WL 9853255 (M.D. Fla. Jan. 20, 2023) ..........................................................21, 26, 28

*United States v. Bridges*,
  150 F.4th 517 (6th Cir. 2025) .............................................................................................23

*United States v. Butler*,
  297 U.S. 1 (1936) ...............................................................................................................13

*United States v. Chan*,
  2024 WL 4028019 (D. Haw. Sept. 3, 2024) .......................................................................21

*United States v. Comstock*,
  560 U.S. 126 (2010) ........................................................................................................9, 20

*United States v. Conner*,
  2025 WL 2858030 (W.D. Tex. Sept. 19, 2025) ......................................................21, 26, 27

*United States v. Cox*,
  235 F. Supp. 3d 1221 (D. Kan. 2017) ............................................................................21-22

*United States v. Cox*,
  906 F.3d 1170 (10th Cir. 2018) ..........................................................................................21

*United States v. Danielson*,
  2023 WL 5288049 (D. Minn. Aug. 17, 2023) ....................................................................21

*United States v. Doremus*,
  249 U.S. 86 (1919) ...........................................................................................................7, 9

*United States v. Hale*,
  978 F.2d 1016 (8th Cir. 1992) ............................................................................................12

*United States v. Hall*,
  171 F.3d 1133 (8th Cir. 1999) ................................................................................10, 11, 12

*United States v. Hari*,
  2019 WL 7838282 (D. Minn. Sept. 17, 2019) ....................................................................16

*United States v. Hernandez,*
    159 F.4th 425 (5th Cir. 2025) ................................................................................21

*United States v. Holder,*
    2024 WL 1012914 (N.D. Ga. Mar. 9, 2024) ........................................................21

*United States v. Holder,*
    2024 WL 1599916 n.7 (N.D. Ga. Jan. 19, 2024) ........................................... 26, 27

*United States v. Houston,*
    103 F. App'x 346 (10th Cir. 2004) .......................................................................12

*United States v. Jernigan,*
    750 F. Supp. 3d 579 (E.D. Va. 2024) ..................................................................21

*United States v. Jones,*
    976 F.2d 176 (4th Cir. 1992) ...............................................................................12

*United States v. Lehman,*
    8 F.4th 754 (8th Cir. 2021) ....................................................................................4

*United States v. Lightner,*
    2024 WL 2882237 (M.D. Fla. June 7, 2024) ............................................... 26, 27

*United States v. Lopez,*
    514 U.S. 549 (1995) ...................................................................... 14, 16, 17, 19

*United States v. Miller,*
    307 U.S. 174 (1939) ..................................................................................... 20, 25

*United States v. Miller,*
    2023 WL 6300581 (N.D. Tex. Sept. 27, 2023) ..................................................21

*United States v. Morgan,*
    150 F.4th 1339 (10th Cir. 2025) ..........................................................................21

*United States v. Morrison,*
    529 U.S. 598 (2000) ..................................................................................... 11, 19

*United States v. Myers,*
    2024 WL 2924081 (D. Nev. June 10, 2024) ......................................................21

*United States v. Pearson,*
    8 F.3d 631 (8th Cir. 1993) ...................................................................................11

*United States v. Price,*
    111 F.4th 392 (4th Cir. 2024) ........................................................................ 22, 23

*United States v. Pugh,*
    90 F.4th 1318 (11th Cir. 2024) ...................................................................................16

*United States v. Rahimi,*
    602 U.S. 680 (2024) ..................................................................................*passim*

*United States v. Robinson,*
    2023 WL 12066735 (M.D. Fla. Feb. 9, 2023) ............................................................21

*United States v. Robinson,*
    2025 WL 870981 (11th Cir. Mar. 20, 2025) ..............................................................21

*United States v. Royce,*
    2023 WL 2163677 (D.N.D. Feb. 22, 2023) ...............................................................21

*United States v. Rush,*
    130 F.4th 633 (7th Cir. 2025).............................................................. 21, 22, 26, 27

*United States v. Rush,*
    2023 WL 403774 (S.D. Ill. Jan. 25, 2023) ...............................................................21

*United States v. Saleem,*
    2024 WL 5084523 (4th Cir. Dec. 12, 2024) .............................................................21

*United States v. Salerno,*
    481 U.S. 739 (1987) ................................................................................................16

*United States v. Sawyer,*
    2018 WL 572094 (D. Kan. Jan. 26, 2018)................................................................21

*United States v. Serna,*
    309 F.3d 859 (5th Cir. 2002) ...................................................................................26

*United States v. Serrano,*
    651 F. Supp. 3d 1192 (S.D. Cal. 2023) .............................................................. 26, 27

*United States v. Shepherd,*
    2024 WL 71724 (S.D. Miss. Jan. 5, 2024) ...............................................................21

*United States v. Stepp-Zafft,*
    733 F. App'x 327 (8th Cir. 2018) ...................................................................10, 21, 22

*United States v. Taylor,*
    803 F.3d 931 (8th Cir. 2015).....................................................................................12

*United States v. Thompson/Ctr. Arms Co.,*
    504 U.S. 505 (1992) ................................................................................................25

*United States v. Veasley*,
98 F.4th 906 (8th Cir. 2024) ................................................................................................ 3, 4, 5

*United States v. Villalobos*,
2023 WL 3044770 (D. Idaho Apr. 21, 2023) ............................................................... 26, 28

*United States v. Wilson*,
440 F.2d 1068 (6th Cir. 1971) ................................................................................................ 12

*Watterson v. ATF*,
2024 WL 897595 (E.D. Tex. Mar. 1, 2024) ....................................................................... 21

## Statutes

18 U.S.C. § 922 .................................................................................................................................. 5

26 U.S.C. § 5802 ............................................................................................................................. 14

26 U.S.C. § 5812 ............................................................................................................................. 14

26 U.S.C. § 5841 ............................................................................................................................. 14

26 U.S.C. § 5842 ............................................................................................................................. 14

26 U.S.C. § 5843 ............................................................................................................................. 14

26 U.S.C. § 5844 ............................................................................................................................. 14

26 U.S.C. § 5845 ............................................................................................................................. 14

26 U.S.C. § 5861 ................................................................................................................. 12, 14, 15

## Legislative Materials

H.R. Rep. No. 83-1337 (1954) ................................................................................................... 24

## Rules

Federal Rule of Civil Procedure 56 ........................................................................................... 7

Federal Rule of Civil Procedure 65 ......................................................................................... 29

**INTRODUCTION**

For nearly a century, the National Firearms Act ("NFA") has regulated the manufacturing, transfer, and possession of certain classes of weapons that Congress deemed particularly dangerous, including short-barreled rifles and shotguns, suppressors, and the "any other weapons" class of concealable firearms (or "AOWs"). As demonstrated in defendants' opening brief, *see* ECF No. 33 ("Defs.' Br."), the NFA's regulation of these weapons fits squarely within Congress's constitutional authority and does not facially violate the Second Amendment. Plaintiffs offer no persuasive response to defendants' arguments, and thus have failed to carry their burden to clearly demonstrate that the challenged NFA regulations are facially unconstitutional. This Court should therefore grant summary judgment in defendants' favor on both of plaintiffs' claims.

**ARGUMENT**

**I.      Plaintiffs lack Article III standing to challenge several NFA regulations.**

As defendants' opening brief explains, *see* Defs.' Br. 7–9, plaintiffs have failed to establish Article III standing to challenge several NFA regulations—namely, the NFA's regulation of AOWs and the manufacture or making of short-barreled rifles, short-barreled shotguns, or suppressors— having never argued, much less substantiated, in their complaint or on summary judgment that such regulation injures them in any way. In response, two plaintiffs claim in supplemental declarations to have a newfound desire to make short-barreled rifles (but not short-barreled shotguns or suppressors) without complying with the NFA, and a commercial plaintiff claims to now sell AOWs. *See* Pls.' Comb. Reply Memo. of L. in Further Supp. of Pls.' MSJ & Memo. of L. in Opp. to Defs.' MSJ ("Pls.' Opp.") at 3, ECF No. 56. But plaintiffs cannot manufacture standing by rousing new intentions or engaging in new conduct mid-litigation, as it is well-established that a plaintiff's standing is assessed at the time he or she commences the action. *Carney v. Adams*, 592 U.S. 53, 59–60 (2020). No plaintiff claims to have had the intent to make short-barreled rifles or to have sold AOWs when this lawsuit started. And

1

if they did, one would have expected them to have stated as much in their complaint or in the declarations they submitted with their summary-judgment motion, where each plaintiff identified the NFA firearms he would make, acquire, or sell if not for the NFA. *See* Decl. of Chris Brown ¶¶ 9–11, ECF No. 23-1 (wishing only to sell a suppressor and acquire a short-barreled rifle); Decl. of Allen Mayville ¶ 9, ECF No. 23-2 (wishing only to acquire a suppressor); Decl. of Prime Protection STL, LLC ¶¶ 4, 6, ECF No. 23-3 (listing suppressors, short-barreled rifles, and short-barreled shotguns but no AOWs). Moreover, even setting aside this temporal issue, plaintiffs' bare declarations are too vague and lacking in "concrete details" about their supposed intentions or commercial operations to establish standing to bring a pre-enforcement challenge to these NFA regulations. *See Paxton v. Dettelbach*, 105 F.4th 708, 714–15 (5th Cir. 2024); *accord Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Christian Labor Ass'n v. City of Duluth*, 142 F.4th 1107, 1114 (8th Cir. 2025) ("vague" declarations lacking in "any details" cannot establish standing). So with no evidence that any plaintiff was suffering an actual injury from the NFA's regulation of AOWs or the manufacture or making of short-barreled rifles, short-barreled shotguns, or suppressors when this lawsuit started, plaintiffs lack standing to challenge such regulation.

## II.    Plaintiffs assert facial challenges to the relevant NFA requirements and prohibitions, not as-applied challenges.

Since commencing this case, plaintiffs have litigated their claims as *facial* challenges to the NFA's requirements and prohibitions on the manufacture, transfer, and possession of short-barreled rifles and shotguns, suppressors, and AOWs. Yet, in challenging these statutory regulations as categorically unconstitutional, plaintiffs suggest that they need not satisfy a facial challenge's demanding standard because, they posit, they are actually asserting *as-applied* challenges. *See* Pls.' Opp. 21–22. But in so arguing, plaintiffs misapprehend the distinctions between facial and as-applied challenges and refuse to acknowledge the inherently facial nature of their claims and arguments.

In determining whether a plaintiff has brought a facial or as-applied challenge, "[t]he label"

the plaintiff chooses "is not what matters." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). "The important point" of distinction is whether the plaintiff's "claim and the relief that would follow … reach beyond" the plaintiff's "particular circumstances." *Id.*; *United States v. Veasley*, 98 F.4th 906, 909– 10 (8th Cir. 2024) ("An as-applied challenge" "focus[es] only on" the plaintiff: "is applying" the challenged law "to *his* conduct" unconstitutional?). If so, the plaintiff must "satisfy [the] standards for a facial challenge," *Reed*, 561 U.S. at 194—that is, he must "establish that no set of circumstances exists under which [the challenged law] would be valid," *United States v. Rahimi*, 602 U.S. 680, 693 (2024).

Applying those principles here, plaintiffs' constitutional claims are plainly facial attacks on the challenged NFA regulations. In both their complaint and summary-judgment briefing, plaintiffs have claimed and argued that the NFA's regulation of short-barreled rifles and shotguns, suppressors, and AOWs is *categorically* beyond Congress's enumerated powers and, as to short-barreled rifles and suppressors, *categorically* violates the Second Amendment. *See, e.g.*, Compl. for Decl. & Inj. Relief ("Compl.") ¶ 2, ECF No. 1 ("This regulatory regime no longer comports with Congress's constitutionally enumerated powers."); *id.* ("[T]he NFA is unconstitutional as to the untaxed firearms."); *id.* ¶ 3 ("[T]he NFA's regulatory scheme is unconstitutional under the Second Amendment with respect to suppressors and short-barreled rifles."); *id.*, Count I ("The NFA's Regulation of Untaxed Firearms Exceeds Congress's Authority"); *id.* ¶ 82 ("The NFA's registration and related requirements on untaxed firearms exceed Congress's enumerated powers and are thus unconstitutional."); *id.*, Count II ("The NFA's Regulation of Suppressors and Short-Barreled Rifles Violates the Second Amendment"); Memo. of L. ISO Pls.' MSJ ("Pls.' Br.") at 1, ECF No. 24 ("[The NFA's] constitutional basis" has "been eliminated with respect to the making, transferring, and receiving of … suppressors, short-barreled rifles, and short-barreled shotguns …."); *id.* at 2 ("[T]he NFA's regulatory scheme is unconstitutional under the Second Amendment with respect to suppressors and short-barreled rifles."); *id.* ("[T]he Court should determine that the NFA's registration

3

scheme as concerns non-taxed 'firearms' exceeds Congress's constitutional authority …."); *id.* at 14 ("The NFA's regulation of untaxed firearms is unconstitutional because it exceeds Congress's constitutional authority on two separate, independent grounds."). Because plaintiffs contend that the NFA's regulation of these weapons is entirely unconstitutional, plaintiffs must "establish that no set of circumstances exists under which [such regulation] would be valid." *Rahimi*, 602 U.S. at 693; *cf. Bondi v. VanDerStok*, 604 U.S. 458, 467 (2025) (applying this standard where plaintiffs challenged ATF's "authority to regulate any weapons parts kits or unfinished frames or receivers"). Nowhere have plaintiffs limited their arguments, or asked this Court to limit its constitutional analyses, to the idiosyncrasies of their "particular circumstances." *See United States v. Adams*, 914 F.3d 602, 605 (8th Cir. 2019); *see also Veasley*, 98 F.4th at 909–10 ("An as-applied challenge" "focus[es] *only* on" the plaintiff and "*his* conduct." (first emphasis added)).

The relief plaintiffs request confirms the facial nature of their challenges. Based on their categorical claims, plaintiffs ask the Court to declare (i) that the NFA's regulation of short-barreled rifles and shotguns, suppressors, and AOWs categorically exceeds Congress's enumerated powers, and (ii) that the Act's regulation of short-barreled rifles and suppressors categorically violates the Second Amendment. *See* Pls.' Br. 41, 43; Compl. ¶ 4; *see also Free the Nipple – Springfield Residents Promoting Equality v. City of Springfield*, 923 F.3d 508, 509 n.2 (8th Cir. 2019) ("The relief [plaintiff] seeks—a declaration that the entire ordinance is unconstitutional—reaches beyond the particular circumstances of these plaintiffs. [Its] claim is [therefore] facial."); *United States v. Lehman*, 8 F.4th 754, 757 (8th Cir. 2021) ("An as-applied challenge asks the reviewing court to declare the disputed statute unconstitutional on the facts of the particular case."). And so, given the nature of plaintiffs' claims, arguments, and requested relief, each of their challenges is clearly a facial attack. Indeed, across *61 pages* of argument on their enumerated-powers and Second Amendment claims, plaintiffs' summary-judgment briefing *never once* mentions their particular circumstances. *See* Pls.' Br. 14–40; Pls.' Opp. 4–

37. If plaintiffs truly brought a challenge based on their particular circumstances, one would not have expected their briefing to completely ignore those circumstances in arguing the merits of their claims.

Plaintiffs nonetheless suggest that their claims are actually as-applied because, rather than challenge the NFA in its entirety, they challenge only the NFA's requirements and prohibitions "as applied" to four classes of regulated weapons.[1] *See* Pls.' Opp. 21. But that misses the point. Plaintiffs attempt to show that these regulations are unconstitutional in their entirety for these weapons, so they must meet a standard that matches that categorical claim and their request for categorical relief. *See Veasley*, 98 F.4th at 909 ("The stakes are higher in a facial challenge, so the bar goes up as well …."). Again, whether a plaintiff has brought a facial or as-applied challenge does not turn on the words they choose to characterize the scope of their claim. *Reed*, 561 U.S. at 194. Moreover, a challenge is not as-applied simply because it does not attack an entire Act of Congress. *See, e.g., Rahimi*, 602 U.S. at 693 (facial challenge to 18 U.S.C. § 922(g)(8), not the entire Gun Control Act). Indeed, the Supreme Court in *Reed* rejected this exact argument, finding that the plaintiffs had brought a facial First Amendment challenge even though the claim was, in a sense, "'as applied' in … that it [did] not seek to strike [Washington's Public Records Act] in all its applications, but only to the extent it cover[ed] referendum petitions." 561 U.S. at 194. Plaintiffs' claims are thus no less of a facial attack simply because they challenge the NFA's regulation of four classes of weapons.[2]

---

[1] Plaintiffs do not have a consistent view of their claims. While plaintiffs say that they are bringing both facial and as-applied challenges, *see* Pls.' Opp. 21, the upshot of their argument would be that they are asserting only as-applied challenges, as their claims focus solely on the NFA's application to certain classes of NFA firearms. Regardless, that argument is incorrect, as defendants have explained.

[2] Plaintiffs also point to the fact that their Commerce Clause arguments on summary judgment focus almost entirely on the NFA's regulation of intrastate activities. *See* Pls.' Opp. 23. But that's beside the point. Plaintiffs' *claim for relief* is that the NFA's regulation of short-barreled rifles and shotguns, suppressors, and AOWs categorically exceeds Congress's enumerated powers, not only insofar as it applies to intrastate activities. *See* Compl., Count I; Pls.' Br. 14 ("The NFA's regulation of untaxed firearms is unconstitutional because it exceeds Congress's constitutional authority …."). That plaintiffs

If the Court disagrees with defendants, however, and finds that plaintiffs are asserting as-applied challenges, then at the very least, plaintiffs cannot obtain injunctive relief on behalf of unknown individuals whose "particular circumstances" are completely unknown to the Court, *see id.*, including unknown members of the associational plaintiffs.

## III.    The Constitution empowers Congress to adopt the challenged NFA requirements.

### A.    The challenged NFA regulations remain a valid exercise of Congress's taxing power.

As defendants' opening brief explains, *see* Defs.' Br. 9–13, the NFA, in its current form, continues to impose a special occupational tax on businesses that import, manufacture, or deal in short-barreled rifles and shotguns, suppressors, and AOWs. And unrebutted testimony from the Chief of ATF's NFA Division establishes that the challenged NFA requirements and prohibitions continue, in several ways, to assist ATF in collecting and enforcing that special occupational tax, including by providing ATF with information that helps ensure that the tax is being paid by those who owe it, and by deterring those who do business in NFA firearms from evading their tax obligations. *See id.* at 12; *see also infra* 8. That unrebutted record evidence thus establishes that the challenged NFA regulations continue to be "in aid of a revenue purpose" and are therefore firmly within Congress's taxing power. *See Sonzinsky v. United States*, 300 U.S. 506, 513 (1937).

Plaintiffs do not meaningfully dispute any of this. Rather, convinced that the NFA's application and registration requirements do not support the collection of the special occupational tax, plaintiffs' opposition largely engages in an abstract discussion about what plaintiffs *believe* the NFA's various requirements are used for, *see* Pls.' Opp. 5–12. But nowhere do they rebut ATF's sworn testimony to the contrary. *See Holloway v. City of Des Arc*, 299 F. App'x 611, 613 (8th Cir. 2008) (a

---

try to prove that claim by arguing that only *some* of the NFA's applications exceed Congress's Commerce Clause authority proves only that plaintiffs' arguments fail to show facial unconstitutionality, *not* that plaintiffs have brought an as-applied challenge.

plaintiff may create a genuine factual dispute for purposes of summary judgment only by submitting sufficiently probative evidence that rebuts defendants' evidence); *accord, e.g.*, *Collins-Myers v. Triangle Trucking, Inc.*, 2020 WL 1455743, at *1 (E.D. Mo. Mar. 25, 2020) (Clark, J.) (a party must "set forth affirmative evidence and specific facts" to create "a genuine dispute" of material fact). Given the unrebutted testimony of the Chief of ATF's NFA Division, plaintiffs' unfounded views are simply beside the point. *See Lujan*, 504 U.S. at 561 ("In response to a summary judgment motion," "the plaintiff can no longer rest on … 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts.'" (quoting Fed. R. Civ. P. 56(e)); *Martin v. United Collections Bureau, Inc.*, 2015 WL 4255405, at*1 (E.D. Mo. July 14, 2015) ("Mere arguments … or conclusions fail to create a genuine issue of material fact ….."). Regardless, a couple points warrant a response.

*First*, while no case is on all fours, defendants' authorities explain exactly how the NFA"'s application and registration requirements help facilitate collection and enforcement of the special occupational tax. *Contra* Pls.' Opp. 7–8. Take *United States v. Doremus*, 249 U.S. 86 (1919). In upholding the taxation-and-regulation scheme of the Harrison Anti-Narcotics Control Act of 1914 under Congress's taxing power, the Supreme Court in *Doremus* explained that that statute's requirements that certain drugs be sold only by registered dealers and only to patients who had valid prescriptions served a revenue-raising purpose because they kept "the traffic" in the regulated drugs "aboveboard and subject to inspection by those authorized to collect the revenue," and "diminish[ed] the opportunity of unauthorized persons to obtain the drugs and sell them clandestinely without paying the tax" the statute imposed. *Id.* at 94. Likewise, the NFA's application and registration requirements help keep the traffic in NFA firearms aboveboard, enabling ATF to review all making and transfer applications to ensure that any business associated with the relevant firearm has paid the special occupational tax. Also, because these requirements help keep this traffic aboveboard, they further deter and reduce the opportunity for a person doing business in NFA firearms to evade paying the special occupation tax.

7

Other cases dealing directly with the NFA have upheld the Act's regulatory requirements under Congress's taxing power for the same general reasons—*i.e.*, that they provide ATF with helpful information to enforce the NFA's taxes and deter tax evasion. *See* Defs.' Br. 10–12 (collecting cases).[3]

*Second*, plaintiffs confidently assert that the NFA's application and registration requirements cannot support the collection of the special occupational tax because no business subject to that tax would fail to pay it, and thus there are no examples of such "tax circumvention." *See* Pls.' Opp. 9–10. But there are plenty. As ATF explains, "the NFA Division regularly denies applications where a transferor or transferee hasn't properly paid the [special occupational tax]." *See* Second Decl. of Stephen Albro ¶ 10, Ex. 5.[4] Indeed, in 2025 alone, "the NFA Division disapproved *691 applications* because of [special-occupational-tax] issues, including a transferor's or transferee's failure to properly pay the [special occupational tax]." *Id.* (emphasis added). Moreover, the NFA Division regularly refers delinquent special-occupational-tax payments to ATF Field Divisions, and also assesses federal firearms licensees penalties and interest for such delinquent payments, if the licensee does not cure the delinquency. *Id.* ¶¶ 11–12. Plaintiffs' speculative assertion that the NFA's application and registration requirements do not support the collection and enforcement of the special occupational tax thus falls flat in light of this unrebutted evidence.[5]

---

[3] Rather than meaningfully grapple with *Doremus*'s reasoning and its clear applicability here, plaintiffs focus on immaterial differences between the Harrison Anti-Narcotics Control Act and the NFA, none of which undermine the undisputed fact that the NFA's challenged requirements provide ATF with information that helps it enforce the NFA's special occupational tax and deter tax evasion— and are thus valid exercises of Congress's taxing power under *Doremus* (and *Sonzinsky* and its Eighth Circuit progeny). Moreover, plaintiffs' observation that *Doremus* was a "5–4 … decision" and their assertion that it is "at the outer limit" of Congress's taxing power, *see* Pls.' Opp. 8, are wholly irrelevant to this Court. *See Express Scripts, Inc. v. FTC*, 2025 WL 521812, at *3 (E.D. Mo. Feb. 18, 2025).

[4] Defendants have submitted this additional evidence to respond solely to an argument that plaintiffs raised for the first time in their second brief on the parties' cross-motions for summary judgment.

[5] Contrary to plaintiffs' assertions, *see* Pls.' Opp. 5–7, nothing in the NFA suggests that its application and registration requirements were designed to support *only* the Act's making and transfer

*Third*, plaintiffs misrely multiple times over on *Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*, 740 F. Supp. 3d 509 (N.D. Tex. 2024). They start by citing *Hobby Distillers* for the proposition that "the applicable standard" for determining whether a regulation is a valid exercise of Congress's taxing power is whether it is "needful and 'plainly adapted' to executing" a tax. *See* Pls.' Opp. 5 (citing *Hobby Distillers*, 740 F. Supp. 3d at 529). But that's the standard the district court in *Hobby Distillers* used to evaluate a challenged law under the *Necessary and Proper Clause*. *See* 740 F. Supp. 3d at 529; *see also United States v. Comstock*, 560 U.S. 126, 134 (2010) (this standard generally "define[s] the scope of the Necessary and Proper Clause"). Plaintiffs cite *no* case applying that standard in assessing a law under Congress's taxing power—much less applying it in the same heightened way as in *Hobby Distillers*.[6] Indeed, rather than "needful and 'plainly adapted,'" *Hobby Distillers*, 740 F. Supp. 3d at 529, the Supreme Court has required that a regulation have only a "reasonable relation" to a tax to be valid under Congress's taxing power, *Doremus*, 249 U.S. at 93; *see also id.* at 95 (explaining that a regulation would need to have "nothing to do with facilitating the collection of [tax] revenue" to exceed Congress's taxing power).

Moreover, the district court in *Hobby Distillers* fundamentally misunderstood the scope of Congress's taxing power, being of the view that "any law that does not require one to pay money into the treasury is not a [*sic*] exercise of the taxing power." 740 F. Supp. 3d at 525. But that is directly contrary to *Sonzinsky* (notably not cited in *Hobby Distillers*) and its Eighth Circuit progeny, all of which

---

taxes. Nor do plaintiffs cite any authority adopting the view that a statutory requirement can constitutionally support only one tax, which appears to be the upshot of plaintiffs' textual argument.

[6] The district court in *Hobby Distillers* believed that the "needful and 'plainly adapted'" standard requires that a challenged law have far more than a "rational relationship" to the furtherance of an enumerated power. *See* 740 F. Supp. 3d at 527, 529 (cleaned up). But that is not how the Supreme Court has understood it. *See Comstock*, 560 U.S. at 134 (in applying that standard to determine "whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes *a means that is rationally related* to the implementation of a constitutionally enumerated power" (emphasis added and collecting cases)).

upheld under *Congress's taxing power* NFA regulations that merely assist in collecting and enforcing taxes. *See* Defs.' Br. 10–12 (collecting cases). Finally, plaintiffs rely on *Hobby Distillers* for the proposition that Congress cannot use its taxing power to regulate persons who are not subject to a tax. *See* Pls.' Opp. 12. But Eighth Circuit precedent disagrees. *See, e.g.*, *United States v. Hall*, 1717 F.3d 1133, 1142 (8th Cir. 1999); *United States v. Stepp-Zafft*, 733 F. App'x 327, 330 (8th Cir. 2018); *see also* Defs.' Br. 10–12 (collecting numerous cases upholding NFA regulations under Congress's taxing power even though they regulated persons who did not owe a tax).

*     *     *

Rather than an imaginative tax on bakeries and sandwiches, *see* Pls.' Opp. 12, this case concerns a real tax on those who do business in certain types of weapons that Congress deemed uniquely dangerous. As the Supreme Court and Eighth Circuit have made clear, Congress has the constitutional authority to impose and enforce regulatory requirements that help ensure that those businesses pay their taxes. Because the challenged NFA regulations continue to serve that revenue-raising purpose, they are a valid exercise of Congress' taxing power. On that basis alone, plaintiffs' enumerated-powers claim must fail.

**B.      Congress's power under the Commerce Clause independently authorizes the challenged NFA regulations.**

**1.      The NFA is not solely an exercise of Congress's taxing power.**

Plaintiffs go to great lengths to convince this Court not to reach the question of whether the Commerce Clause independently authorizes the challenged NFA regulations. As they see it, the NFA's constitutionality turns on Congress's taxing power. But their arguments on this score are flawed, for reasons already explained. *See* Defs.' Br. 22–24. A few points bear emphasis.

*First*, plaintiffs continue to misread *Sonzinsky* for the proposition that the NFA is *solely* an exercise of Congress's taxing power. *See* Pls.' Opp. 13. That is *not* what *Sonzinsky* says. In the section of the opinion from which plaintiffs cite, the Supreme Court was addressing the petitioner's argument

10

that the NFA's special occupational tax exceeds Congress's taxing power because it was intended as a penalty. *Sonzinsky*, 300 U.S. at 512–14. Latching onto the Court's observation that the special occupational tax is "[o]n its face … only a taxing measure," plaintiffs repeatedly insist that the Court therein held that the NFA can be based only on Congress's taxing power. *Id.* at 513. But that's plainly wrong. When read in context, the Court was explaining that the special occupational tax is *not* on its face "a penalty resorted to as a means of enforcing the regulations" in the statute. *Id.* And because the tax is on its face a tax and not a penalty, the Court refused to inquire into Congress's "hidden motives" for imposing it. *Id.* at 513–14. Nowhere in this discussion did the Court suggest, as plaintiffs repeatedly assert, that any of the NFA's regulations (much less the *entire* NFA) are solely an exercise of Congress' taxing power, or that they could not be sustained on another enumerated power.

The other cases plaintiffs cite do not help their argument on this point. Plaintiffs quote *Haynes v. United States*, 390 U.S. 85 (1968), and *NFIB v. Sebelius*, 567 U.S. 519 (2012), as saying that the NFA is a "valid exercise of the taxing power," and cite *United States v. Hall*, 171 F.3d 1133 (8th Cir. 1999), and *Sipes v. United States*, 21 F.2d 174 (8th Cir. 1963), for the proposition that the NFA is "premised" on the taxing power. *See* Pls.' Br. 17. Defendants agree. *See supra* 6–10; Defs.' Br. 9–13. But just because an Act of Congress is a valid exercise of one enumerated power says nothing about whether it can also be a valid exercise of another enumerated power. *United States v. Morrison,* 529 U.S. 598, 607 (2000) ("Every law enacted by Congress must be based on one *or more* of its powers enumerated in the Constitution." (emphasis added)); *Legal Tender Cases*, 79 U.S. (12 Wall) 457, 534 (1870) (Congress is permitted to "group together any number of [constitutional powers] and infer from them all that the power claimed has been conferred."); Defs.' Br. 22–23 (collecting cases). Plaintiffs have thus cited no authority supporting their view that the NFA is solely an exercise of Congress's taxing power.

On the other side of the ledger are numerous courts that *have* upheld the NFA on other grounds, namely the Commerce Clause. *See, e.g.*, *United States v. Pearson*, 8 F.3d 631, 633 (8th Cir. 1993);

*United States v. Hale*, 978 F.2d 1016, 1018 (8th Cir. 1992); *United States v. Ardoin*, 19 F.3d 177, 180 (5th Cir. 1994); *United States v. Jones*, 976 F.2d 176, 184 (4th Cir. 1992); *United States v. Wilson*, 440 F.2d 1068 (6th Cir. 1971); *United States v. Houston*, 103 F. App'x 346, 349–50 (10th Cir. 2004). Plaintiffs only response to these cases is to observe that some of them involve machineguns, which they suggest are different for purposes of the Commerce Clause because Congress prohibited private possession of machineguns manufactured after 1986. *See* Pls.' Opp. 13, 16. Setting aside that this argument is incompatible with plaintiffs' contention that, under *Sonzinsky*, the NFA can *only* be an exercise of the taxing power, *supra* 10, plaintiffs never cogently explain why Congress would have the authority under the Commerce Clause to completely ban a type of firearm but *not* have the authority to merely regulate it. And as explained below, *see infra* 17–18, this is a distinction without a constitutional difference.

Moreover, as already explained, *see* Defs.' Br. 26–27, plaintiffs misrely on *Hall* in support of their Commerce Clause arguments because, among other things, it is irreconcilable with the Supreme Court's subsequent decision in *Gonzales v. Raich*, 545 U.S. 1 (2005). While plaintiffs resist that conclusion, they don't dispute that *Hall*'s Commerce Clause holding rested on three factors: (i) § 5861(d)'s lack of a jurisdictional element limiting its reach to interstate commerce, (ii) the fact that the criminal defendant's conduct was unrelated to a commercial transaction, and (iii) that Congress made no findings that intrastate possession of suppressors substantially affects interstate commerce. 171 F.3d at 1138–40. Nor do plaintiffs dispute that each of those factors was also present in *Raich*, where the Supreme Court *upheld* the challenged statute under the Commerce Clause. There is thus no way to square *Hall* with *Raich*. And as plaintiffs concede, *see* Pls.' Opp. 14, in such circumstances, this Court neither is bound by nor should follow a Court of Appeals decision that is incompatible with subsequent Supreme Court precedent. *See United States v. Taylor*, 803 F.3d 931, 933 (8th Cir. 2015).

On the other hand, the Eighth Circuit's decisions in *Hale* and *Pearson* upholding the NFA under the Commerce Clause are consistent with Supreme Court precedent and thus, contrary to what

plaintiffs contend, *see* Pls.' Opp. 15–16, are binding on this Court. Plaintiffs' arguments to the contrary

rest largely on their misapplication of *United States v. Lopez*, 514 U.S. 549 (1995), and *Raich*, *see id.* 13–

14, 15–16, which defendants have already addressed, *see* Defs.' Br. 17–21, 26–27. But also, plaintiffs'

suggestion that *Hale* and *Pearson* cannot "regain their precedential value" following *Raich*, *see* Pls.' Opp.

15, misunderstands the rules governing a district court's determination of what precedent controls a

given case. Even assuming for argument's sake that plaintiffs were correct that *Lopez* called into doubt

*Hale* and *Pearson* in the years prior to the Supreme Court's decision in *Raich*, that would not mean that

*Hale* and *Pearson* ceased to be precedent after *Lopez*. Rather, where subsequent Supreme Court

precedent casts doubt on a prior Eighth Circuit decision, a district court simply does not apply (*i.e.*, is

not controlled by) the incompatible Circuit decision in a case before it. So given that *Hale* and *Pearson*

are consistent with Supreme Court precedent (and *Hall* is not), they are controlling in this case.

*Second*, plaintiffs' arguments regarding the NFA's text are puzzling. Plaintiffs observe that the

NFA's text makes clear that its requirements facilitate the collection and enforcement of the Act's

taxes. *See* Pls.' Opp. 17–18. Again, defendants agree. *See supra* 6–10; Defs.' Br. 9–13. But just because

a regulatory requirement supports a tax says nothing about whether that requirement also validly

regulates interstate commerce, and plaintiffs cite no authority suggesting that a regulatory requirement

cannot do both, which is the upshot of their textual argument. *See* Pls.' Opp. 17–18, 25. Indeed, the

Supreme Court has explained that the taxing power can, "of course, be adopted as a means to carry

into operation another power also expressly granted," like the power to regulate interstate commerce.

*United States v. Butler*, 297 U.S. 1, 69 (1936); *see also supra* 11–12 (citing cases finding that the NFA's

regulations support taxes *and* regulate interstate commerce); *cf.* Max Pam, *Powers of Regulation Vested in*

*Congress*, 24 Harv. L. Rev. 77, 102 (1910) (quoting Justice Story: "[T]he taxing power … is often applied

as a regulation of commerce.").

Plaintiffs also continue to ignore the practical reality that, by its basic operation, the NFA's

text directly regulates interstate commerce in certain weapons. *See* Defs.' Br. 14–15 18–19, 24. Nowhere do plaintiffs contest that the "firearms" that the NFA regulates, *see* 26 U.S.C. § 5845(a)(1)– (8), are nearly always commodities manufactured, sold, and purchased in an interstate firearms market. *See* Defs.' Br. 14 (noting that 91% of NFA firearms transferred in 2025 were transferred interstate). Nor do they contest that the "manufacturers," "dealers," and "importers" that the NFA regulates, *see, e.g.*, 26 U.S.C. §§ 5802, 5841, 5842, 5843, 5845, are commercial actors that participate in that interstate firearms market, *see* Defs.' Br. 14–15, 24. Nor can they seriously contest that the importing, manufacturing, distributing, dealing, selling, leasing, transporting, and purchasing that the NFA expressly regulates, *see, e.g.*, 26 U.S.C. §§ 5802, 5812, 5841, 5842, 5843, 5844, 5845, is commerce itself. *See* Defs.' Br. 14–15, 24. To then maintain that the NFA's regulation of commerce is not "discernible" from the statutory text, *see* Pls.' Opp. 17–19, defies reality.[7]

## 2.    The NFA regulates persons and things in interstate commerce.

As defendants' opening brief explains, *see* Defs.' Br. 13–16, in the vast majority of applications, the challenged NFA requirements and prohibitions directly regulate manufacturers, distributors, dealers, and purchasers (*i.e.*, "the persons") as they participate in an interstate firearms market and the firearms (*i.e.*, "the things") that flow through that market, *see Lopez*, 514 U.S. at 558, and thereby regulate "the ingredients of interstate commerce itself," *see Raich*, 545 U.S. at 34 (Scalia, J., concurring in the judgment). Plaintiffs dispute none of this. Indeed, they nowhere attempt to explain how the

---

[7] Plaintiffs also argue that 26 U.S.C. § 5861(j)'s and (k)'s express references to foreign or interstate commerce show that Congress "knew how to invoke its Commerce Clause," but chose not to in enacting the NFA's other provisions. *See* Pls.' Opp. 17–18. But those textual references to foreign and interstate commerce serve only to *limit* the reach of those statutory provisions to activities or firearms that are *in* foreign or interstate commerce, *see* 26 U.S.C. § 5861(j) ("to transport, deliver, or receive any firearm *in* interstate commerce which has not been registered" (emphasis added)); *id.* § 5861(k) ("to receive or possess a firearm which *has been imported or brought into* the United States in violation of section 5844" (emphasis added)), whereas other NFA provisions apply also to intrastate activities that substantially affect foreign and interstate commerce.

NFA's regulation of these interstate commercial actors, interstate commercial transactions, and commodities flowing in interstate commerce can possibly exceed Congress's Commerce Clause authority.[8] Instead, they suggest that it is all irrelevant because they have argued on summary judgment that the NFA exceeds Congress's Commerce Clause authority only insofar as it regulates intrastate activities. *See* Pls.' Opp. 23. But that's a defect in plaintiffs' argument.

As explained, *see supra* 3, 5 n.2, plaintiffs' *claim for relief* is that the NFA's regulation of short-barreled rifles and shotguns, suppressors, and AOWs *categorically* exceeds Congress's enumerated powers. *See* Compl. ¶ 2 ("This regulatory regime no longer comports with Congress's constitutionally enumerated powers."); *id.*, Count I ("The NFA's Regulation of Untaxed Firearms Exceeds Congress's Authority"); *id.* ¶ 82 ("The NFA's registration and related requirements on untaxed firearms exceed Congress's enumerated powers and are thus unconstitutional."); Pls.' Br. 1 ("[The NFA's] constitutional basis" has "been eliminated with respect to the making, transferring, and receiving of … suppressors, short-barreled rifles, and short-barreled shotguns …."); *id.* ("[T]he Court should determine that the NFA's registration scheme as concerns non-taxed 'firearms' exceeds Congress's constitutional authority …."); *id.* at 14 ("The NFA's regulation of untaxed firearms is unconstitutional because it exceeds Congress's constitutional authority on two separate, independent grounds."). It is thus plaintiffs' burden to "clearly demonstrate[]," *NFIB*, 567 U.S. at 538 (citation omitted), that the challenged NFA regulations facially exceed Congress's authority—*i.e.*, that there is "no set of circumstances" under which those regulations can be applied *within* Congress's authority, *Rahimi*, 602 U.S. at 693 (citation omitted). And therefore, if this Court agrees with plaintiffs that the challenged

---

[8] Plaintiffs even appear to concede that at least 26 U.S.C. § 5861(j) and (k) are valid exercises of the Commerce Clause. *See* Pls.' Opp. 17–18 (claiming that "these provisions … invoke [Congress's] Commerce Clause powers"). So even in plaintiffs' view, the government could constitutionally prosecute an individual for moving or receiving an unregistered NFA firearm in interstate or foreign commerce. *See* 26 U.S.C. § 5861(j) (making it unlawful "to transport, deliver, or receive any firearm in interstate commerce which has not been registered").

NFA regulations facially exceed Congress's taxing power, it must then decide whether those regulations also facially exceed Congress's Commerce Clause authority in order to resolve plaintiffs' enumerated-powers claim. But as explained, *see supra* 14; Defs.' Br. 13–15, in most of their applications, the challenged NFA regulations fall within the heartland of the Commerce Clause by regulating commercial actors that participate in, and commodities that flow through, an interstate firearms market. *See Lopez*, 514 U.S. at 558. So even if plaintiffs were correct that the NFA's regulation of purely intrastate activities exceeds Congress's authority under the Commerce Clause, that would not advance their facial enumerated-powers claim. The Court can therefore resolve that claim on this ground alone.

Plaintiffs try to shrug all of this off, insisting that they need not satisfy the typical facial-challenge standard to prevail on their facial Commerce Clause theory. As they see it, all they need to show to prevail is that the challenged NFA regulations *sometimes* exceed Congress's Commerce Clause authority, *see* Pls.' Opp. 23—that is, the exact opposite of the typical standard, *see United States v. Salerno*, 481 U.S. 739, 745 (1987) ("The fact that" a challenged law "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid …."). But plaintiffs cite *no* court that applies their preferred standard in resolving facial Commerce Clause challenges. The Courts of Appeals don't. *See, e.g.*, *United States v. Pugh*, 90 F.4th 1318, 1325 (11th Cir. 2024) (applying the typical facial-challenge standard); *Tex. Top Cop Shop, Inc. v. Garland*, 2024 WL 5203138, at *2 (5th Cir. Dec. 23, 2024) (same). Nor do courts within this Circuit. *See, e.g.*, *United States v. Hari*, 2019 WL 7838282, at *2 (D. Minn. Sept. 17, 2019). Indeed, the Supreme Court recently confirmed that, except in the First Amendment context, the typical standard governs all facial challenges. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024); *see also Salerno*, 481 U.S. at 745 (there is no "'overbreadth' doctrine" outside the First Amendment); *Sabri v. United States*, 541 U.S. 600, 604 (2004) (applying the typical facial-challenge standard in resolving a facial enumerated-powers claim).

Nothing in *Lopez* is to the contrary. *Contra* Pls.' Opp. 21–22. There, the Supreme Court held

that the Gun-Free School Zones Act was *categorically* invalid under the Commerce Clause because it regulated neither the channels of interstate commerce, nor the instrumentalities of interstate commerce, nor (unlike the NFA) the persons or things in interstate commerce, nor (unlike the NFA) activities that substantially affect interstate commerce. *Lopez*, 514 U.S. at 559–68. And contrary to what plaintiffs' claim, *see* Pls.' Opp. 21–22, nowhere did the Court suggest that the Gun-Free School Zones Act could be applied constitutionally in some circumstances.

### 3. The NFA regulates intrastate activities that substantially affect interstate commerce.

As defendants opening brief explains, *see* Defs.' Br. 17–20, the NFA's regulation of intrastate activities is likewise a valid exercise of Congress's Commerce Clause authority. The NFA regulates a class of activities that are "quintessentially economic": the manufacture, distribution, sale, and possession of weapons that, in Congress's judgment, are particularly susceptible to criminal misuse. *See Raich*, 545 U.S. at 25. Although these regulated activities occur most often as part of an interstate market in NFA firearms, *see* Defs.' Br. 13–14, failing to regulate the *intrastate* manufacture, distribution, sale, and possession of these same weapons would clearly "undercut" the NFA's regulation of that interstate market by creating an unregulated sub-market in unregistered NFA firearms. *See Raich*, 545 U.S. at 18. And for that reason, it was (at the very least) rational for Congress not to exempt those intrastate activities from the NFA's broader regulatory scheme.

Plaintiffs' arguments to the contrary largely rehash their mistaken view of the relevant precedent and continue to deny the same basic realities. While defendants have already rebutted these arguments, a few points deserve emphasis.

*First*, underlying virtually all of plaintiffs' arguments is their asserted view that the challenged NFA regulations have "nothing to do with commerce" or economic activity. *See* Pls.' Opp. 26; *id.* at 24–25 (claiming that firearm "possession, making, and transfer" are not "commercial activities"). But the Supreme Court doesn't see it that way. As it explained in *Raich*, "the production, distribution, and

17

consumption of commodities," like NFA firearms, are "quintessentially economic" activities. 545 U.S. at 25–26. And "[p]rohibiting the intrastate possession or manufacture of an article of commerce," whether entirely or, like the NFA, when certain "regulatory requirements" are not met, "is a rational (and commonly utilized) means of regulating commerce in that product." *Id.* at 26.

*Second*, plaintiffs contend that the NFA does not regulate an interstate firearms "market." *See* Pls.' Opp. 26–28. But that's clearly wrong. As explained, *see* Defs.' Br. 14, the NFA regulates virtually every commercial step that occurs in the interstate market in NFA firearms, including importing, manufacturing, distributing, transporting, dealing in, transferring, purchasing, and possessing each and every NFA firearm within that market. Still, plaintiffs argue that that level of regulation is insufficient under the Commerce Clause because the NFA does not regulate the price of NFA firearms, eliminate or cap their supply, or "otherwise change any market conditions." *See* Pls.' Opp. 27 (cleaned up). But plaintiffs cite *no* case that so limits Congress's authority to regulate intrastate activities that substantially affect interstate commerce. Indeed, Congress was not regulating the price or capping the supply of any commodity when it regulated loan sharking, *see Perez v. United States*, 402 U.S. 146, 150–57 (1971), the operation of hotels, *see Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 253–62 (1964), or mining, *see Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 275–83 (1981). At any rate, the NFA *does* "change … market conditions," *contra* Pls.' Opp. 27, by regulating under what circumstances and the process by which certain firearms can be lawfully manufactured, distributed, sold, purchased, and possessed. And it *does* seek to eliminate by regulation the supply and demand for unregistered NFA firearms. In that way, the NFA employs the "rational (and commonly utilized) means of regulating commerce in [a] product" by "requiring that [an NFA firearm] be withdrawn from the market as a result of the failure to comply with regulatory requirements." *See Raich*, 545 U.S. at 26. And it does so, moreover, as an essential part of Congress's comprehensive regulation of the broader interstate firearms market, having been reenacted in 1968 as Title II of the Gun Control Act. *See* Pub.

L. No. 90-618, 82 Stat. 1213, 1227–36 (1968).

*Third*, plaintiffs continue to misrely on *Lopez* and *Morrison*. As already explained, *see* Defs.' Br. 20–21, the NFA is nothing like the laws challenged in *Lopez* and *Morrison*, which "ha[d] nothing to do with 'commerce' or any sort of economic enterprise." *Lopez*, 514 U.S. at 561; *Morrison*, 529 U.S. at 613. Rather, as defendants have established, *see* Defs.' Br. 17–18, the NFA's regulation of intrastate activities is akin to the law challenged in *Raich*, which upheld a broad statutory scheme's regulation of intrastate activities under the Commerce Clause without analyzing most of *Lopez* and *Morrison*'s considerations. *Contra* Pls.' Opp. 25. Bottom line, plaintiffs' continued reliance on *Lopez* and *Morrison*'s considerations in this context cannot be squared with the Supreme Court's subsequent decision in *Raich. See, e.g., Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1251–52 (11th Cir. 2008) ("*Raich* makes clear that when a statute regulates economic or commercial activity, *Lopez* and *Morrison*," and the "considerations" they analyzed, "are inapposite.").

## C.    The Necessary and Proper Clause further supports the challenged NFA regulations.

Plaintiffs barely mention, much less refute, defendants' defense of the challenged NFA regulations under the Necessary and Proper Clause, *see* Defs.' Br. 27–28, advancing no separate argument on that score, *see* Pls.' Opp. 12, 31. Critically, they do not dispute that the Clause empowers Congress to effectuate its taxing and Commerce Clause powers through the means it employed in the NFA (*e.g.*, application and registration requirements and prohibitions). *See* Defs.' Br. 27–28. Rather, plaintiffs' opposition largely boils down to their view that Congress has not validly exercised its taxing or Commerce Clause powers in enacting any relevant part of the NFA, and thus the challenged NFA regulations are not effectuating an enumerated power. *See* Pls.' Opp. 12, 31. That argument fails, however, for reasons already explained. *See* Defs.' Br. 9–27; *supra* 6–18.

Other than that, plaintiffs suggest that the challenged NFA regulations are not necessary and proper to effectuating Congress's taxing power because plaintiffs do not believe those regulations

support the collection and enforcement of any tax. *See* Pls.' Opp. 12. Again, that argument is belied by the undisputed evidence in the record. *See supra* 6–8. Moreover, plaintiffs' argument rests on the view that a regulatory requirement must be far more than rationally connected to a tax to be necessary and proper to its effectuation. *See* Pls.' Opp. 5; *see also supra* 9 & n.6. But the "closeness of the relationship" between the means of implementing a power and the underlying power is a matter "for congressional determination." *Burroughs v. United States*, 290 U.S. 534, 548 (1934). A court should ask only whether a statutory requirement "represent[s] a rational means for implementing" an enumerated power in determining whether the requirement is justified under the Necessary and Proper Clause. *Comstock*, 560 U.S. at 143. For reasons already explained, *see* Defs.' Br. 9–13, 27–28; *supra* 6–18, the challenged NFA regulations easily satisfy that deferential test.

## IV. The challenged NFA requirements comport with the Second Amendment.

As explained, *see* Defs.' Br. 28–32, plaintiffs' Second Amendment challenge fails in its entirety under binding precedent. Plaintiffs' arguments to the contrary are unavailing.

*First*, plaintiffs cannot escape the fact that *United States v. Miller*, 307 U.S. 174 (1939), and *District of Columbia v. Heller*, 554 U.S. 570 (2008), foreclose their Second Amendment claim as it pertains to short-barreled rifles. *See* Defs.' Br. 29. While plaintiffs insist that neither *Miller* nor *Heller* were definitive that the Second Amendment does not protect the right to possess short-barreled shotguns, *see* Pls.' Opp. 33–34, *Heller* could not have been clearer: *Miller* holds that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, *such as short-barreled shotguns*," a holding that is "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 625, 627 (emphasis added). And Courts of Appeals, including the Eighth Circuit, have thus understood *Miller* and *Heller* to hold as an "explication[] of law" "that the Second Amendment does not protect a right to possess short-barreled shotguns." *United States v. Hernandez*, 159 F.4th 425, 427–28 & n.1 (5th Cir. 2025); *accord, e.g.*,

20

*Stepp-Zafft*, 733 F. App'x at 329 ("*Heller* said that there is no Second Amendment right to possess a short-barreled shotgun ...."); *United States v. Rush*, 130 F.4th 633, 636–37 (7th Cir. 2025), *cert. denied*, 2025 WL 3620422 (U.S. Dec. 15, 2025); *United States v. Morgan*, 150 F.4th 1339, 1342–43 (10th Cir. 2025); *United States v. Robinson*, 2025 WL 870981, at *5 (11th Cir. Mar. 20, 2025), *cert. denied*, 2025 WL 3620471 (U.S. Dec. 15, 2025); *United States v. Saleem*, 2024 WL 5084523, at *1 (4th Cir. Dec. 12, 2024).

Plaintiffs offer no persuasive reason this Court should treat short-barreled rifles differently than short-barreled shotguns under the Second Amendment. As explained, *see* Defs.' Br. 29, there is a *unanimous* view among courts throughout the country—including several Courts of Appeals and in numerous opinions post-*Bruen*—that short-barreled shotguns and rifles are constitutionally indistinguishable. *See, e.g.*, *Rush*, 130 F.4th at 637; *Robinson*, 2025 WL 870981, at *5; *United States v. Cox*, 906 F.3d 1170, 1185–86 (10th Cir. 2018); *United States v. Conner*, 2025 WL 2858030, at *3–4 (W.D. Tex. Sept. 19, 2025); *United States v. Chan*, 2024 WL 4028019, at *3–4 (D. Haw. Sept. 3, 2024); *United States v. Myers*, 2024 WL 2924081, at *3–4 (D. Nev. June 10, 2024); *United States v. Holder*, 2024 WL 1012914, at *2 (N.D. Ga. Mar. 9, 2024); *Watterson v. ATF*, 2024 WL 897595, at *18 (E.D. Tex. Mar. 1, 2024); *United States v. Shepherd*, 2024 WL 71724, at *5 (S.D. Miss. Jan. 5, 2024); *United States v. Jernigan*, 750 F. Supp. 3d 579, 586–88 (E.D. Va. 2024); *Second Amend. Found., Inc v. ATF*, 702 F. Supp. 3d 513, 536–37 (N.D. Tex. 2023); *United States v. Miller*, 2023 WL 6300581, at *1–3 (N.D. Tex. Sept. 27, 2023); *United States v. Danielson*, 2023 WL 5288049, at *5 (D. Minn. Aug. 17, 2023); *United States v. Royce*, 2023 WL 2163677, at *3 (D.N.D. Feb. 22, 2023); *United States v. Robinson*, 2023 WL 12066735, at *4 (M.D. Fla. Feb. 9, 2023); *United States v. Rush*, 2023 WL 403774, at *3 (S.D. Ill. Jan. 25, 2023), *aff'd*, 130 F.4th 633 (7th Cir. 2025); *United States v. Beaty*, 2023 WL 9853255, at *7 (M.D. Fla. Jan. 20, 2023); *United States v. Sawyer*, 2018 WL 572094, at *4 (D. Kan. Jan. 26, 2018); *United States v. Cox*, 235 F. Supp. 3d 1221, 1227 (D. Kan. 2017), *aff'd*, 906 F.3d 1170 (10th Cir. 2018); *United States v. Barbeau*, 2016 WL 1046093, at *3 (W.D. Wash. Mar. 16, 2016); *see also Mock v. Garland*, 75 F.4th 563, 596 (5th Cir. 2023) (Higginson, J.,

dissenting); *cf. Stepp-Zafft*, 733 F. App'x at 329. Plaintiffs completely ignore this overwhelming judicial consensus, claiming that defendants' argument is merely "*ipse dixit* handwaving." *See* Pls.' Opp. 33. But the considered views of at least *twenty seven* judges is hardly *ipse dixit*. And, one might wonder, how many judges have adopted plaintiffs' view? Zero, it appears. And for reasons explained in the cases cited above, this Court shouldn't be the first.

At any rate, plaintiffs' argument that short-barreled rifles and suppressors should be protected under the Second Amendment because they are commonly possessed, *see* Pls.' Opp. 32–33, misstates the constitutional inquiry. The correct question to determine whether a weapon is protected under the Second Amendment (*i.e.*, *Bruen* step one) is whether the weapon is in common use *for a lawful purpose*, like self-defense. *Heller*, 554 U.S. at 624–25 ("[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens *for lawful purposes*," "like *self-defense*.") (emphasis added)); *accord, e.g.*, *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 32 (2022) (looking to whether a weapon was "in common use today for *self-defense*" (emphasis added)); *Rush*, 130 F.4th at 639 ("[T]he Supreme Court's recognition that short-barreled shotguns fall on the constitutionally unprotected side of the 'bearable arms' line [is] because they are not in common use *for a lawful purpose*—which, at its core, is *self-defense*." (emphasis added)); *Bevis v. City of Naperville*, 85 F.4th 1175, 1192 (7th Cir. 2023) ("Both Supreme Court decisions and historical sources indicate that the Arms the Second Amendment is talking about are weapons in common use *for self-defense*…. [T]he constitutional protection exists to protect the individual right to self-defense, and so that [is the] focus." (emphasis added)), *cert. denied sub nom. Harrel v. Raoul*, 144 S. Ct. 2491 (2024); *United States v. Price*, 111 F.4th 392, 402–08 (4th Cir. 2024) ("[W]hile historical tradition regarding the regulation of dangerous weapons *supports* a limitation on the scope of the Second Amendment right, a weapon must be in common use *for a lawful purpose* to be protected by that right. Thus, the Supreme Court has directed [courts] to determine whether a weapon's common purpose is a lawful one—such as *self-defense*." (emphasis added)). Therefore,

22

plaintiffs' reliance on the number of short-barreled rifles and suppressors that are registered in the United States with ATF, *see* Pls.' Br. 30–32, is misplaced, as the mere number of weapons in public circulation does nothing to establish that those weapons are in common use *for a lawful purpose* like self-defense. *See, e.g.*, *Hanson v. Dist. of Columbia*, 120 F.4th 223, 232–33 (D.C. Cir. 2024) ("[T]he answer is not to be found solely by looking to the number of a certain weapon in private hands."), *cert. denied*, 145 S. Ct. 2778 (2025); *Bianchi v. Brown*, 111 F.4th 438, 460–61 (4th Cir. 2024) ("Such a trivial counting exercise makes a mockery … of the right to keep and bear arms" and "leads to absurd consequences because it totally detaches the Second Amendment's right to keep and bear arms from its purpose of individual self-defense."), *cert. denied sub nom. Snope v. Brown*, 145 S. Ct. 1534 (2025); *United States v. Bridges*, 150 F.4th 517, 526 (6th Cir. 2025) ("[D]eciding whether weapons are 'unusual' requires more than simply contrasting the number of that kind of weapon against the total number of firearms."). Indeed, it would strain credulity that a person would use, for example, a suppressor for self-defense purposes, as a suppressor possesses no apparent self-defense characteristics, and plaintiffs suggest nothing to the contrary. *See Price*, 111 F.4th at 406 ("[T]here is no evidence before us that law-abiding citizens nonetheless choose these weapons for lawful purposes like self-defense.")

    *Second*, while it is unnecessary for the Court to reach *Bruen*'s second step given the threshold issues that defeat plaintiffs' Second Amendment claim, the NFA's regulation of short-barreled rifles and suppressors is "consistent with this Nation's historical tradition of firearm regulation." *See Bruen*, 597 U.S. at 17. As explained, *see* Defs.' Br. 29–30, the Supreme Court has consistently acknowledged a historical "tradition of prohibiting the carrying of 'dangerous and unusual weapons,'" which permits a legislature to prohibit or regulate those arms that are not "typically possessed by law-abiding citizens for lawful purposes" "like self-defense." *Heller*, 554 U.S. at 624–25, 627 (citations omitted). Moreover, there is a related historical tradition of prohibiting or regulating particularly dangerous and concealable weapons that are uniquely susceptible to criminal misuse, as reflected in several 19th century state

court decisions upholding such laws against constitutional attack. *See* Defs.' Br. 30 & n.5. Congress has thus correctly determined, consistent with similar legislative conclusions throughout our Nation's history, that the uniquely dangerous and concealable weapons regulated under the NFA are a proper subject of regulation. *See* H.R. Rep. No. 83-1337, at A395 (1954) (NFA firearms possess unique characteristics that make them uniquely susceptible to criminal misuse).

Plaintiffs fault defendants for not citing any historical analogues, *see* Pls.' Opp. 37, but that overlooks defendants' cited sources, *see* Defs.' Br. 30 & n.5. For example, in 1870, Tennessee enacted a statute that prohibited the possession of various concealable weapons, including "belt or pocket pistol[s]." *Andrews v. State*, 50 Tenn. 165, 171 (1871) (citation omitted). The Tennessee Supreme Court concluded that the statute's prohibitions related to pocket pistols did not violate a state constitutional analogue to the Second Amendment. In reaching that conclusion, the court explained that the right to keep arms did not extend to "every thing that may be useful for offense or defense," but instead extended only to "the usual arms of the citizen of the country," the "use of which will properly train and render him efficient in defense of his own liberties, as well as of the State." *Id.* at 179. Applying that test, the court concluded that the particularly concealable belt or pocket pistol (among other concealable weapons) did not constitute the usual and protected arms and could thus be constitutionally prohibited. *Id.* at 186. By contrast, the court concluded that the statute's regulation of revolvers was potentially unconstitutional, because at least some revolvers were—unlike the other weapons regulated by the statute—properly "adapted to" the aims of defense undergirding the constitutional right. *See id.*

Along the same lines, in *Fife v. State*, 31 Ark. 455, 461 (1876), the Arkansas Supreme Court confronted a state statute prohibiting the carrying of various concealable weapons, including pistols. In addressing a state constitutional challenge to the statute's prohibition as applied to pistols, the court construed the statute in light of "the company in which the pistol is placed" as applying only to

particularly small, concealable pistols—that is, those that were "usually carried in the pocket, or of a size to be concealed about the person, and used in private quarrels and brawls." *Id.* With that limitation, the court concluded that the legislature could properly prohibit the possession of such pistols "without any infringement of the" state constitutional right. *Id.*; *see also, e.g., State v. Kerner*, 107 S.E. 222, 225 (N.C. 1921) (describing similar "reasonable regulation[s]" that applied to "pistols of small size which are not borne as arms but which are easily and ordinarily carried concealed").

This historical tradition of regulating concealable weapons is mutually reinforcing of the distinct historical tradition permitting legislatures to prohibit the carrying of weapons that are not in common use for lawful purposes. *See Heller*, 554 U.S. at 581-82, 625. As the authorities cited above make clear, the reason that concealable weapons have generally been held unprotected is that those weapons are not commonly used for lawful purposes but are, instead, more well-suited to criminal misuse. Congress relied on similar reasoning in enacting the NFA as the basis for regulating distinct and narrow categories of uniquely dangerous and concealable weapons that it concluded were particularly susceptible to criminal misuse. And both Supreme Court and Court of Appeals decisions embrace that logic. *See, e.g., Miller*, 307 U.S. at 178; *Heller*, 554 U.S. at 624, 627 (explaining that short-barreled shotguns are unprotected because they are not "in common use" for "lawful purposes like self-defense" (citation omitted)); *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) (plurality opinion) ("[The NFA's] regulation of short-barreled rifles" targets "a concealable weapon" "likely to be used for criminal purposes."); *Bianchi*, 111 F.4th at 451 (short-barreled rifles "are more easily concealable than long-barreled rifles but have more destructive power than traditional handguns," giving them the "ability to inflict damage on a scale or in a manner disproportionate to the end of personal protection" and "making them particularly desirable to" criminals); *Mock*, 75 F.4th at 570 (the NFA's regulation of short-barreled shotguns targets weapons "valued for their ability to be easily concealed and to unleash devastating damage at short range"); *United States v. Serna*, 309 F.3d

859, 863 (5th Cir. 2002) ("In enacting gun control legislation Congress expressed the view that a short-barreled firearm, … when unlawfully possessed, is primarily used for violent purposes."); *Johnson v. United States*, 576 U.S. 591, 640, 642 (2015) (Alito, J., dissenting) (short-barreled shotguns "are not typically possessed for lawful purposes," as they are "notoriously dangerous" and are "uniquely attractive to violent criminals" because they "combine the deadly characteristics of conventional shotguns with the more convenient handling of handguns").

As explained, *see* Defs.' Br. 32, courts have repeatedly rejected Second Amendment challenges to the NFA's regulation of short-barreled rifles and suppressors. While most of these courts have done so on threshold grounds, *see id.* 32 n.7, several have held that the NFA is compatible with historical firearms regulations. *See, e.g.*, *Conner*, 2025 WL 2858030, at *5 (short-barreled rifles); *United States v. Lightner*, 2024 WL 2882237, at *3 (M.D. Fla. June 7, 2024) (suppressors); *United States v. Holder*, 2024 WL 1599916, at *7 n.7 (N.D. Ga. Jan. 19, 2024) (short-barreled rifles); *United States v. Serrano*, 651 F. Supp. 3d 1192, 1211–13 (S.D. Cal. 2023) (suppressors), *aff'd*, 2025 WL 3765499 (9th Cir. Dec. 30, 2025); *United States v. Villalobos*, 2023 WL 3044770, at *13 (D. Idaho Apr. 21, 2023) (suppressors); *Beaty*, 2023 WL 9853255, at *8 n.11 (suppressors); *see also Rush*, 130 F.4th at 641–45 (finding that the NFA's regulation of short-barreled rifles is "likely" consistent with the Nation's traditional of firearms regulation after an extensive historical analysis, but resolving the case on threshold grounds). Plaintiffs try to brush off these cases as "uninformed decisions" by "ill-equipped" judges. *See* Pls.' Opp. 37. But conspicuously absent from plaintiffs' briefing is a *single* case adopting their contrary view.

Moreover, plaintiffs' inexplicable criticism that these courts simply "interest-balanced" rather than applied *Bruen*'s historical framework, *id.*, misrepresents their decisions, all of which analyzed historical evidence (that this Court can and should consider) in upholding the NFA's regulations under *Bruen*'s second step. For example, the district court in *Conner* held that the NFA's "registration requirement for short-barreled firearms is consistent with the historical tradition of regulating

26

dangerous and unusual weapons to keep them out of the hands of dangerous criminals," citing, *inter alia*, 17th, 18th, and 19th century laws that "regulated the sale, transportation, testing, *recording*, storage, and manufacture of guns and ammunition" and historical laws that "prohibited riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land," the violation of which could result in "forfeiture of … arms and imprisonment." 2025 WL 2858030, at *5 (cleaned up) (citing Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 Law & Contemp. Probs. 55, 76 (2017) (hereafter "Spitzer"); *Rahimi*, 602 U.S. at 681–82). Similarly, the district court in *Lightner* held that the NFA's regulation of suppressors "is consistent with the nation's historical tradition of firearm regulation" that "substantially controlled the firearms trade," citing, *inter alia*, colonial-era laws that "controlled the areas in which settlers could sell guns" and "required the recording … of arms and munitions," and state laws that "imposed gun registration schemes,  a practice that emerged in earnest in the sixteenth and seventeenth centuries." 2024 WL 2882237, at *3 (citing *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017); Spitzer at 59–60, 76). And in *Rush*, the Seventh Circuit looked to numerous "historical regulations on barrel length," "colonial and post-colonial laws akin to modern-day registration and taxation requirements," "laws enacted around the time of founding [that] prescribed fines, taxes, or sureties on gun possession or use for violence prevention purposes," and historical laws "regulating dangerous and unusual weapons," all of which, the court found, had "striking similarities between the[ir] animating principles" and the NFA. 130 F.4th at 641–45. The other courts cited above likewise considered this same or other historical evidence in holding that the NFA comports with historical firearms regulations. *See Serrano*, 651 F. Supp. 3d at 1211–13 (citing historical laws that "were designed to combat illegal arms and ammunition trafficking and to ensure that individuals considered dangerous did not obtain firearms"); *Holder*, 2024 WL 1599916, at *7 n.7 ("Statutes and court decisions from at least the 1800s reflected an ongoing comfort with restrictions against concealed dangerous weapons …."); *Villalobos*, 2023 WL 3044770,

at *13 (citing sources from *Heller* for the "'historical tradition of prohibiting the carrying of dangerous and unusual weapons' such as silencers"); *Beaty*, 2023 WL 9853255, at *8 n.11 (relying on "Colonial laws regulating the firearms' trade"). If this Court reaches *Bruen*'s second step, it should too.

## V.    Any relief should be no more burdensome than necessary.

As explained, *see* Defs.' Br. 32–37, plaintiffs' opening brief failed to justify the breadth of their requested injunction, which would cover (i) themselves; (ii) Prime Protection's customers; (iii) the members of the associational plaintiffs; and (iv) the customers of the commercial members of the associational plaintiffs. *See* Pls.' Br. 43. Plaintiffs' opposition lends no further support.

*First*, as defendants have already shown, *see* Defs.' Br. 34, Prime Protection's theory of irreparable harm rests solely on the company's conclusory assertion that it loses business because of the NFA's registration requirement. Rather than dispute this, plaintiffs fault *defendants* for not providing them guidance on how to support their "lost sales" theory. *See* Pls.' Opp. 39. But that's *plaintiffs'* job. The bottom line is, plaintiffs cannot demonstrate irreparable harm based on a declarant's conclusory assertion of financial harm, and thus they have failed to establish Prime Protection's entitlement to injunctive relief. *See John Doe Co. v. CFPB*, 849 F.3d 1129, 1134 (D.C. Cir. 2017) (a plaintiff cannot show imminent, irreparable harm with "unsubstantiated and conclusory assertions"); *accord, e.g., Second Amend. Found.*, 702 F. Supp. 3d at 538–42 (rejecting commercial plaintiff's claim or irreparable harm that rested on a declarant's conclusory assertions); *Burns Prescription Pharm, Inc. v. Express Scripts, Inc.*, 2022 WL 17718616, at *2 (E.D. Mo. Dec. 15, 2022) (similar).

Prime Protection's "lost sales" theory of irreparable harm also fails because it relies on unsubstantiated speculation about how independent third parties will behave in the marketplace. *See* Defs.' Br. 34–35. This case is thus unlike *Department of Commerce v. New York*, 588 U.S. 752 (2019), *contra* Pls.' Opp. 43, where the Supreme Court found that the plaintiffs' standing theory did "not rest on mere speculation about the decisions of third parties" but instead rested on actual evidence of how

28

third parties were likely to act. Plaintiffs here have offered *no* non-conclusory, non-speculative evidence in support of their theory that a flood of individuals will purchase Prime Protection's NFA firearms if, and only if, this Court enjoins the enforcement of the challenged NFA regulations.[9]

*Second*, plaintiffs have still not cited any authority for the proposition that an association can seek relief on behalf of its members' customers. *See* Defs.' Br. 35–36. Plaintiffs' only retort is to disclaim that they are seeking such relief, *see* Pls.' Opp. 42, but that cannot be squared with their request for an injunction that expressly and directly enjoins enforcement of the challenged NFA regulations against the "customers" of the members of the associational plaintiffs. *See* Pls.' Br. 43. Moreover, it's unclear under what circumstances these "customers" would be protected under plaintiffs' requested injunction—*e.g.*, only for an NFA firearm purchased from an associational plaintiff's member or for *all* NFA firearms they possess, transfer, sell, make, and manufacture? Granting such an ill-defined injunction would thus, at a minimum, run afoul of Federal Rule of Civil Procedure 65(d)'s specificity requirement. *See Tincher v. Noem*, 164 F.4th 1097, 1099–1100 (8th Cir. 2026) (rejecting ill-defined injunction under Rule 65(d)); *United States v. Articles of Drug*, 825 F.2d 1238, 1247 (8th Cir. 1987) (Rule 65(d) requires that an injunction be "clearly defined.").

*Finally*, defendants have already explained why, if the Court is inclined to grant relief, it should limit any injunction only to the plaintiffs and *identified* members of the associational plaintiffs. *See* Defs.' Br. 36–37. Resisting such a limitation, plaintiffs claim that it would be "a novel holding" that an associational plaintiff lacks standing to seek relief on behalf of unidentified members. But as already explained, *see* Defs.' Br. 36, in *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583 (8th Cir. 2022), the Eighth Circuit held exactly that: "[W]e hold that the [associational plaintiff] lacks associational standing to sue

---

[9] Plaintiffs misstate defendants' argument as asserting that no "indirect" harms can support the issuance of an injunction. *See* Pls.' Opp. 41. But the problem with plaintiffs' theory is not that it relies on indirect harms, but rather that all they have offered in support of their theory are conclusory and speculation assertions, which cannot establish irreparable harm, whether direct or indirect.

on behalf of unnamed members." *Id.* at 602.[10] Plaintiffs' suggestion that defendants have not challenged the associational plaintiffs' standing to this extent is thus incorrect, *see* Defs.' Br. 36, and would be beside the point even if true, *see Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007) ("Courts are obliged to examine standing *sua sponte*" if necessary. (cleaned up)); *F.B. v. Our Lady of Lourdes Parish & Sch.*, 125 F.4th 898, 902 (8th Cir. 2025) ("Standing is a jurisdictional requirement" and thus should be "raised by the court sua sponte" if necessary. (cleaned up)).

Moreover, while plaintiffs do not dispute that so limiting an injunction would make practical sense, they suggest that doing so would "disregard[] binding precedent." *See* Pls.' Opp. 45. But plaintiffs cite no case that *requires* that this Court extend injunctive relief to an associational plaintiff's entire membership. And indeed, as the Supreme Court in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), made clear, this Court has discretion in fashioning an equitable remedy that fits "the necessities of the particular case" and comports with equitable principles, even if that means granting something less than "complete relief." *Id.* at 853–54 (citation omitted); *see also id.* at 863–64 (Thomas, J., concurring, joined by Gorusch, J.) ("[T]o say that a court *can* award complete relief is not to say that it *should* do so…. [A court] must ensure that any injunctions comport with … other principles of equity," including "weigh[ing] considerations such as equity's concern with justice also for the defendant." (cleaned up)).

## CONCLUSION

The Court should grant summary judgment in defendants' favor on all of plaintiffs' claims.

Dated: February 20, 2026        Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director

---

[10] The Eighth Circuit held as much even though (similar to here) three individual plaintiffs were members of the associational plaintiff. *Religious Sisters*, 55 F.4th at 602.

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On February 20, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of Missouri, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice
