**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| CHRIS BROWN, *et al.*,<br><br>  *Plaintiffs*,<br><br>  v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, *et al.*,<br><br>  *Defendants.* | No. 4:25-cv-1162 |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.      Are plaintiffs seeking to engage in prohibited courses of conduct "arguably affected with a constitutional interest"?................................................................................1

II.     Does the Second Amendment's "common use for a lawful purpose" inquiry belong at *Bruen*'s first or second step?..........................................................................2

III.    Who bears the burden at *Bruen*'s first step? ....................................................3

IV.     Is the "common use for a lawful purpose" inquiry merely a statistical test?..............................3

V.      Are suppressors "Arms"?........................................................................5

VI.     Is the NFA presumptively constitutional?........................................................6

# TABLE OF AUTHORITIES

**Cases**

*Andrews v. State*,
  50 Tenn. 165 (1871) ................................................................................................5

*Arms v. City of Chicago*,
  2024 WL 3495010 (N.D. Ill. July 22, 2024) ..........................................................5

*Bianchi v. Brown*,
  111 F.4th 438 (4th Cir. 2024)..................................................................................4

*Brown v. Maryland*,
  12 Wheat. 419 (1827) ..............................................................................................3

*Cox v. United States*,
  2023 WL 4203261 (D. Alaska June 27, 2023) ........................................................5

*Dist. of Columbia v. Heller*,
  554 U.S. 570 (2008) ........................................................................................*passim*

*Firearms Regul. Accountability Coal., Inc. v. Garland*,
  691 F. Supp. 3d 1043 (D.N.D. 2023) ......................................................................5

*Hanson v. Dist. of Columbia*,
  120 F.4th 223 (D.C. Cir. 2024) ...............................................................................4

*Luis v. United States*,
  578 U.S. 5 (2016) .....................................................................................................5

*McRorey v. Garland*,
  99 F.4th 831 (5th Cir. 2024).....................................................................................8

*Md. Shall Issue v. Moore*,
  116 F.4th 211 (4th Cir. 2024)...................................................................................7

*Miller v. United States*,
  2025 WL 1506362 (N.D. Ohio May 27, 2025) ........................................................5

*Morse v. Raoul*,
  804 F. Supp. 3d 808 (S.D. Ill. Sept. 5, 2025) ..........................................................5

*N.Y. Rifle & Pistol Ass'n v. Bruen*,
  597 U.S. 1 (2022) ..............................................................................................3, 7, 8

*Rocky Mountain Gun Owners v. Polis,*
   121 F.4th 96 (10th Cir. 2024)......................................................................................8

*Second Amend. Found., Inc. v. ATF,*
   702 F. Supp. 3d 513 (N.D. Tex. 2023) ........................................................................5

*Smith v. United Health Grp. Inc.,*
   106 F.4th 809 (8th Cir. 2024).....................................................................................2

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ....................................................................................................1

*Telescope Media Grp. v. Lucero,*
   936 F.3d 740 (8th Cir. 2019) .................................................................................. 1, 2

*United States v. Al-Azhari,*
   2020 WL 7334512 (M.D. Fla. Dec. 14, 2020) ............................................................5

*United States v. Arthur,*
   2023 WL 12195529 (E.D.N.C. Jan. 17, 2023).............................................................5

*United States v. Beaty,*
   2023 WL 9853255 (M.D. Fla. Jan. 20, 2023)..............................................................5

*United States v. Berger,*
   715 F. Supp. 3d 676 (E.D. Penn. 2024) .....................................................................5

*United States v. Bradley,*
   766 F. Supp. 3d 769 (S.D. Ohio 2025)........................................................................5

*United States v. Bridges,*
   150 F.4th 517 (6th Cir. 2025)......................................................................................4

*United States v. Charles,*
   159 F.4th 545 (8th Cir. 2025)......................................................................................2

*United States v. Cooperman,*
   2023 WL 4762710 (N.D. Ill. July 26, 2023)................................................................5

*United States v. Cox,*
   906 F.3d 1170 (10th Cir. 2018)...................................................................................5

*United States v. DeBorba,*
   713 F. Supp. 3d 1042 (W.D. Wash. 2024) .................................................................5

*United States v. DeFelice,*
   2024 WL 3028425 (D. Conn. June 17, 2024)..............................................................5

*United States v. Fincher,*
  538 F.3d 868 (8th Cir. 2008) .................................................................................................2

*United States v. Hasson,*
  2019 WL 4573424 (D. Md. Sept. 20, 2019) .........................................................................5

*United States v. Jernigan,*
  750 F. Supp. 3d 579 (E.D. Va. Sept. 25, 2024) ...................................................................5

*United States v. Kaczmarek,*
  2023 WL 5105042 (E.D. Mich. Aug. 9, 2023).....................................................................5

*United States v. Lightner,*
  2024 WL 2882237 (M.D. Fla. June 7, 2024).........................................................................5

*United States v. Miller,*
  307 U.S. 174 (1939) ................................................................................................................5

*United States v. Peterson,*
  161 F.4th 331 (5th Cir. 2025)............................................................................................ 6, 8

*United States v. Peterson,*
  2023 WL 5383664 (E.D. La. Aug. 21, 2023) .......................................................................5

*United States v. Price,*
  111 F.4th 392 (4th Cir. 2024).......................................................................................... 3, 4

*United States v. Rahimi,*
  602 U.S. 680 (2024) ................................................................................................................6

*United States v. Royce,*
  2023 WL 2163677 (D.N.D. Feb. 22, 2023) .........................................................................5

*United States v. Rush,*
  130 F.4th 633 (7th Cir. 2025)................................................................................................3

*United States v. Saleem,*
  659 F. Supp. 3d 683 (W.D.N.C. 2023) ................................................................................5

*United States v. Saleem,*
  2024 WL 5084523 (4th Cir. Dec. 12, 2024) ........................................................................5

*United States v. Villalobos,*
  2023 WL 3044770 (D. Idaho Apr. 21, 2023) ......................................................................5

*Watterson v. ATF,*
  2024 WL 897595 (E.D. Tex. Mar. 1, 2024) .........................................................................5

iii

Defendants submit this supplemental brief in response to the Court's order of March 24, 2026 ("Order"), ECF No. 64, instructing the parties to address the following questions.

## I. Are plaintiffs seeking to engage in prohibited courses of conduct "arguably affected with a constitutional interest"?

For plaintiffs to have Article III standing in this pre-enforcement posture, they must be seeking to engage in a prohibited course of conduct that is "arguably affected with a constitutional interest." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citation omitted). Under the Eighth Circuit's reasoning in *Telescope Media Group v. Lucero*, 936 F.3d 740 (8th Cir. 2019), it appears plaintiffs satisfy that requirement for both their Second Amendment and enumerated-powers claims.

In *Telescope Media Group*, a group of plaintiffs who wished to make wedding videos for only opposite-sex couples brought a pre-enforcement challenge to a Minnesota anti-discrimination law that prohibited their conduct. *Id.* at 748. The plaintiffs challenged the law under the First Amendment's Free Speech Clause and several other distinct constitutional theories. *Id.* at 749. On the question of pre-enforcement standing, the Eighth Circuit found that the plaintiffs' prohibited course of conduct— making films—was arguably protected under the First Amendment's Free Speech Clause. *Id.* at 749–50 (citing *Driehaus*, 573 U.S. at 159). That, in the court's view, meant not only that the plaintiffs had the requisite constitutional interest to maintain their free-speech claim, but also that "their other [non-free-speech] claims [were] affected with a constitutional interest too, *regardless of the precise legal theory.*" *Id.* (emphasis added). In other words, because the plaintiffs wished to engage in a prohibited course of conduct that was arguably protected under one of their constitutional theories, they had pre-enforcement standing to assert *all* their constitutional theories.

Under that reasoning, the same must be true for plaintiffs here. Plaintiffs wish to engage in courses of conduct that the National Firearms Act ("NFA") prohibits—*i.e.*, transferring and

1

possessing unregistered short-barreled rifles, short-barreled shotguns, and suppressors.[1] Those courses of conduct are *arguably* affected with a Second Amendment interest. *See Smith v. United Health Grp. Inc.*, 106 F.4th 809, 812 (8th Cir. 2024) (a court must assume a plaintiff is correct on the merits in assessing standing). So, under *Telescope Media Group*, it appears that all of plaintiffs' claims are arguably "affected with a constitutional interest," even though their enumerated-powers claim rests on an unrelated legal theory. *See* 936 F.3d at 749–50.

For that reason, it is unnecessary for this Court to resolve its subsidiary question regarding whether plaintiffs "possess a constitutional interest in Congress's proper exercise of its enumerated powers." *See* Order at 2.

## II.    Does the Second Amendment's "common use for a lawful purpose" inquiry belong at *Bruen*'s first or second step?

The Eighth Circuit has made clear that the Second Amendment's "common use for a lawful purpose" inquiry belongs at *Bruen*'s first step, where a court determines whether the Second Amendment's plain text, as informed by history, covers the challenger's conduct. *See United States v. Charles*, 159 F.4th 545, 546 (8th Cir. 2025) (explaining that binding Eighth Circuit precedent that holds that a specific type of weapon is not in common use for a lawful purpose "relied on the plain text of the Second Amendment," "the first step in a proper Second Amendment analysis" under *Bruen* (citing *United States v. Fincher*, 538 F.3d 868 (8th Cir. 2008))). Because this Court is bound by this precedent, it should conduct any "common use for a lawful purpose" inquiry in its *Bruen* step-one analysis.

---

[1] As defendants have explained, *see* Memo. in Opp. to Pls.' MSJ & ISO Defs.' MSJ ("Defs.' Br.") at 8–9, ECF No. 33, plaintiffs have failed to establish Article III standing to challenge several NFA regulations—*i.e.*, (i) the NFA's requirements and prohibitions insofar as they apply to AOWs, and (ii) the NFA's requirements on the manufacture or making of short-barreled rifles, short-barreled shotguns, or suppressors, and their related prohibitions—because plaintiffs submitted no evidence that they intended to engage in any courses of conduct relevant to those regulations when this lawsuit commenced, and thus failed to show that those regulations were causing or would soon cause them an actual injury.

III.    **Who bears the burden at *Bruen*'s first step?**

Plaintiffs concede that it's their burden at *Bruen*'s first step to show that the Second Amendment's plain text covers their regulated conduct, *see* Pls.' Supp. Br. at 12, ECF No. 65 (citing Court of Appeals that agree), and that's consistent with where the burden typically lies when an Act of Congress is challenged, *Brown v. Maryland*, 12 Wheat. 419, 436 (1827) (Marshall, C.J.).

IV.    **Is the "common use for a lawful purpose" inquiry merely a statistical test?**

As defendants have already explained, *see* Reply ISO Defs.' MSJ ("Defs.' Reply") at 22–23, ECF No. 58, the Second Amendment's "common use for a lawful purpose" inquiry cannot be reduced to a strictly numerical test. While the number of weapons in circulation is certainly probative of whether a particular weapon is commonly used, the inquiry does not end there. It also includes whether a type of weapon is in common use *for a lawful purpose*, like self-defense. *See Dist. of Columbia v. Heller*, 554 U.S. 570, 624–25 (2008) ("[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens *for lawful purposes*," "like self-defense." (emphasis added)); *N.Y. Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 32 (2022) (looking to whether a weapon was "in common use today for self-defense" (emphasis added)); *United States v. Rush*, 130 F.4th 633, 639 (7th Cir. 2025) ("[T]he Supreme Court's recognition that short-barreled shotguns fall on the constitutionally unprotected side of the 'bearable arms' line [is] because they are not in common use *for a lawful purpose* …." (emphasis added)), *cert. denied*, 2025 WL 3620422 (U.S. Dec. 15, 2025); *United States v. Price*, 111 F.4th 392, 402–08 (4th Cir. 2024) ("[A] weapon must be in common use *for a lawful purpose* to be protected by [the Second Amendment]. Thus, the Supreme Court has directed [courts] to determine whether a weapon's *common purpose is a lawful one*—such as self-defense …." (emphasis added)), *cert. denied*, 145 S. Ct. 1891 (2025). The mere number of weapons in public circulation cannot fully answer that question because it says nothing about the *purpose* for which a particular type of weapon is commonly used. *See Rush*, 130 F.4th at 644 ("More critically," citing statistics "says nothing of what

3

[weapons] are commonly used *for*. Second Amendment protection … extends only to those firearms in common use for a lawful purpose like self-defense, not to any prolific firearm."); *Hanson v. Dist. of Columbia*, 120 F.4th 223, 232–33 (D.C. Cir. 2024) ("[T]he answer is not to be found solely by looking to the number of a certain weapon in private hands."), *cert. denied*, 145 S. Ct. 2778 (2025); *United States v. Bridges*, 150 F.4th 517, 526 (6th Cir. 2025) ("[D]eciding whether weapons are 'unusual' requires more than simply contrasting the number of that kind of weapon against the total number of firearms.").

Indeed, a strictly numerical approach could lead to results that are contrary to the Second Amendment. For example, "excessively dangerous weapons" and those that are otherwise "ill-suited or disproportionate to" lawful purposes like self-defense could "gain constitutional protection" simply by proliferating, whether through legal or illegal channels. *See Bianchi v. Brown*, 111 F.4th 438, 460–61 (4th Cir. 2024), *cert. denied sub nom. Snope v. Brown*, 145 S. Ct. 1534 (2025); *see also Bridges*, 150 F.4th at 527. But such a result cannot be squared with the historical underpinning of the "common use for a lawful purpose" inquiry—*i.e.*, "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *See Heller*, 554 U.S. at 624, 627 (explaining that this historical tradition "fairly support[s]" the Second Amendment's limitation to those weapons in common use for a lawful purpose); *see also Price*, 111 F.4th at 405 ("[W]hile historical tradition regarding the regulation of dangerous weapons *supports* a limitation on the scope of the Second Amendment right, a weapon must be in common use for a lawful purpose to be protected by that right."). As defendants have explained, *see* Defs.' Reply at 23–25, excessively dangerous weapons and those that are uniquely adapted for criminal misuse have not been historically protected because they are not the types of weapons commonly used for lawful purposes. *See id.* (collecting cases).

4

## V.    <u>Are suppressors "Arms"?</u>

Plaintiffs appear to concede that suppressors do not naturally fit within the original public meaning of "Arms," *see* Pls.' Supp. Br. at 12–18, which the Supreme Court has explained is any "weapon[] of offence, or armour of defence," or "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another," *Heller*, 554 U.S. at 581 (cleaned up). Indeed, that is a conclusion shared by seemingly every court that has considered this issue.[2]

However, while suppressors may not be "Arms," government restrictions on the use of suppressors trigger Second Amendment scrutiny when those restrictions burden Second Amendment rights. "Constitutional rights … implicitly protect those closely related acts necessary to their exercise." *Luis v. United States*, 578 U.S. 5, 26–27 (2016) (Thomas, J., concurring in the judgment). In the Second Amendment context, the constitutional right to keep and bear arms implicitly protects certain activities that facilitate the exercise of that right, like obtaining and possessing ammunition, *see United States v. Miller*, 307 U.S. 174, 180 (1939); *Andrews v. State*, 50 Tenn. 165, 178 (1871), and "learning to handle

---

[2] *See, e.g.*, *United States v. Saleem*, 2024 WL 5084523, at *2 (4th Cir. Dec. 12, 2024); *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018); *Morse v. Raoul*, 804 F. Supp. 3d 808, 819 (S.D. Ill. Sept. 5, 2025); *United States v. Bradley*, 766 F. Supp. 3d 769, 781–82 (S.D. Ohio 2025); *Miller v. United States*, 2025 WL 1506362, at *1 (N.D. Ohio May 27, 2025); *United States v. Berger*, 715 F. Supp. 3d 676, 698–702 (E.D. Penn. 2024); *United States v. Jernigan*, 750 F. Supp. 3d 579, 589 (E.D. Va. Sept. 25, 2024); *Arms v. City of Chicago*, 2024 WL 3495010, at *7–8 (N.D. Ill. July 22, 2024); *United States v. DeFelice*, 2024 WL 3028425, at *7 (D. Conn. June 17, 2024); *United States v. Lightner*, 2024 WL 2882237, at *2–3 (M.D. Fla. June 7, 2024); *Watterson v. ATF*, 2024 WL 897595, at *17 (E.D. Tex. Mar. 1, 2024); *United States v. DeBorba*, 713 F. Supp. 3d 1042, 1064 n.6 (W.D. Wash. 2024); *Second Amend. Found., Inc. v. ATF*, 702 F. Supp. 3d 513, 536 (N.D. Tex. 2023); *United States v. Saleem*, 659 F. Supp. 3d 683, 695 (W.D.N.C. 2023); *Firearms Regul. Accountability Coal., Inc. v. Garland*, 691 F. Supp. 3d 1043, 1054 (D.N.D. 2023), *rev'd on other grounds*, 112 F.4th 507 (8th Cir. 2024); *United States v. Peterson*, 2023 WL 5383664, at *1 (E.D. La. Aug. 21, 2023); *United States v. Kaczmarek*, 2023 WL 5105042, at *2 (E.D. Mich. Aug. 9, 2023); *United States v. Cooperman*, 2023 WL 4762710, at *1 (N.D. Ill. July 26, 2023); *Cox v. United States*, 2023 WL 4203261, at *7 (D. Alaska June 27, 2023)*, aff'd*, 2024 WL 5001826 (9th Cir. Dec. 6, 2024); *United States v. Villalobos*, 2023 WL 3044770, at *12 (D. Idaho Apr. 21, 2023); *United States v. Royce*, 2023 WL 2163677, at *4 (D.N.D. Feb. 22, 2023); *United States v. Beaty*, 2023 WL 9853255, at *8 (M.D. Fla. Jan. 20, 2023); *United States v. Arthur*, 2023 WL 12195529, at *7 (E.D.N.C. Jan. 17, 2023), *aff'd*, 160 F.4th 597 (4th Cir. 2025); *United States v. Hasson*, 2019 WL 4573424, at *4 (D. Md. Sept. 20, 2019), *aff'd* 26 F.4th 610 (4th Cir. 2022); *United States v. Al-Azhari*, 2020 WL 7334512, at *3 (M.D. Fla. Dec. 14, 2020).

5

and use" arms "in a way that makes those who keep them ready for their efficient use," *Heller*, 554 U.S. at 618. Likewise, because suppressors provide practical benefits (*e.g.*, significant noise reduction) that help individuals exercise their right to keep and bear arms, the Second Amendment implicitly protects an individual's use of a suppressor when it facilitates his or her exercise of that right. Therefore, when government restrictions on the use of suppressors impose burdens on an individual's exercise of Second Amendment rights, such restrictions must be tested under *Bruen*'s second step.

But given that plaintiffs assert a *facial* challenge to the NFA's suppressor regulations, this Court need not address these questions to resolve plaintiffs' Second Amendment claim. As defendants have explained, *see* Defs.' Br. at 6–7, to succeed on their facial challenge, plaintiffs must "establish that no set of circumstances exists under which" the NFA's regulation of suppressors "would be valid" under the Second Amendment. *See United States v. Rahimi*, 602 U.S. 680, 693 (2024) (citation omitted). But these regulations clearly have valid applications that do not burden Second Amendment rights. For example, because the Second Amendment protects the right to possess arms only for "traditionally *lawful* purposes" like self-defense, *Heller*, 554 U.S. at 577 (emphasis added), the government may apply these regulations to individuals who instead pursue *unlawful* purposes—like equipping firearms with suppressors to make them more useful in criminal activity, or equipping unlawful and constitutionally unprotected firearms with suppressors—without encroaching on those individuals' Second Amendment rights. That defeats plaintiffs' facial challenge without the need for further analysis.

## VI.    Is the NFA presumptively constitutional?

The Court can also reject plaintiffs' Second Amendment claim because, as the Fifth Circuit recently explained in *United States v. Peterson*, 161 F.4th 331 (5th Cir. 2025), the NFA is a "presumptively constitutional" regulatory scheme with respect to the unique weapons it covers (*e.g.*, short-barreled rifles, suppressors), akin to the "shall issue" licensing schemes that the Supreme Court sanctioned in *Bruen*. *Id.* at 339.

In *Bruen*, the Supreme Court considered the constitutionality of New York's public-carry licensing scheme, which—like five other states at the time—required an applicant to demonstrate a special need for self-defense before he or she could obtain a public-carry license. *See* 597 U.S. at 11. The Court held that the scheme violated the Second Amendment. *Id.* But in doing so, the Court was careful to contrast unconstitutional "may issue" licensing schemes like New York's with far more common "shall issue" licensing schemes. *Id.* at 38 n.9. As the Court explained, shall-issue schemes "do not require applicants to show an atypical need for armed self-defense," and therefore "they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry." *Id.* (quoting *Heller*, 554 U.S. at 635). Rather, shall-issue schemes "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id.* (citation omitted). And unlike may-issue schemes that utilize "proper-cause standards," shall-issue schemes employ "narrow, objective, and definite standards" to guide officials' decisions. *Id.* (citation omitted). The Court thus made clear that it was not doubting the constitutionality of shall-issue licensing schemes, while also not "rul[ing] out" the viability of "constitutional challenges" to such a scheme based on "lengthy wait times in processing license applications" or where "exorbitant fees deny ordinary citizens their right to public carry." *Id.*; *see also id.* at 80 (Kavanaugh, J., concurring) ("shall-issue licensing regimes are constitutionally permissible, subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice").

The Courts of Appeals have read this portion of *Bruen* against the backdrop of *Heller*'s description of "laws imposing conditions and qualifications on the commercial sale of arms" as "presumptively lawful." *See* 554 U.S. at 626–27 & n.26. They have thus understood *Bruen* to recognize a "presumption" of constitutionality for certain regulatory regimes that share the same constitutionally permissible characteristics as the shall-issue licensing schemes that *Bruen* sanctioned. *See, e.g., Md. Shall Issue v. Moore*, 116 F.4th 211, 225 (4th Cir. 2024) (state licensing law that employed "objective criteria"

7

and required "background checks and firearms safety courses" was "presumptively constitutional" under *Bruen*), *cert. denied*, 145 S. Ct. 1409 (2025); *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 122–23, 127–28 (10th Cir. 2024) (age condition on firearm sales that employed a "narrow, objective, and definite standard that applies uniformly to all potential sellers and buyers, eliminating any possibility for subjective interpretation or exceptions," was "presumptively lawful" under *Bruen*). For example, in *McRorey v. Garland*, 99 F.4th 831, 834 (5th Cir. 2024), the Fifth Circuit held that the National Instant Criminal Background Check System, under which federally licensed firearm dealers acquire information from prospective firearm purchasers and submit that information to the system for a background check before completing a firearm sale, is a presumptively constitutional scheme that employs "narrow, objective, and definite standards" to ensure that purchasers are "law-abiding, responsible citizens." *Id.* at 834–39. And in *Peterson*, the Fifth Circuit held that the NFA's regulatory scheme for suppressors is "presumptively constitutional" because it possesses "precisely the objective and definite licensing criterion held permissible under *Bruen.*" *See* 161 F.4th at 339 (cleaned up).

In light of *Bruen* and its lower court progeny, the NFA's regulatory scheme is presumptively constitutional with respect to the weapons it covers, including short-barreled rifles and suppressors. *See id.* As *Peterson* explains, plaintiffs can overcome that presumption (and thus proceed to the second step of *Bruen*'s analysis) only with a showing that the challenged regulations have "been 'put toward abusive ends' through 'exorbitant fees' or 'lengthy wait times'" for application approval. *Id.* at 334, 339–40 (quoting *Bruen*, 597 U.S. at 38 n.9). Plaintiffs have not attempted to make such a showing, *see* Pls.' Supp. Br. at 20, and thus have failed to overcome the NFA's presumptive constitutionality. That, too, forecloses their Second Amendment claim.

*    *    *

Dated:  April 7, 2026                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

8

Civil Division

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

9

**CERTIFICATE OF SERVICE**

On April 7, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of Missouri, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Jody D. Lowenstein
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice