**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRIS BROWN; ALLEN MAYVILLE; PRIME PROTECTION STL, LLC D/B/A PRIME PROTECTION STL TACTICAL BOUTIQUE; NATIONAL RIFLE ASSOCIATION OF AMERICA; FIREARMS POLICY COALITION, INC.; SECOND AMENDMENT FOUNDATION; and AMERICAN SUPPRESSOR ASSOCIATION, | : : : : : : : : | |
| *Plaintiffs*, | : : | No. 4:25-cv-01162-SRC |
| v. | : : | **ORAL ARGUMENT REQUESTED** |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; DANIEL P. DRISCOLL, in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; UNITED STATES DEPARTMENT OF JUSTICE; and PAMELA J. BONDI, in her official capacity as Attorney General of the United States, | : : : : : : : : | |
| *Defendants*. | : : | |

**PLAINTIFFS' REPLY SUPPLEMENTAL BRIEF**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................2

    I.     Defendants Agree that Plaintiffs' Course of Conduct is "Arguably Affected with a Constitutional Interest." ......................................................................................4

    II.    The Common-Use Test is the Product of *Heller*'s and *Bruen*'s Historical Inquiry.......4

    III.   To Determine Whether a Type of Arm is "in Common Use," a Court Should Look to Nationwide Evidence of Whether it is Numerically or Jurisdictionally Common. ....6

    IV.   Plaintiffs Arguably Bear the Burden of Proving that an Item is Covered by the Plain Text of the Second Amendment. ..........................................................................10

    V.    Possession of Suppressors Is Covered by the Plain Text of the Second Amendment..............................................................................................................10

    VI.   The NFA is Not a "Shall-Issue" Licensing Regime and Shall-Issue Licensing Regimes Are Not Presumptively Constitutional...........................................................11

    VII.  ATF's Application of the NFA in this Case. ...............................................................12

CONCLUSION......................................................................................................................12

**TABLE OF AUTHORITIES**

**Cases**                                                                                       **Page(s)**

*Bond v. United States*,
564 U.S. 211 (2011)................................................................................4

*Caetano v. Massachusetts*,
577 U.S. 411 (2016)................................................................................7

*Citizens United v. Federal Election Comm'n*,
558 U.S. 310 (2010)..............................................................................11

*City of Los Angeles v. Patel*,
576 U.S. 409 (2015)..............................................................................11

*District of Columbia v. Heller*,
554 U.S. 570 (2008)..................................................................5, 7, 8, 9

*Friedman v. City of Highland Park*,
577 U.S. 1039 (2015)..............................................................................7

*Heller v. District of Columbia*,
670 F.3d 1244 (D.C. Cir. 2011)..............................................................9

*McDonald v. Chicago*,
561 U.S. 742 (2010)................................................................................9

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022)..................................................................................12

*Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*,
605 U.S. 280 (2025)................................................................................7

*Snope v. Brown*,
145 S. Ct. 1534 (2025)........................................................................6, 7

*Staples v. United States*,
511 U.S. 600 (1994)................................................................................7

*Telescope Media Group v. Lucero*,
936 F.3d 740 (8th Cir. 2019) .................................................................4

*United States v. Bridges*,
150 F.4th 517 (6th Cir. 2025) ................................................................7

*United States v. Charles*,
159 F.4th 545 (8th Cir. 2025) .............................................................5, 6

*United States v. Fincher*,
538 F.3d 868 (8th Cir. 2008) .................................................................5

*United States v. Peterson*,
161 F.4th 331 (5th Cir. 2025) ..............................................................11

## <u>Other Authorities</u>

*ATF Provides Updated Suppressor Registration Data*, AM. SUPPRESSOR ASS'N (Jan. 23, 2026), https://perma.cc/B7TP-TZNM ...................................................................................7, 8

Br. for the United States as Amicus Curiae, *Barnett v. Raoul*, Nos. 24-3060, 24-3061, 24-3062, 24-3063 (7th Cir. June 13, 2025) ...................................................................................6

Gov't's Suppl. Resp. to Def.'s Pet. for Reh'g En Banc, *United States v. Peterson*, No. 24-30043 (5th Cir. May 29, 2025), ECF No. 135 [Appx.236] ............................................................8

Plaintiffs submit this supplemental reply in response to Defendants' supplemental brief and pursuant to the Court's March 24, 2026, Order, ECF No. 64, directing the parties to address the following issues.

## I. Defendants Agree that Plaintiffs' Course of Conduct is "Arguably Affected with a Constitutional Interest."

The parties agree that Plaintiffs seek to engage in a prohibited course of conduct that is "arguably affected with a constitutional interest." Pls.' Suppl. Br. at 4–6 (Mar. 31, 2026), ECF No. 65; Defs.' Suppl. Br. at 1–2 (Apr. 7, 2026), ECF No. 66. While Plaintiffs continue to maintain that they have a "direct interest in objecting to laws that upset the constitutional balance between the National Government and the States when the enforcement of those laws causes injury that is concrete, particular, and redressable," *Bond v. United States*, 564 U.S. 211, 222 (2011)—a point that Defendants do not contest, but merely argue that it is "unnecessary" for the Court to resolve the question, Defs.' Suppl. Br. at 2—Plaintiffs agree with Defendants that Plaintiffs have Article III standing to bring their claim that the challenged NFA provisions exceed Congress's powers under *Telescope Media Group v. Lucero*, 936 F.3d 740 (8th Cir. 2019).[1]

## II. The Common-Use Test is the Product of *Heller*'s and *Bruen*'s Historical Inquiry.

*Heller*'s and *Bruen*'s application of the historical phase of the text-then-history framework leads to the inexorable conclusion that the "in common use" test belongs in the historical part of the inquiry. Pls.' Suppl. Br. at 6–9. Instead of engaging with these decisive Supreme Court precedents and explaining how Defendants' conclusion follows, Defendants simply declare that

---

[1] In a footnote, Defendants reiterate their argument that Plaintiffs lack standing to challenge certain NFA regulations. Defs.' Suppl. Br. at 2 n.1. Not only are Defendants wrong on this point, *see* Pls.' Combined Reply & Opp'n at 3–4 (Jan. 21, 2026), ECF No. 56 ("Pls.' MSJ Opp'n"), but they also ignore that the Court's supplemental briefing order did not seeking additional briefing on this point. The Court should therefore disregard Defendants' improper arguments.

the Eighth Circuit has already resolved this question and held that the "in common use" inquiry applies at the threshold "plain text" phase of the inquiry. Defs.' Suppl. Br. at 2. But Defendants misinterpret the cases upon which they rely.

First, in an aside in *United States v. Charles*, 159 F.4th 545, 546–47 (8th Cir. 2025), the Eighth Circuit characterized *United States v. Fincher*, 538 F.3d 868 (8th Cir. 2008), as holding that machineguns were not within the plain text of the Second Amendment because they are not in common use. The characterization of *Fincher* in *Charles* is non-binding dicta, however, since it was unrelated to the basis on which the *Charles* court decided the appeal. *Charles*, 159 F.4th at 547–48. Indeed, the court in *Charles* could have omitted the entire "Fincher and Heller" part of the opinion without affecting the outcome of the appeal.

Second, *Fincher* did *not* hold that common use is a textual question but rather indicated that the test comes from history. *Fincher* explained that while *Heller* held that the Second Amendment "guarantees the individual right to possess and carry weapons in case of confrontation," it also "stated that the right to possess firearms is not beyond the reach of all government regulation." 538 F.3d at 873 (quotation marks omitted). And it made clear that *Heller* looked to history for the scope of acceptable regulation. With respect to common use in particular, *Fincher* quoted *Heller* for the following proposition:

> We also recognize another important limitation on the right to keep and carry arms. *Miller* said, as we have explained, that the sorts of weapons protected were those "in common use at the time." We think that limitation is fairly supported by the *historical tradition* of prohibiting the carrying of "dangerous and unusual weapons."

*Id.* at 874 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008)) (emphasis added). *Fincher* then applied this historical tradition to conclude that "[m]achine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use." *Id.* This interpretation

5

of *Fincher* as turning on history is supported by the concurring opinion in *Charles*, which characterized *Fincher* as applying "*Heller*'s analysis based on text *and historical understanding*." *Charles*, 159 F.4th at 549 (Colloton, J., concurring in judgment) (emphasis added); *see also id.* at 549 (explaining that *Fincher* observed that *Heller* applied "historical tradition" to derive the common use standard).

Third, even if *Fincher* could hypothetically be construed as concluding that the "in common use" test applies at the threshold "plain text" phase of the inquiry, *Bruen*, which post-dated *Fincher*, undermines that conclusion, an issue that *Charles* expressly did not address. *Id.* at 547. In *Bruen*, the Supreme Court expressly separated the textual and historical analyses under the Second Amendment, and *Bruen* clearly places the "in common use" inquiry on the historical side of the line. Pls.' Suppl. Br. at 6–9.

Finally, while the Government fails to give its own view about whether common use is part of *Bruen*'s textual inquiry, it elsewhere has put forward a similar argument as Plaintiffs, contending that the "in common use" test stems from historical analysis. *See* Br. for the United States as Amicus Curiae at 9, *Barnett v. Raoul*, Nos. 24-3060, 24-3061, 24-3062, 24-3063 (7th Cir. June 13, 2025), ECF No. 83 (arguing that the "in common use" test is "historically based" (quoting *Snope v. Brown*, 145 S. Ct. 1534, 1534 (2025) (mem.) (Kavanaugh, J., respecting the denial of certiorari)) ("Govt. *Barnett* Br.").

III. **To Determine Whether a Type of Arm is "in Common Use," a Court Should Look to Nationwide Evidence of Whether it is Numerically or Jurisdictionally Common.**

To determine whether a type of arm is "in common use," a court should look to nationwide evidence of whether it is numerically or jurisdictionally common. Pls.' Suppl. Br. at 9–12. The inquiry typically begins with analyzing the total number possessed of the type of arm in question. For some types of arms, the inquiry can end there because the sheer numbers possessed of an arm

6

may establish that it cannot be considered both a dangerous *and* unusual weapon—as it is simply too common to be unusual (or considered dangerous by the people). *See Heller*, 554 U.S. at 627; *Friedman v. City of Highland Park*, 577 U.S. 1039, 1042 (2015) (Thomas, J., dissenting from the denial of certiorari). But even if an arm is less widely owned, it may still be "in common use" if it is owned by substantial numbers of Americans and is generally lawful for typical Americans to possess and use across the country. *See Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito, J., concurring); *Snope*, 145 S. Ct. at 1534 (Kavanaugh, J., respecting the denial of certiorari); *United States v. Bridges*, 150 F.4th 517, 548 (6th Cir. 2025) (Nalbandian, J., concurring in part and concurring in the judgment); *see also Staples v. United States*, 511 U.S. 600, 611 (1994); *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 297 (2025). The fundamental question is whether, based on the practices and customs of the American people, a given weapon is both dangerous and unusual. Where an arm is generally lawful and owned by the people, the Government will be unable to bear its burden of demonstrating that the people have deemed the arm to fall outside of the protections of the Second Amendment.

The Government argues that the "in common use" inquiry "cannot be reduced to a strictly numerical test," but must also include whether a weapon is "in common use *for a lawful purpose*." Defs.' Suppl. Br. at 3. What the Government misses in its attempt to articulate the "in common use" test, however, is that the relevant focus of the inquiry is *lawful* possession. *See* Govt. *Barnett* Br. at 11 (recognizing as "commonsense" the "conclusion that the most popular civilian rifle in America is in common use by law-abiding citizens for lawful reasons"). The in common use inquiry looks to the number of the arm possessed by Americans or whether the arm is generally lawful to own across the Nation. To use suppressors as an example, as of January 2026, there were approximately 5.8 million suppressors registered in the United States. *ATF Provides Updated*

*Suppressor Registration Data*, AM. SUPPRESSOR ASS'N (Jan. 23, 2026), https://perma.cc/B7TP-TZNM . Even if criminals own some number of suppressors *and* use them to commit crimes, that would not negate the fact that Americans lawfully own *5.8 million* suppressors, rendering them "in common use" for purposes of the Second Amendment. Indeed, while the *Heller* Court explicitly recognized "the problem of handgun violence in this country," 554 U.S. at 636, that had no bearing on the fact that handguns were specifically chosen by the law-abiding individuals to use for self-defense and thus were unquestionably constitutionally protected, *id*. at 628–29; *contra id*. at 682, 698–99 (Breyer, J., dissenting). Consequently, the Government's formulation of the "in common use" test cannot be correct, because it would require courts to engage in balancing of criminal use to lawful use, an inquiry that was implicitly rejected by *Heller*.

Furthermore, under a proper understanding of the "in common use" test, even if the Government is correct about what factors courts must analyze under the inquiry—a point that Plaintiffs do not concede—the Government would bear the burden under the historical phase of the Second Amendment inquiry to show that an arm is *not* in common use for a lawful purpose. The Government has not done so here. *See* Pls.' MSJ Opp'n at 31–37. Instead, Plaintiffs have presented significant, unrebutted evidence that short-barreled rifles and suppressors are in common use today for lawful purposes. *Id.*; Mem. of L. in Supp. of Pls.' Mot. for Summ. J. at 38 (Nov. 14, 2025), ECF No. 24 (explaining that statistical surveys demonstrate that short-barreled rifles are rarely used by criminals). Indeed, the Government itself has argued that suppressors' "beneficial use is overwhelming in relation to their criminal use." Gov't's Suppl. Resp. to Def.'s Pet. for Reh'g En Banc at 7, *United States v. Peterson*, No. 24-30043 (5th Cir. May 29, 2025), ECF No. 135 [Appx.236]. And, as a matter of logic, Plaintiffs have proffered ownership statistics for suppressors and short-barreled rifles registered with the Government under the NFA, which necessarily entails

8

that they are lawfully owned and there is zero indication that they are being misused for criminal purposes.

The Government also argues that "a strictly numerical approach" to the "in common use" test could result in "excessively dangerous weapons" or "those that are uniquely adapted for criminal misuse" being protected under the Second Amendment. Defs.' Suppl. Br. at 4; *see also Heller*, 554 U.S. at 720–21 (Breyer, J., dissenting) (making a similar argument that the *Heller* majority rejected, *id.* at 624–25, 629). But as Plaintiffs have explained, there are no "excessively dangerous" or "uniquely susceptible to criminal misuse" categories of weapons that categorically qualify as "dangerous and unusual" weapons unprotected under the Second Amendment. Pls.' MSJ Opp'n at 32–33. The Government's argument runs headlong into *Heller*'s reasoning about handguns, which are overwhelmingly the firearm used by criminals, yet were held to be fully protected under the Second Amendment and not bannable as dangerous and unusual weapons. In other words, if *any* type of firearm could be characterized as particularly susceptible to criminal misuse, it would be handguns, and yet the Supreme Court in *Heller* held that they are protected by the Second Amendment because they are in common use for lawful purposes. *Cf. Heller v. District of Columbia*, 670 F.3d 1244, 1290 (D.C. Cir. 2011) (Kavanaugh, J., dissenting).

The Court should also reject the Government's attempt to smuggle into the analysis precisely the kind of interest balancing that the Supreme Court rejected in *Heller*, *McDonald v. Chicago*, 561 U.S. 742 (2010), and *Bruen* under the guise of a court considering whether a weapon is "ill-suited or disproportionate to lawful purposes like self-defense." Defs.' Suppl. Br. at 4 (internal quotation marks and citation omitted). To engage in that type of interest balancing would be to reject the judgment of the American people for the court's own conception of what is "ill-suited" or "disproportionate," a path that *Bruen* forbids.

9

**IV.    Plaintiffs Arguably Bear the Burden of Proving that an Item is Covered by the Plain Text of the Second Amendment.**

Plaintiffs do not contest that Plaintiffs likely bear the burden of proving that an item is covered by the plain text of the Second Amendment. Pls.' Suppl. Br. at 12; Defs.' Suppl. Br. at 3.

**V.    Possession of Suppressors Is Covered by the Plain Text of the Second Amendment.**

The relevant conduct for purposes of determining whether suppressors are protected by the plain text of the Second Amendment is the possession or acquisition of a firearm equipped with a suppressor. That is because a suppressor has no purpose other than for use as part of a firearm, so it cannot be divorced from the firearm to which it is affixed for purposes of this inquiry. Under this proper framing of the Second Amendment inquiry, the NFA's regulation of suppressed firearms implicates presumptively protected conduct—the possession of a firearm. *See* Pls.' Suppl. Br. at 12–13. The Government is therefore wrong that Plaintiffs "concede that suppressors do not naturally fit within the original public meaning of 'Arms.'" *Contra* Defs.' Suppl. Br. at 5.

Setting aside this disagreement between the parties, however, Plaintiffs agree with the Government on the alternative grounds that "government restrictions on the use of suppressors trigger Second Amendment scrutiny when those restrictions burden Second Amendment rights." Defs.' Suppl. Br. at 5. Specifically, "because suppressors provide practical benefits (*e.g.*, significant noise reduction) that help individuals exercise their right to keep and bear arms, the Second Amendment implicitly protects an individual's use of a suppressor when it facilitates his or her exercise of that right." *Id.* at 6.

The Government's attempt to insert a facial vs. as-applied distinction here, however, lacks merit. Contrary to the Government's continued insistence otherwise, Plaintiffs challenge certain NFA requirements as applied to specific firearms *both* facially *and* as applied, Pls.' MSJ Opp'n at 20–23, so the Government's argument fails at the start. But even on the merits, the Government's

10

argument that the challenged NFA regulations cannot be facially unconstitutional because they can be applied to individuals who possess suppressors for unlawful purposes fails. Defs.' Suppl. Br. at 6. If the Government were correct, the District of Columbia's handgun ban the Supreme Court considered in *Heller* would have been constitutional as applied to individuals wanting to use handguns for criminal purposes, but the Court declared the ban *facially* unconstitutional. *See City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015). In any event, the Government's argument would at most simply require limiting any injunction in this case to individuals using the items at issue for lawful purposes, not rejecting Plaintiffs' challenge in its entirety, because "the distinction between facial and as-applied challenges . . . goes to the breadth of the remedy employed by the Court." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010).

## VI.  The NFA is Not a "Shall-Issue" Licensing Regime and Shall-Issue Licensing Regimes Are Not Presumptively Constitutional.

Plaintiffs explained at length that there is a critical difference between licensing and registration, that the NFA is a taxing and *registration* regime, not a shall-issue licensing regime, Pls.' Suppl. Br. at 18–19, and that shall-issue licensing regimes that regulate protected conduct under the Second Amendment's plain text are not presumptively constitutional but must still be justified according to history and tradition, *id.* at 19–20. The Government disagrees and embraces the Fifth Circuit's reasoning in *United States v. Peterson*, 161 F.4th 331 (5th Cir. 2025), that the NFA is a "presumptively constitutional" shall-issue licensing regime, relying heavily on footnote nine of *Bruen*, Defs.' Suppl. Br. at 6–8. But for the reasons Plaintiffs have already explained, the Government is wrong and places unwarranted emphasis on a footnote that does not mean what the Government says it means. Pls.' Suppl. Br. at 18–20. The Government does not engage with Plaintiffs' analysis whatsoever.

11

## VII.    ATF's Application of the NFA in this Case.

To the extent that the Court disagrees and determines the NFA to be at least in part a shall-issue licensing regime, the Government has applied the NFA "toward abusive ends" by leveraging the Act to establish a registry of protected arms. *See* Pls.' Suppl. Br. at 20. The Government's attempt to cabin the "toward abusive ends" inquiry to just "exorbitant fees" or "lengthy wait times" is not supported by *Bruen*, which expressly described those two factors are just illustrative examples, not the sole factors that could be abusive ends. *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 38 n.9 (2022) ("That said, because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, *for example*, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." (emphasis added)).

## CONCLUSION

The Court should grant Plaintiffs' motion for summary judgment and deny the Government's motion.

Dated: April 14, 2026                             Respectfully Submitted,

                                                  /s/ David H. Thompson
                                                  David H. Thompson*
                                                  Peter A. Patterson*
                                                  Nicholas A. Varone*
                                                  COOPER & KIRK, PLLC
                                                  1523 New Hampshire Avenue, N.W.
                                                  Washington, DC 20036
                                                  Tel: (202) 220-9600
                                                  dthompson@cooperkirk.com
                                                  ppatterson@cooperkirk.com
                                                  nvarone@cooperkirk.com

                                                  *Admitted *pro hac vice*

                                                  *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

On April 14, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of Missouri, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ David H. Thompson
David H. Thompson
COOPER & KIRK, PLLC