**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

CHRIS BROWN, et al.,

               *Plaintiffs*,

    v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, et al.,

               *Defendants*.

No. 4:25-cv-01162-SRC

**SUPPLEMENTAL BRIEF OF CITY OF BALTIMORE, MARYLAND; CITY OF COLUMBUS, OHIO; HARRIS COUNTY, TEXAS; EVERYTOWN FOR GUN SAFETY; BRADY CENTER TO PREVENT GUN VIOLENCE; AND GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... i

I.      "Common Use" Is a Step-One Inquiry ................................................................... 1

II.     Plaintiffs Bear the Burden at Step One .................................................................. 4

III.    Plaintiffs Must Show that the Restricted Items Are "In Common Use Today for Self-Defense" .............................................................................................................. 4

CONCLUSION ..................................................................................................................... 8

## TABLE OF AUTHORITIES

*Antonyuk v. James*,
   120 F.4th 941 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1900 (2025) ........................................ 3

*Bevis v. City of Naperville*,
   85 F.4th 1175 (7th Cir. 2023), *cert. denied*, 144 S. Ct. 2491 (2024) ................................... 7, 8

*Bianchi v. Brown*,
   111 F.4th 438 (4th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 1534 (2025) ......... 4, 5, 6, 7, 8

*Caetano v. Massachusetts*,
   577 U.S. 411 (2016) ........................................................................................................ 5

*Duncan v. Bonta*,
   133 F.4th 852 (9th Cir. 2025) (en banc),
   *petition for cert. filed*, No. 25-198 (U.S. Aug. 15, 2025) ................................................... 1, 5, 6

*Friedman v. City of Highland Park*,
   784 F.3d 406 (7th Cir. 2015) ........................................................................................... 6

*Hanson v. District of Columbia*,
   120 F.4th 223 (D.C. Cir. 2024), *cert. denied*, 145 S. Ct. 2778 (2025) .................................. 5, 8

*Johnson v. Jacobson*,
   804 F. Supp. 3d 927 (D. Minn. 2025),
   *appeal docketed*, No. 25-3036 (8th Cir. Oct. 14, 2025) ........................................................ 2

*Knife Rights, Inc. v. Bonta*,
   No. 3:23-cv-00474, 2024 WL 4224809 (S.D. Cal. Aug. 23, 2024),
   *aff'd*, 165 F.4th 1330 (9th Cir. 2026) ............................................................................... 7

*Lane v. Cacace*,
   No. 7:22-cv-10989, 2025 WL 903766 (S.D.N.Y. Mar. 25, 2025) .......................................... 3

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) ........................................................................................................ 7

*Nat'l Ass'n for Gun Rights v. Lamont*,
   153 F.4th 213 (2d Cir. 2025), *petition for cert. filed*, No. 25-421 (U.S. Oct. 3, 2025) ...... 5, 6, 7

*N.Y. State Firearms Ass'n v. James*,
   157 F. 4th 232 (2d Cir. 2025) ........................................................................................... 4

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
   597 U.S. 1 (2022) ......................................................................................................... *passim*

*Ocean State Tactical, LLC v. Rhode Island*,
   95 F.4th 38 (1st Cir. 2024), *cert. denied*, 145 S. Ct. 2771 (2025)......................................... 5, 6

*Rocky Mountain Gun Owners v. Polis*,
   121 F.4th 96 (10th Cir. 2024)......................................................................................... 3

*State v. Giannone*,
   323 A.3d 360 (Conn. App. Ct. 2024) ............................................................................ 3

*United States v. Alaniz*,
   69 F.4th 1124 (9th Cir. 2023)...................................................................................... 3, 8

*United States v. Alston*,
   No. 1:23-cr-00165, 2024 WL 4151608 (E.D. Mo. Aug. 21, 2024),
   *adopted by* 2024 WL 4144198 (E.D. Mo. Sept. 11, 2024) ........................................... 2

*United States v. Baxter*,
   792 F. Supp. 3d 916 (S.D. Iowa 2025)............................................................................ 2

*United States v. Bolden*,
   No. 4:23-cr-00083, 2024 WL 5106477 (E.D. Mo. Dec. 13, 2024) ................................. 5

*United States v. Bridges*,
   150 F.4th 517 (6th Cir. 2025)......................................................................................... 3

*United States v. Charles*,
   159 F.4th 545 (8th Cir. 2025)...................................................................................... 2, 4, 8

*United States v. Gomez*,
   159 F.4th 172 (2d Cir. 2025), *cert. denied*, --- S. Ct. ----, 2026 WL 795188 (2026)................ 8

*United States v. Morgan*,
   150 F.4th 1339 (10th Cir. 2025), *cert. denied*, 146 S. Ct. 907 (2025) .............................. 4, 5, 8

*United States v. Ochoa Moreno*,
   811 F. Supp. 3d 981 (S.D. Iowa 2025)............................................................................ 2

*United States v. Price*,
   111 F.4th 392 (4th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 1891 (2025) ..................... 3

*United States v. Rahimi*,
   602 U.S. 680 (2024) ..................................................................................................... 7

*United States v. Rahimi*,
   61 F.4th 443 (5th Cir. 2023), *rev'd*, 602 U.S. 680 (2024).......................................... 3

*United States v. Rush*,
   130 F.4th 633 (7th Cir. 2025), *cert. denied*, 146 S. Ct. 985 (2025) ................................. 6

*United States v. Veasley*,
   98 F.4th 906 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 304 (2024) ...................................... 1, 3

*Worth v. Jacobson*,
   108 F.4th 677 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 1924 (2025) ...................................... 4

Amici curiae in support of Defendants—the City of Baltimore, Maryland; the City of Columbus, Ohio; Harris County, Texas; Everytown for Gun Safety; Brady Center to Prevent Gun Violence; and Giffords Law Center to Prevent Gun Violence—jointly submit this supplemental brief in response to the Court's order of March 24, 2026, ECF No. 64, to address the Court's questions regarding the "common use" issue under the Second Amendment.[1]

## I.   "Common Use" Is a Step-One Inquiry

As Defendants explain, *see* ECF No. 66 at 2, the Eighth Circuit has already answered this Court's question regarding whether the Second Amendment's "common use" inquiry "belongs at *Bruen*'s first, or second step," Order at 3. It belongs at step one.

The Eighth Circuit made that clear two years ago, in *United States v. Veasley*, 98 F.4th 906, 910 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 304 (2024). There, in describing the proper framework for assessing whether "conduct … falls within the plain text of the Second Amendment," the Eighth Circuit pointed directly to *Bruen* and observed that the handguns at issue meet the textual threshold because they "are weapons 'in common use' today." *Id.* (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 31-32 (2022)). District courts in this Circuit have since relied on this language from *Veasley* to place the "common use" inquiry at step one.

---

[1] While Amici focus this brief exclusively on the Court's "common use" questions, three of them (Baltimore, Columbus, and Harris County) previously addressed two of the other questions raised in the Order, explaining that (i) silencers are accessories, not "Arms," *see* ECF No. 48 at 21-22, and (ii) the challenged NFA requirements are a lawful "shall-issue" regime, *see id.* at 16-19. Amici refer the Court to that prior briefing for analysis of those issues. Defendants suggest that anything that "provide[s] practical benefits," such as "significant noise reduction," is "implicitly" protected by the Second Amendment. ECF No. 66 at 6. That is incorrect: rather, the question is whether a component or accessory is "necessary for the ordinary operation of a protected weapon." *Duncan v. Bonta*, 133 F.4th 852, 867 (9th Cir. 2025) (en banc), *petition for cert. filed*, No. 25-198 (U.S. Aug. 15, 2025); *see id.* at 866-68. Because silencers are not, they are unprotected accessories and not "Arms" protected by the Second Amendment. *See* ECF No. 48 at 21-22.

*See, e.g.*, *United States v. Ochoa Moreno*, 811 F. Supp. 3d 981, 990 (S.D. Iowa 2025); *United States v. Baxter*, 792 F. Supp. 3d 916, 926 (S.D. Iowa 2025); *see also, e.g.*, *United States v. Alston*, No. 1:23-cr-00165, 2024 WL 4151608, at *7 & n.14 (E.D. Mo. Aug. 21, 2024) (quoting this language from *Veasley* in analyzing "the first step of the *Bruen* framework"), *adopted by* 2024 WL 4144198 (E.D. Mo. Sept. 11, 2024).

More recently, the Eighth Circuit recognized this point in *United States v. Charles*, 159 F.4th 545, 546-47 (8th Cir. 2025), a challenge to the federal restriction on machinegun possession. As Defendants note, *Charles* again indicated that the "common use" inquiry "belongs at *Bruen*'s first step." ECF No. 66 at 2. And at least one district court in this Circuit, even without citing the binding Eighth Circuit authority on this point, has likewise concluded that *Heller* and *Bruen* require analyzing "whether the firearms at issue are 'weapons in common use today for self-defense'" at "Step One of *Bruen*'s test." *Johnson v. Jacobson*, 804 F. Supp. 3d 927, 936 (D. Minn. 2025) (quoting *Bruen*, 597 U.S. at 32, in turn quoting *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008)), *appeal docketed*, No. 25-3036 (8th Cir. Oct. 14, 2025).

Contrary to Plaintiffs' contentions, *see* ECF No. 65 at 6-9; ECF No. 67 at 6, placing "common use" at step one follows directly from *Bruen*. There, the Supreme Court explained the two steps to Second Amendment analysis: first, evaluating whether the conduct at issue falls within the scope of the right, and second, if it does, determining whether the challenged restrictions comport with historical tradition. *See Bruen*, 597 U.S. at 24. In addressing the first step, *Bruen* made three points: (1) petitioners were "part of 'the people' whom the Second Amendment protects"; (2) the act of "public carry" fell within the "natural[]" definition of "bear arms"; and (3) the handguns they sought to bear were "weapons 'in common use' today for self-defense." *Id.* at 31-32. Only after that did *Bruen* confirm that the "Second Amendment's plain

text thus presumptively guarantees" petitioners' "proposed course of conduct—carrying handguns publicly for self-defense." *Id.* at 32-33. And only then did *Bruen* place the "burden … on [the State]" to show that its law was "consistent with this Nation's historical tradition." *Id.* at 33-34. By considering "these inquiries at step one," *Bruen* made clear that these "limitations on the scope of the Second Amendment right"—including "common use"—"are inherent in the text of the amendment." *United States v. Price*, 111 F.4th 392, 400-01 (4th Cir. 2024) (en banc) (citing *Bruen*, 597 U.S. at 31-32), *cert. denied*, 145 S. Ct. 1891 (2025); *see also Veasley*, 98 F.4th at 910.

The Eighth Circuit is in good company in locating "common use" at step one. "The overwhelming majority of courts considering Second Amendment challenges address common use at step one." *Lane v. Cacace*, No. 7:22-cv-10989, 2025 WL 903766, at *7 (S.D.N.Y. Mar. 25, 2025); *see also State v. Giannone*, 323 A.3d 360, 386, 390 & n.32 (Conn. App. Ct. 2024) (explaining that its conclusion that "common use" is "part of *Bruen*'s first step" is "consistent with that of a majority of other courts that have decided the issue"; citing *Veasley* and other cases). That includes five of the six other circuits to have resolved this question: the Second, Fourth, Fifth, Ninth, and Tenth Circuits.[2] Only the Sixth Circuit has squarely placed the "common use" analysis at the step-two, historical inquiry. *See United States v. Bridges*, 150 F.4th 517, 524-26 (6th Cir. 2025). But, as explained, that is contrary to *Bruen* and is not the law of this Circuit.

---

[2] *See, e.g.*, *Antonyuk v. James*, 120 F.4th 941, 981 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 1900 (2025); *Price*, 111 F.4th at 402; *United States v. Rahimi*, 61 F.4th 443, 454 (5th Cir. 2023), *rev'd on other grounds*, 602 U.S. 680 (2024); *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023); *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 113-14 (10th Cir. 2024).

## II.     Plaintiffs Bear the Burden at Step One

Plaintiffs do not contest that they bear the burden at step one of the Second Amendment analysis, ECF No. 65 at 12, and Defendants agree, ECF No. 66 at 3. This is plainly correct. As numerous courts of appeals have held, "[u]nder the first step of the *Bruen* analysis, the plaintiff bears the burden." *N.Y. State Firearms Ass'n v. James*, 157 F.4th 232, 244 (2d Cir. 2025); *accord* ECF No. 65 at 12 (collecting cases); *see also Worth v. Jacobson*, 108 F.4th 677, 688 (8th Cir. 2024) (explaining that if the initial, textual step is satisfied, "the burden *shifts* to the government" at step two (emphasis added)), *cert. denied*, 145 S. Ct. 1924 (2025).

## III.    Plaintiffs Must Show that the Restricted Items Are "In Common Use Today for Self-Defense"

*Bruen* establishes that the "common use" question under the Second Amendment is whether an arm is lawfully "'in common use' today for self-defense." *Bruen*, 597 U.S. at 32 (quoting *Heller*, 554 U.S. at 627). Applying that standard requires consideration of a weapon's actual use and objective design and features, which establish the uses for which it is suited. *See, e.g.*, *United States v. Morgan*, 150 F.4th 1339, 1344, 1348 (10th Cir. 2025), *cert. denied*, 146 S. Ct. 907 (2025); *Bianchi v. Brown*, 111 F.4th 438, 450-52, 458-61 (4th Cir. 2024) (en banc), *cert. denied*, 145 S. Ct. 1534 (2025). Weapons that are commonly used in and suitable for lawful self-defense fall within the scope of the Second Amendment right, but those that are "most useful in military service," *Morgan*, 150 F.4th at 1348 (quoting *Heller*, 554 U.S. at 627), or "ill-suited and disproportionate to the need for self-defense," *Bianchi*, 111 F.4th at 441, do not. That limitation follows sensibly from the "'common use for self-defense' rationale for the private right to bear arms." *Charles*, 159 F.4th at 547.

Plaintiffs nevertheless argue for a very different approach to "common use." They assert that the focus of the inquiry should not be on "'common use' today for self-defense," *Bruen*, 597

4

U.S. at 32 (quoting *Heller*, 554 U.S. at 627), but instead on whether a type of arm is "numerically or jurisdictionally common." ECF No. 67 at 6. That is not the law.

Courts have repeatedly rejected the contention that the "common use" inquiry reduces to a "trivial counting exercise." *Bianchi*, 111 F.4th at 460; *see, e.g.*, *Nat'l Ass'n for Gun Rights v. Lamont*, 153 F.4th 213, 232-33 (2d Cir. 2025) ("*NAGR*"), *petition for cert. filed*, No. 25-421 (U.S. Oct. 3, 2025); *Duncan*, 133 F.4th at 882-83 (citing cases from the First, Fourth, Seventh, and D.C. Circuits). As these courts have explained, "'the [Supreme] Court's choice of the phrase common *use* instead of common *possession*' means more than 'the number of a certain weapon in private hands.'" *Morgan*, 150 F.4th at 1347 (quoting *Bianchi*, 111 F.4th at 460, and *Hanson v. District of Columbia*, 120 F.4th 223, 233 (D.C. Cir. 2024), *cert. denied*, 145 S. Ct. 2778 (2025)); *see* ECF No. 58 at 22-23; ECF No. 66 at 3-4. Supreme Court precedent thus instructs that the inquiry does not reduce to a question of counting.[3]

Assessing "common use" through a popularity test of the sort Plaintiffs propose would mean that the government would be powerless to prohibit a weapon or accessory "any time an undefined number of people own an undefined number" of that item, regardless of how rarely it

---

[3] Plaintiffs point to Justice Alito's concurrence in *Caetano v. Massachusetts*, 577 U.S. 411 (2016), in support of their position. *See* ECF No. 65 at 10-11 (citing *id.* at 420 (Alito, J., concurring in the judgment)). But, as several appellate courts have explained, "this non-binding concurrence cannot bear the weight Plaintiffs place on it." *NAGR*, 153 F.4th at 233; *accord Hanson*, 120 F.4th at 238 n.7; *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 51 (1st Cir. 2024), *cert. denied*, 145 S. Ct. 2771 (2025); *see also United States v. Bolden*, No. 4:23-cr-00083, 2024 WL 5106477, at *2 (E.D. Mo. Dec. 13, 2024) (noting that "Justice Alito's reasoning did not secure a majority of the Court"). Plaintiffs' attempted reliance on inapposite dicta from two other Supreme Court cases is likewise of no moment. *See* ECF No. 65 at 11 (citing *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 297 (2025), and *Staples v. United States*, 511 U.S. 600, 611 (1994)). Neither of those cases concerned the Second Amendment, let alone a restriction on weapons or accessories like the NFA. And neither addressed the question of "common use" or, more relevantly, "'common use' today for self-defense," *Bruen*, 597 U.S. at 32 (quoting *Heller*, 554 U.S. at 627).

is used in lawful self-defense, its suitability for that purpose, or its excessive dangerousness. *Duncan*, 133 F.4th at 883; *see Bianchi*, 111 F.4th at 461. Such an approach "defies reason." *Ocean State Tactical*, 95 F.4th at 50; *see Bianchi*, 111 F.4th at 460 (observing that a strictly numerical test "makes a mockery … of the right to keep and bear arms"); ECF No. 58 at 22-23. And it "would 'lead[] to absurd consequences' where unusually dangerous arms like the M-16 or 'the W54 nuclear warhead' can 'gain constitutional protection merely because [they] become[] popular before the government can sufficiently regulate [them].'" *NAGR*, 153 F.4th at 233 (quoting *Bianchi*, 111 F.4th at 460); *see* ECF No. 66 at 4.

Plaintiffs' theory of "common use" is further contradicted by historical tradition. Throughout this nation's history, jurisdictions have often moved to prohibit weapons precisely because they were becoming "all too common," *Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015), thereby creating a genuine public safety problem. "[S]ince the Founding era, legislatures have enacted laws to protect innocent persons from especially dangerous uses of weapons *once those perils have become clear*"—which includes when weapons have become "popular." *Duncan*, 133 F.4th at 876-77 (emphasis added); *see id.* at 875-77; *see also, e.g.*, *Ocean State Tactical*, 95 F.4th at 50 (describing "devices that have historically been prohibited once their danger became manifest"). That pattern followed the path of the common law, which reveals a tradition of regulation "emerg[ing] from concern about danger to the public" notwithstanding the "statistical commonality of the threatening weapon." *NAGR*, 153 F.4th at 252 (Nathan, J., concurring); *see id.* at 234 (majority opinion) ("We fully join in Judge Nathan's concurrence."); *see also* ECF No. 66 at 4. Indeed, regardless of the outcome of the "common use" inquiry at step one, numerous courts of appeals have discerned a historical

6

tradition at *Bruen* step two of restricting "unusually dangerous weapons" despite or regardless of commonality. *See NAGR*, 153 F.4th at 246 n.40.

Nor are Plaintiffs correct in tying the "common use" inquiry to how many other jurisdictions do or do not restrict the item at issue today. *See* ECF No. 65 at 9-12; ECF No. 67 at 6-9. Such a jurisdiction-counting test would wrongly hinge the reach of a constitutional right on contemporary legislative choices. *Cf. United States v. Rahimi*, 602 U.S. 680, 740 (2024) (Barrett, J., concurring) (criticizing as "flawed" a "'use it or lose it' view of legislative authority"). That is antithetical to basic principles of federalism, embodied in the Supreme Court's assurance that "[s]tate and local experimentation with reasonable firearms regulations will continue under the Second Amendment." *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010) (plurality opinion) (citation omitted); *see, e.g.*, *Bianchi*, 111 F.4th at 446 ("This conclusion that the Maryland regulation is consistent with the Constitution is not some sort of edict to the rest of the states, obligating them to follow suit."); *Bevis v. City of Naperville*, 85 F.4th 1175, 1203 (7th Cir. 2023) (recognizing same), *cert. denied*, 144 S. Ct. 2491 (2024). And it is particularly nonsensical in this case, where the law at issue is a federal one and restricts silencers and short-barreled rifles nationwide. In short, "whether other jurisdictions do not regulate [the items at issue] is irrelevant and it does not illuminate whether the regulated [items] are in common use today for self-defense." *Knife Rights, Inc. v. Bonta*, No. 3:23-cv-00474, 2024 WL 4224809, at *6 (S.D. Cal. Aug. 23, 2024), *aff'd on other grounds*, 165 F.4th 1330 (9th Cir. 2026).

For their part, Defendants' approach to "common use" appears to be largely correct and in accord with *Bruen* and the cases following it. *See* ECF No. 66 at 3-4. But they articulate the inquiry as "whether a type of weapon is in common use *for a lawful purpose*, like self-defense." *Id.* at 3. While Plaintiffs fail to meet their burden under either articulation of the test, numerous

courts applying *Bruen*—including the Second, Fourth, Seventh, Ninth, Tenth, and D.C. Circuits—have made clear that "common use" turns on self-defense.[4] As the Seventh Circuit put it, although there are "other lawful purposes for weapons," including "sporting uses, collections, and competitions," "the constitutional protection exists to protect the individual right to self-defense." *Bevis*, 85 F.4th at 1192; *accord, e.g. Bianchi*, 111 F.4th at 460-61; *see also Charles*, 159 F.4th at 547 (emphasizing the "'common use for self-defense' rationale for the private right to bear arms"). That is why *Bruen* itself, in analyzing step one, asked specifically whether handguns were "'in common use' today *for self-defense*." *Bruen*, 597 U.S. at 32 (emphasis added) (quoting *Heller*, 554 U.S. at 627).

## CONCLUSION

The Court should grant Defendants' motion for summary judgment and deny Plaintiffs' motion.

---

[4] *See, e.g.*, *United States v. Gomez*, 159 F.4th 172, 177 (2d Cir. 2025), *cert. denied*, --- S. Ct. ----, 2026 WL 795188 (Mar. 23, 2026); *Bianchi*, 111 F.4th at 460-61; *Bevis*, 85 F.4th at 1192; *Alaniz*, 69 F.4th at 1128; *Morgan*, 150 F.4th at 1346; *Hanson*, 120 F.4th at 232-33.

Dated: April 24, 2026

Respectfully submitted,

/s/ Willliam J. Taylor, Jr.

William J. Taylor, Jr. – 3958956 (NY)*
Everytown Law
450 Lexington Avenue, P.O. Box 4184
New York, NY 10163
(646) 324-8215
wtaylor@everytown.org

*Counsel for amicus curiae*
*Everytown for Gun Safety*

/s/ Douglas N. Letter

Douglas N. Letter – 253492 (DC)*
Brady Center to Prevent Gun Violence
840 First Street NE, Suite 400
Washington, DC 20002
(202) 370-8100
dletter@bradyunited.org

*Counsel for amicus curiae*
*Brady Center to Prevent Gun Violence*

/s/ Leigh Rome

Leigh Rome – 5413232 (NY)*
Giffords Law Center to Prevent
Gun Violence
244 Madison Avenue, Suite 147
New York, NY 10016
(415) 433-2062
lrome@giffords.org

*Counsel for amicus curiae*
*Giffords Law Center to Prevent*
*Gun Violence*

/s/ Simon C. Brewer

Simon C. Brewer – 90042403 (DC)*
Ryan Cooper – 1645301 (DC)*
Joel McElvain – 448431 (DC)*

9

Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
sbrewer@democracyforward.org
rcooper@democracyforward.org
jmcelvain@democracyforward.org

Samuel P. Siegel – 90035964 (DC)*
Rupa Bhattacharyya – 1631262 (DC)*
Institute for Constitutional Advocacy and
Protection
Georgetown Law
600 New Jersey Ave. NW
Washington, DC 20001
(202) 662-4048
(202) 661-6730 (fax)
ss5427@georgetown.edu
rupa.bhattacharyya@georgetown.edu

*Counsel for amici curiae
the City of Baltimore, Maryland; the City of
Columbus, Ohio; and Harris County, Texas*

*Admitted *pro hac vice*

10