# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

CHRIS BROWN; ALLEN MAYVILLE; PRIME  
PROTECTION STL, LLC D/B/A PRIME  
PROTECTION STL TACTICAL BOUTIQUE;  
NATIONAL RIFLE ASSOCIATION OF AMERICA;  
FIREARMS POLICY COALITION, INC.;  
SECOND AMENDMENT FOUNDATION; and  
AMERICAN SUPPRESSOR ASSOCIATION,  

    *Plaintiffs*,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS  
AND EXPLOSIVES; ROBERT CEKADA, in  
his official capacity as Director of the Bureau of  
Alcohol, Tobacco, Firearms and Explosives;  
UNITED STATES DEPARTMENT OF JUSTICE;  
and TODD W. BLANCHE, in his official capacity as  
Acting Attorney General of the United States,  

    *Defendants*.

No. 4:25-cv-01162-SRC

**ORAL ARGUMENT REQUESTED**

## PLAINTIFFS' SUPPLEMENTAL BRIEF CONCERNING *WOLFORD v. LOPEZ*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................................... ii

INTRODUCTION ...............................................................................................................1

ARGUMENT .......................................................................................................................2

    I.    *Wolford* abrogates any reading of Eighth Circuit precedent that places "common use" at *Bruen*'s first step or that limits the lawful purposes covered by the plain text..........2

    II.    *Wolford* Confirms Plaintiffs' Argument that the Government Has Failed to Satisfy its Burden Under *Bruen*'s Historical Inquiry to Identify a Historical Practice of Requiring the Registration of Protected Arms. ..............................................................5

        A.    The Government's Proffered Historical Analogues Fail Under *Bruen*'s Historical Inquiry. .................................................................................................5

        B.    *Wolford* Makes Clear That There Is No Carveout for Shall-Issue Licensing Laws Under *Bruen*'s Historical Inquiry.............................................................7

CONCLUSION.....................................................................................................................8

i

**TABLE OF AUTHORITIES**

**Cases**                                                                                             **Page(s)**

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) ..................................................................................8

*United States v. Charles*,
    159 F.4th 545 (8th Cir. 2025) ........................................................................1, 2, 4, 5

*Walls v. Sanders*,
    144 F.4th 995 (8th Cir. 2025) ....................................................................................4

*Wolford v. Lopez*,
    No. 24-1046, 2026 WL 1825723 (U.S. June 25, 2026) ..........................1, 2, 3, 4, 5, 6, 7, 8

**Codes**

26 U.S.C. § 5845(a)(7)............................................................................................................2

18 U.S.C.
    § 921(a)(3) ...........................................................................................................2
    § 921(a)(25) .........................................................................................................2

**INTRODUCTION**

The Supreme Court's decision in *Wolford v. Lopez*, No. 24-1046, 2026 WL 1825723 (U.S. June 25, 2026), supports Plaintiffs' arguments that the National Firearm Act's ("NFA") regulation of suppressors and short-barreled rifles violates the Second Amendment.

First, *Wolford* confirms that the NFA's regulation of suppressors and short-barreled rifles implicates the plain text of the Second Amendment. *Wolford* explains that in conducting *Bruen*'s initial, plain-text inquiry, the only predicate question with respect to the term "Arms" is does the law at issue "concern any form of 'Arms,' *i.e.*, any weapon customarily used for offensive or defensive purposes"? *Id.* at *6 (citation omitted). The answer to that question for suppressors and short-barreled rifles is yes. A firearm equipped with a suppressor is a "form" of an arm, and the NFA's regulation of suppressors "concern[s]" the use of arms by regulating a part that affects the functionality of a firearm. A short-barreled rifle indisputably is a "form" of an arm as well. Consequently, the Second Amendment's plain text presumptively protects conduct involving suppressors and short-barreled rifles and the onus is on the Government to prove that they are "dangerous and unusual" weapons or that its regulatory scheme otherwise comports with the Second Amendment. Pls.' MSJ Br. at 24–40 (Nov. 14, 2025), ECF No. 24; Pls.' MSJ Opp'n & Reply at 31–37 (Jan. 21, 2026), ECF No. 56; Pls.' MSJ Suppl. Br. at 12–18 (Mar. 31, 2026), ECF No. 65; Pls.' MSJ Suppl. Reply at 10–11 (Apr. 14, 2026), ECF No. 67.

To be clear, *Wolford* refutes any notion that questions of "common use" are relevant to *Bruen* step one. The question at the first step simply is whether a challenged law regulates conduct covered by "the Amendment's literal language." *Wolford*, 2026 WL 1825723, at *6. And nothing in the literal language of the Second Amendment turns on whether an arm is in common use. These sorts of historical considerations are "out of place at *Bruen*'s first step." *Id.* at *10. Therefore, even

1

if *United States v. Charles*, 159 F.4th 545 (8th Cir. 2025), could be read as holding that common-use is a plain-text question (and it cannot; discussion of that issue in *Charles* was dicta), any such holding was abrogated by *Wolford*.

Second, *Wolford*'s articulation of *Bruen*'s second step also favors Plaintiffs. *Wolford* supports Plaintiffs' arguments that the few purported historical analogues that the Government has offered in this case do not demonstrate a historical tradition of requiring the registration of protected Arms. Pls.' MSJ Opp'n & Reply at 35–37. The laws differ significantly in their "how" and their "why." *Id.* Consequently, the Government has not and cannot satisfy its burden.

**ARGUMENT**

**I.    *Wolford* abrogates any reading of Eighth Circuit precedent that places "common use" at *Bruen*'s first step or that limits the plain text.**

In *Wolford*, the Supreme Court identified three questions that courts are to ask to determine whether a government regulation implicates the Second Amendment's plain text. "First, does the law apply to 'the people'—which is to say, to 'all members of the political community'?" *Wolford*, 2026 WL 1825723, at *6 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008)). The answer to that question here plainly is yes—the NFA applies to Americans generally. "Second, does it concern any form of 'Arms,' *i.e.*, any weapon customarily used for offensive or defensive purposes?" *Id.* (quoting *Heller*, 554 U.S. at 584). Again, the answer to this question is yes. The challenged NFA provisions concern two forms of arms—firearms equipped with suppressors and short-barreled rifles. There is no room in *Wolford*'s language for reading out of the Second Amendment's protection components such as suppressors. Suppressed firearms are a form of arms. The Government itself classifies suppressors as "firearms." *See* 26 U.S.C. § 5845(a)(7); 18 U.S.C. § 921(a)(3), (a)(25). Alternatively, restricting suppressors *concerns* arms because it affects the functionality of those arms. "Third, does the law place any restrictions on either the 'keep[ing]'

2

(*i.e.*, possession) or the 'bear[ing]' (*i.e.*, carrying) of arms?" *Wolford*, 2026 WL 1825723, at \*6. Once again, the answer here is yes. The NFA bars *all* possession of suppressors and short-barreled rifles unless individuals comply with its burdensome registration scheme.

Because the answer to the three *Wolford* questions is yes, the challenged NFA provisions implicate the plain text of the Second Amendment. As Justice Jackson acknowledged in dissent, under *Wolford*'s application of *Bruen* the textual inquiry is satisfied whenever a law makes it so that "a gun owner cannot do what she wants with her firearm." *Id.* at \*23 (Jackson, J., dissenting).

These inquiries are strictly matters of "the Amendment's literal language." *Id.* at \*6 (maj. op.). Accordingly, *Wolford* makes clear that the "in common use" analysis to determine whether an Arm is "dangerous and unusual" is "out of place at *Bruen*'s first step. At that stage, as we have explained, the question is simply whether a challenged law falls within the Second Amendment's 'plain text.'" *Id.* at \*10 (quoting *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022)). The contrary position effectively poses the question to this Court of whether parties "can smuggle additional limits, drawn from our regulatory tradition, into the plain-text stage of the inquiry," but "[t]he answer is and always has been no." *Id.* at \*14 n.1 (Barrett, J., concurring). As Justice Jackson made plain in her dissent, applying *Wolford* requires that "at step one, courts must look *only* to the 'plain text' of the Second Amendment." *Id.* at \*26 (Jackson, J., dissenting). Accordingly, if a challenged law falls within the Second Amendment's plain text, the burden shifts to the government at *Bruen*'s historical inquiry ("step two") to "show that its challenged law did not infringe the historical understanding of the codified right." *Id.* at \*6 (maj. op.). Any consideration of a historical tradition defining the scope of the preexisting right protected by the Second Amendment—including whether a firearm is "dangerous and unusual"—is done at this second step. *See id.* at \*10; *contra* Govt.'s MSJ Suppl. Br. at 2 (Apr. 7, 2026), ECF No. 66.

*Wolford*'s articulation of *Bruen*'s first step abrogates *Charles* to the extent that it could be read to suggest that *Bruen*'s step one includes additional factors that do not align with this articulation.

First, *Wolford* abrogates any reading of *Charles* that would limit the Second Amendment's textual protection to arms that are in common use. As Plaintiffs have explained, the passage in *Charles* suggesting as much is non-binding dicta. Pls.' MSJ Suppl. Reply at 5–6. But even if that were not the case, *Wolford* would justify this Court in departing from it as having been "cast into doubt by a decision of the Supreme Court," *Walls v. Sanders*, 144 F.4th 995, 1004 n.2 (8th Cir. 2025). Indeed, *Wolford* does not just cast placing common use at the plain-text step into doubt, it definitively rejects it. Again, with respect to the term "Arms," *Wolford* identifies the plain-text question as asking, "does [the challenged regulation] concern *any* form of 'Arms'?*"* 2026 WL 1825723, at *6 (emphasis added), not any form of "Arms" *in common use*. Thus, under *Wolford*, analysis of whether an Arm is in "common use" is irrelevant at *Bruen*'s first, plain-text step. *See id.* at *10; *contra* Govt. MSJ Reply at 22–23 (Feb. 20, 2026), ECF No. 58; Govt. MSJ Suppl. Br. at 2–4. Accordingly, to the extent that *Charles* could be read to hold that an analysis of whether the Second Amendment's plain text covers a certain Arm includes a "common use" analysis (and it cannot), *Wolford* abrogates it.

Second, *Wolford* makes clear that the plain text is not limited to any particular use of firearms. The relevant plain-text question for this purpose is, "does the law place *any* restrictions on *either* the '[keep]ing' (*i.e.*, possession) *or* the 'bear[ing] (*i.e.*, carrying) of arms?" *Wolford*, 2026 WL 1825723, at *6 (emphases added). The question is *not* whether the law places any restrictions on, for example, the use of firearms for a particular purpose like self-defense. Thus, to the extent *Charles* holds that the plain text encompasses only "carrying for a particular purpose—

4

confrontation," 159 F.4th at 547 (quoting *Heller*, 554 U.S. at 584), it is inconsistent with *Wolford* in that respect as well.

II.   ***Wolford* Confirms Plaintiffs' Argument that the Government Has Failed to Satisfy its Burden Under *Bruen*'s Historical Inquiry to Identify a Historical Practice of Requiring the Registration of Protected Arms.**

A.   **The Government's Proffered Historical Analogues Fail Under *Bruen*'s Historical Inquiry.**

*Wolford*'s articulation of *Bruen*'s historical inquiry ("step two") confirms that the Government has failed to satisfy its burden to present evidence of a historical practice of requiring the registration of protected arms. In *Wolford*, the Court explained that when evaluating historical analogues to determine whether a modern law is consistent with the right codified by the Second Amendment, there are "three important inquiries that courts should undertake": (1) "the number of jurisdictions in which they were adopted"; (2) "the extent to which they were well-accepted"; and (3) "whether any analogue or collection of analogues is 'relevantly similar' to the modern law." 2026 WL 1825723, at *6 (quoting *Bruen*, 597 U.S. at 29). This third question requires consideration of "'how' the analogue restricted the keeping or bearing of arms—that is, whether it imposed a restriction similar to that imposed by the challenged law," and "'why' the analogue restricted the keeping or bearing of arms—that is, whether its rationale was similar to that of the new law." *Id.* The "how" and the "why" of the historical analogue and the modern regulation need not be exact, but they "must be close enough to enable a court to say: 'Because this historical law was understood to be compatible with the right codified by the Second Amendment, we can infer that the restriction imposed by the modern law is likewise consistent with that right.'" *Id.* Applying this analysis to Hawaii's law restricting entry on private property open to the public by those carrying a firearm absent express authorization, the Supreme Court rejected as proper historical

5

analogues laws that "prohibited unauthorized hunting of deer or small game on someone else's private property." *Id.* at \*12–14.

This articulation of the proper method of historical inquiry under *Bruen* serves only to reinforce Plaintiffs' arguments that the Government has failed to proffer historical analogues that demonstrate a tradition of requiring the registration of protected arms.

First, the Government argues that historical laws concerning the purported prohibition of carrying dangerous and unusual weapons support the challenged NFA provisions. Govt. MSJ at 29–30 (Dec. 17, 2025), ECF No. 33. But suppressors and short-barreled rifles are not dangerous and unusual, so those laws have no relevance here. Pls.' MSJ Opp'n & Reply at 32–34.

Second, the Government argues that there is a historical tradition of "prohibiting or regulating particularly dangerous and concealable weapons that are uniquely susceptible to criminal misuse." Govt. MSJ Reply at 23–24. But that reasoning cannot be true, since it runs headlong into *Heller*'s holding about handguns, which are overwhelmingly the firearm used by armed criminals (and thus "susceptible to criminal misuse"), yet were held to be fully protected under the Second Amendment and not bannable. Pls.' MSJ Opp'n & Reply at 32–33.

Third, the Government contends that the challenged NFA provisions align with the alleged historical tradition that "many states have long regulated the size of firearms." Govt. MSJ at 30; Govt. MSJ Reply at 24–26. But even if there were such a tradition of being able to regulate firearms based on whether they are easily concealable—which is doubtful given the fact that the Supreme Court has held that handguns are fully protected under the Second Amendment—bans or taxes on "pocket pistols" are not analogous to requiring the registration of protected arms and punishing the failure to do so with felony criminal penalties. Pls.' MSJ Opp'n & Reply at 35.

Baltimore as *amicus curiae*—not the Government to satisfy its burden—raises several other purported analogues. The Court should not consider them because the Government does not rely on them. But even if the Court does consider them, Plaintiffs have explained why each supposed category of historical analogues fails to satisfy the requisite criteria. *Id.* at 35–37. In short, regulations of militia members' firearms are not relevantly similar here because they applied specifically to militia members, not to the general public like the NFA; militia musters were concerned with ensuring that militia-eligible men were ready to serve, not with gatekeeping ownership, disarmament, or criminal enforcement, like the NFA; and taxes on personally held firearms, restrictions on where and to whom individuals could sell firearms, surety laws to prevent firearm use for violence, and prohibitions on firearm use in certain areas do not support the challenged NFA *registration* provisions. *Id.* Moreover, contrary to what *Wolford* explains *Bruen*'s historical inquiry requires, Baltimore does not discuss the degree to which the laws it proffers were accepted or enforced, does not cite explicit (or implied) approvals of these laws from the time these laws were in force, or attempt to explain in detail the "how" or the "why" for the laws. Because it is the Government's burden to satisfy *Bruen*'s historical analysis by demonstrating these factors, this failure is fatal to its arguments.

### B.    *Wolford* Makes Clear That There Is No Carveout for Shall-Issue Licensing Laws Under *Bruen*'s Historical Inquiry.

*Wolford* supports Plaintiffs' argument that there is no carveout from the *Bruen* inquiry for shall-issue licensing laws. Pls.' MSJ Suppl. Br. at 18–20; Pls.' MSJ Suppl. Reply at 11. In explaining the requisite Second Amendment historical analysis that *Bruen* reaffirmed, *Wolford* made clear that it involves just "two steps": the plain-text inquiry and the historical inquiry. *Wolford*, 2026 WL 1825723, at *6, *10. If a challenged law falls within the plain text of the Second Amendment at step one, it is "presumptively unconstitutional," and the burden shifts to the

7

government to show that "its challenged law did not infringe the historical understanding of the codified right." *Id.* at *6.

*Wolford* also supports the argument that licensing and registration are distinct concepts that cannot be conflated. The Supreme Court carefully analyzed the "how" and the "why" of the proposed historical analogues that the government proffered. *Id.* at *6, *10–14. The "how" and the "why" of licensing and registration are different. Licensing is focused on ensuring that the person licensed is not disqualified from possessing arms, and it is typically a one-time process subject to renewal after a specified period. Registration, by contrast, focuses on tracking firearms and who owns them. *Heller v. District of Columbia*, 670 F.3d 1244, 1291 (D.C. Cir. 2011) (Kavanaugh, J., dissenting); Pls.' MSJ Suppl. Br. at 18–19; Pls.' MSJ Suppl. Reply at 11.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion for summary judgment and deny the government's motion.

Dated: July 13, 2026

Respectfully Submitted,

/s/ David H. Thompson
David H. Thompson*
Peter A. Patterson*
Nicholas A. Varone*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
Tel: (202) 220-9600
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
nvarone@cooperkirk.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

9

## CERTIFICATE OF SERVICE

On July 13, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of Missouri, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ David H. Thompson
David H. Thompson
COOPER & KIRK, PLLC