**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

|  |  |
|---|---|
| CHRIS BROWN, *et al.*,<br><br>    *Plaintiffs,*<br><br>    v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, *et al.*,<br><br>    *Defendants.* | No. 4:25-cv-1162 |

**DEFENDANTS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT**

Defendants submit this supplemental brief in response to the Court's order, ECF No. 85, directing the parties to address the impact, if any, of the Supreme Court's recent decision in *Wolford v. Lopez*, 146 S. Ct. 2032 (2026), on the issues in this case. In short, *Wolford* does not meaningfully affect how this Court should resolve plaintiffs' Second Amendment challenge to the National Firearms Act's ("NFA") regulation of short-barreled rifles and suppressors.

*Wolford* concerned a Hawaii statute that prohibited the carrying of firearms onto private property held open to the public without the property owner's express and affirmative consent. *Id.* at 2040. Because that statute "easily met" *Bruen*'s first step by restricting conduct that falls "within the plain text of the Second Amendment"—*i.e.*, "carry[ing] handguns for self-defense"—the Supreme Court turned to *Bruen*'s second step and considered whether the statute was consistent with the principles that underpin the Nation's regulatory tradition. *Id.* at 2047, 2049. Consistent with the arguments the United States made as amicus, the Court held that the Hawaii statute flunked *Bruen*'s second-step analysis because each of the historical laws Hawaii cited was "vastly different from

1

Hawaii's new default rule." *Id.* at 2051. For example, Hawaii's proffered historical "analogues principally targeted unauthorized hunting" on "land where game could be found," whereas the challenged Hawaii statute applied to "retail establishments that residents of cities and suburbs frequent as part of their daily routines." *Id.* at 2051–52. And whereas the "obvious aim" of the historical anti-poaching laws "was to prevent the distinctive harms and risks associated with unauthorized hunting," the purpose of Hawaii's new statute was to vindicate "a Hawaiian tradition" that "disfavor[s] the carrying of guns" in public. *Id.* at 2049, 2052.

*Wolford* thus concerns *how* a government may permissibly regulate *where* firearms are possessed. But that question is conceptually distinct from any of the issues raised in this case, and therefore the Supreme Court's analysis in *Wolford* provides no meaningful guidance for resolving plaintiffs' Second Amendment claim—or at least nothing beyond what existing precedent already offered.

Moreover, *Wolford* alters none of the arguments defendants have made in defense of the NFA's regulation of short-barreled rifles and suppressors:

***First,*** as defendants have explained, *see* Memo. in Opp. to Pls.' MSJ & ISO Defs.' MSJ ("Defs.' Br.") at 29; Reply ISO Defs.' MSJ ("Defs.' Reply") at 20–22, *United States v. Miller*, 307 U.S. 174 (1939), and *District of Columbia v. Heller*, 554 U.S. 570 (2008), foreclose plaintiffs' Second Amendment challenge to the NFA's regulation of short-barreled rifles. As *Miller* and *Heller* make clear, "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns," *Heller*, 554 U.S. at 625; *accord Miller*, 307 U.S. at 178–79—a principle that applies equally to short-barreled rifles. *See* Defs.' Br. at 29; Defs.' Reply at 20–22. Nowhere does *Wolford* address this longstanding principle or *Miller*'s or *Heller*'s (or lower courts', *see* Defs.' Reply at 20–22) application of it. So insofar as plaintiffs suggest that *Wolford* overruled *Miller* and *Heller* in this regard, *see* Pls.' Suppl. Br. Concerning *Wolford v. Lopez* ("Pls.' Supp. Br.") at 6, they're mistaken. *See Am. Trucking Ass'ns v. Smith*, 496 U.S. 167, 190 (1990) (explaining that there is no "*sub*

2

*silentio* overrul[ing]" of prior Supreme Court precedent); *Hohn v. United States*, 524 U.S. 236, 252–53, (1998) ("Our decisions remain binding precedent until we see fit to reconsider them….").

**Second,** plaintiffs insist that *Wolford* "abrogates" Eighth Circuit precedent that places the Second Amendment's "common use for a lawful purpose" inquiry at *Bruen*'s first step. *See United States v. Charles*, 159 F.4th 545, 547 (8th Cir. 2025); *United States v. Veasley*, 98 F.4th 906, 910 (8th Cir. 2024); *see also* Defs.' Suppl. Br. ISO Their MSJ & in Opp. to Pls.' MSJ ("Defs.' Supp. Br.") at 2, ECF No. 66. But *Wolford* never mentions this inquiry (or had any reason to), much less addresses how it fits within *Bruen*'s analytical framework. *Wolford* thus does not contain the type of clearly contrary instruction necessary for this Court to disregard controlling, on-point Circuit precedent. *See United States v. Flynn*, 969 F.3d 873, 882 (8th Cir. 2020) (rejecting that the Supreme Court can "silently overturn[]" Circuit precedent, which "remains the law" that Circuit panels and district courts "must follow … until the en banc court or the Supreme Court *tells us otherwise*" (emphasis added)); *M.M. ex rel. L.R. v. Special Sch. Dist. No. 1.*, 512 F.3d 455, 459 (8th Cir. 2008) (Circuit precedent "is controlling until *overruled* by our court en banc, by the Supreme Court, or by Congress"); *Express Scripts, Inc. v. FTC*, 2025 WL 521812, at *3 (E.D. Mo. Feb. 18, 2025) (even where an intervening Supreme Court decision "casts some doubt" on the "continued viability" of Circuit precedent, that "is not enough for" a district court to "disregard" that precedent). Indeed, post-*Wolford*, reasonable judges continue to debate whether the "common use for a lawful purpose" inquiry belongs at *Bruen*'s first or second step. *Compare Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 2026 WL 2075513, at *11–13 (3d Cir. July 17, 2026) (majority op.), *and id.* at *29 (Matey, J., joined by Mascott, J., concurring), *with id.* at *37–47, (Chung, J., concurring in part and dissenting in part), *id.* at *50–51 (Shwartz, J., joined by Krause, Restrepo, Smith, JJ., dissenting), *and id.* at *59–62 (Krause, J., joined by Restrepo, Smith, JJ., dissenting). This Court should not accept plaintiffs' invitation to declare Eighth Circuit precedent a dead letter where, at a minimum, grounds for reasonable judicial debate on this question still exist. *See Express Scripts*,

3

2025 WL 521812, at *3 ("[W]hether a future panel of the Eighth Circuit would disregard a previous panel opinion based on" a subsequent Supreme Court decision "is a question above [a district court's] pay grade." (cleaned up)).

*Third,* as defendants have explained, *see* Defs.' Supp. Br. at 6–8, the Court can reject plaintiffs' Second Amendment claim because the NFA is a presumptively constitutional shall-issue licensing scheme with respect to the unique weapons it covers (*e.g.,* short-barreled rifles, suppressors), as now three Courts of Appeals have held. *See United States v. Peterson*, 161 F.4th 331, 339 (5th Cir. 2025), *cert. denied*, 2026 WL 1052030 (U.S. Apr. 20, 2026); *United States v. Speed*, 175 F.4th 272, 285–86 (4th Cir. 2026); *United States v. DeBorba*, 177 F.4th 1005, 1012–13 (9th Cir. 2026). Contrary to what plaintiffs contend, *see* Pls.' Supp. Br. 7–8, *Wolford* does nothing to undermine those decisions, as it says nothing about *Peterson*, *Speed*, or *Deborba*, their rules of decision, or how lower courts should understand and apply Section 3 of *Heller* or footnote 9 of *Bruen*.

Nor does *Wolford* support plaintiffs' framing of the NFA as a mere "registration" regime and somehow distinct from a "licensing" regime. *See* Pls.' Supp. Br. 8. In its basic design, the NFA requires that any individual who seeks to lawfully manufacture, make, transfer, receive, or possess an NFA firearm first obtain the government's permission—or, one could say, license—to do so. *See* 26 U.S.C. § 5812(a) ("A firearm shall not be transferred unless … the Secretary has approved the transfer …."); *id.* § 5812(b) ("The transferee of a firearm shall not take possession of the firearm unless the Secretary has approved the transfer …."); *id.* § 5822 ("No person shall make a firearm unless he has … obtained the approval of the Secretary"). And as a *condition* to obtain the government's permission to lawfully engage in these activities, the NFA requires, among other things, that the firearm be registered to whomever will possess it. *See id.* § 5812(a) (requiring registration to the transferee as one of several conditions to obtain approval to lawfully transfer a firearm); *id.* § 5822 (requiring registration to the maker as one of several conditions to obtain approval to lawfully make a firearm); *see also id.* § 5841(c).

4

Plaintiffs contention that the NFA does not function as a licensing scheme is thus belied by the text, structure, and practical operation of the statute—and certainly finds no support in *Wolford*, which says nothing about the NFA. And contrary to what plaintiffs suggest, *see* Pls.' Supp. Br. 8, like other licensing schemes, the NFA *is* designed to reduce the likelihood that those who are not law-abiding and responsible citizens will obtain NFA firearms, including by prohibiting approval of an application where the make or transfer would place the maker or transferee in violation of the law. *See* 26 U.S.C. §§ 5812(a), 5822.

*Fourth,* plaintiffs' arguments regarding American history and tradition, *see* Pls.' Supp. Br. 5–6, extract nothing new from *Wolford*, but simply repeat the same arguments that plaintiffs already made in their principal briefing. Defendants have already explained why those arguments are incorrect and why, in light of "the historical understanding of the codified right" reflected in historical caselaw, precedent, and scholarship, *see Wolford*, 146 S. Ct. at 2044, the NFA is consistent with a longstanding historical tradition of regulating uniquely dangerous and concealable weapons that are particularly susceptible to criminal misuse. *See* Defs.' Br. 29–32; Defs.' Reply 23–28.

\*            \*            \*

Dated: July 27, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280

Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On July 27, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of Missouri, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Jody D. Lowenstein
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice