**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRIS BROWN; ALLEN MAYVILLE; PRIME PROTECTION STL, LLC D/B/A PRIME PROTECTION STL TACTICAL BOUTIQUE; NATIONAL RIFLE ASSOCIATION OF AMERICA; FIREARMS POLICY COALITION, INC.; SECOND AMENDMENT FOUNDATION; and AMERICAN SUPPRESSOR ASSOCIATION, | : : : : : : : : | |
| *Plaintiffs*, | : : | No. 4:25-cv-01162-SRC |
| v. | : : | **ORAL ARGUMENT REQUESTED** |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; ROBERT CEKADA, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; UNITED STATES DEPARTMENT OF JUSTICE; and TODD W. BLANCHE, in his official capacity as Acting Attorney General of the United States, | : : : : : : : : | |
| *Defendants*. | : : | |

## PLAINTIFFS' SUPPLEMENTAL REPLY BRIEF CONCERNING *WOLFORD v. LOPEZ*

## TABLE OF AUTHORITIES

**Cases**                                                                                               **Pages(s)**

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*,
    No. 24-2415, 2026 WL 2075513 (3d Cir. July 17, 2026) ...............................................3, 4

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
    597 U.S. 1 (2022)........................................................................................................1, 3

*United States v. Anderson*,
    771 F.3d 1064 (8th Cir. 2014) ..........................................................................................4

*United States v. Charles,*
    159 F.4th 545 (8th Cir. 2025)............................................................................................4

*Walls v. Sanders*,
    144 F.4th 995 (8th Cir. 2025) ......................................................................................4, 5

*Wolford v. Lopez*,
    146 S. Ct. 2032 (2026).............................................................................1, 2, 3, 4, 5, 6, 7

**Codes**

26 U.S.C.
    § 5812(a) ........................................................................................................................5
    § 5822..............................................................................................................................5

i

Plaintiffs submit this supplemental reply in response to Defendants' supplemental brief and pursuant to the Court's July 1, 2026, Order, ECF No. 85, directing the parties to address whether the Supreme Court's recent decision in *Wolford v. Lopez*, 146 S. Ct. 2032 (2026), impacts the issues in this case.

Contrary to Defendants' insistence that *Wolford* "provides no meaningful guidance for resolving plaintiffs' Second Amendment claim," Defs.' Second Suppl. Br. at 2 (July 27, 2026), ECF No. 91 ("Defs.' Resp."), the Supreme Court in *Wolford* in fact provided explicit guidance concerning the application of the *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1 (2022), test to all manner of Second Amendment cases. While *Wolford* specifically concerned whether the Hawaii statute at issue there was consistent with this Nation's historical tradition of firearm regulation, at the outset of the analysis the Court specified, in precise terms, what courts should consider at each step of *Bruen*'s test. *Wolford*, 146 S. Ct. at 2043–44. That binding clarification and restatement of the *Bruen* framework is highly instructive here—and provides yet further confirmation that the challenged registration provisions violate the Second Amendment.

At the first step, *Wolford* clarified that courts are to ask only three questions, each grounded in the Second Amendment's plain text: whether a challenged law applies to "members of the political community," whether it concerns "any form of 'Arms,'" and whether it "place[s] any restrictions on either the 'keep[ing]' (*i.e.*, possession) or the 'bear[ing]' (*i.e.*, carrying) of arms." *Id.* at 2043 (citations omitted). If the answer to those questions is yes, the analysis proceeds to the second step.

Once the second step is reached, *Wolford* makes clear that a challenged law "is presumptively unconstitutional." *Id.* at 2044. While the Government "may be able to show that its challenged law did not infringe the historical understanding of the codified right," it must surmount

1

a substantial burden to do so. The principal means by which the Government can meet this burden is through the presentation of "what *Bruen* called historical analogues," which "are old legal rules from which a court may draw a strong inference that the modern law at issue is consistent with the codified right." *Id*. (citing *Bruen,* 597 U.S. at 28). But not just any analogues will suffice. Rather, courts must scrutinize "the number of jurisdictions in which they were adopted," "the extent to which they were well-accepted," and whether they are "'relevantly similar' to the modern law." *Id*. This latter factor requires assessment of how and why the historical analogues "restricted the keeping or bearing of arms." *Id*.

Applying the first step, the *Wolford* Court rejected Hawaii's argument that its regulation did not implicate the Second Amendment, notwithstanding that it was framed as a property rule, because it "imposed a new and significant burden on the exercise of the right." *Id.* at 2047; *see also id.* at 2054 (Barrett, J., concurring). At the second step, the Court rejected Hawaii's proposed historical analogues because the purpose those laws sought to achieve—largely, the regulation of poaching—was different from the purpose of the challenged law. *Id.* at 2050–53 (maj. op.).

*Wolford*'s restatement of the *Bruen* test, and its application of the test to the Hawaii law at issue there, establishes two principles that are relevant in this case. First, *Wolford* makes clear that *any* restriction that burdens the keeping or bearing of any form of arms by the people implicates the Second Amendment and is presumptively unconstitutional. And second, *Wolford* directs that historical analogues will not avail to justify a modern law if they are not similar in both purpose and effect to the challenged law. Both of these principles should guide the Court's analysis in this case, and Defendants' arguments to the contrary lack merit.

***First***, Defendants repeat their arguments that *Miller* and *Heller* foreclose challenges to restrictions on short-barreled rifles. Defs.' Resp. at 2. But, as Plaintiffs have previously explained

2

at length, *Miller* and *Heller* said nothing about short-barreled rifles. *See* Pls.' Oppn. to Govt. MSJ & Reply at 32–34 (Jan. 21, 2026), ECF No. 56 ("Pls.' MSJ Oppn."). *Bruen* and *Wolford* make clear that every restriction on the keeping or bearing of any form of arms by the people must be justified on the basis of history. *Wolford*, 146 S. Ct. at 2044. Accordingly, if Defendants' position is that the reasoning that ostensibly justified the Supreme Court's holding in *Miller* as to short-barreled shotguns applies equally to short-barreled rifles, they must satisfy their burden to demonstrate that short-barreled rifles fall within the historical tradition of regulating dangerous and unusual weapons. That inquiry, as *Wolford* makes crystal clear, belongs at *Bruen*'s second step. *Id.* at 2043. And even if *Miller*'s holding on short-barreled shotguns somehow implicated short-barreled rifles—which it does not, since short-barreled shotguns and short-barreled rifles are different forms of arms—a holding about the common use of a particular arm in 1939 would not determine whether that arm is "in common use *today*." *Bruen*, 597 U.S. at 47 (emphasis added). And *that* is the relevant constitutional question. *See* Pls.' MSJ Oppn. at 32, 34.

**_Second_**, Defendants argue that *Wolford* has nothing to say about whether the in "common use for a lawful purpose" inquiry falls within *Bruen*'s first or second step. Defs.' Resp. at 3–4. The only decision they cite on the status of the common use inquiry post-*Wolford*, however, specifically held that the "common use" inquiry belongs at step two. *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, No. 24-2415, 2026 WL 2075513, at *12 (3d Cir. July 17, 2026) (en banc). While there were dissenters on that point, the dissent did not carry the day. The en banc majority opinion of the Third Circuit explained, correctly, that "*Bruen's* first step is fundamentally a textual inquiry. . . . *Wolford* defined 'Arms' to mean 'any weapon customarily used for offensive or defensive purposes.' Common use has *no bearing* on [that] definition[ ]." *Id.* (quoting *Wolford*, 146 S. Ct. at 2043) (citations omitted) (emphasis added). Consistent with Plaintiffs' position, the en banc Third

3

Circuit concluded, "we will address 'common use' at *Bruen*'s second step." *Id.* at *13; *compare id.*, *with* Pls.' Suppl. *Wolford* Br. at 1 (July 13, 2026), ECF No. 87 ("Pls. Suppl. Br."); Pls. MSJ Reply Suppl. Br. at 4–6 (Apr. 14, 2026), ECF No. 67.

Perhaps recognizing the weakness of their position on where the "in common use" inquiry resides within the *Bruen* framework, Defendants retreat to arguing that this Court is purportedly bound on this point by Eighth Circuit precedent. But as Plaintiffs have repeatedly explained, the Eighth Circuit's decision in *Charles* did not *hold* that common-use is a plain-text question; its statements about that issue were the purest of dicta. *See United States v. Charles,* 159 F.4th 545, 547 (8th Cir. 2025); Pls.' Suppl. Br. at 1–2; Pls.' MSJ Reply Suppl. Br. at 5. And even if the Eighth Circuit *had* held that *Bruen*'s first step requires consideration of common use—and again, it did not—that holding would be squarely contrary to *Wolford*. "Common use" is not a part of any of the three questions that the Supreme Court reemphasized comprise the plain text inquiry at step one. *Wolford,* 146 S. Ct. at 2043. Rather, as the Third Circuit rightly held, "common use fits logically in step two's consideration of analogues," because "[w]hether a regulation restricts a weapon in common use for lawful purposes is necessarily a part of 'how' the regulation burdens the right." *ANJRPC*, 2026 WL 2075513, at *12.

Furthermore, Defendants are incorrect to the extent they suggest that this Court must abide by Circuit precedent that is in conflict with the Supreme Court. *Contra* Defs.' Resp. at 3–4. The Eighth Circuit has held that a Circuit panel need not follow a previous panel's decision where it has been "cast into doubt by an intervening Supreme Court decision." *United States v. Anderson*, 771 F.3d 1064, 1067 (8th Cir. 2014). The same standard applies to district courts applying circuit precedent. *See Walls v. Sanders*, 144 F.4th 995, 1004 n.2 (8th Cir. 2025) (explaining that "the district court also was not bound to apply [Circuit precedent] once it had been 'cast into doubt by

4

a decision of the Supreme Court'" (quoting *United States v. Steward*, 598 F.3d 960, 962 (8th Cir. 2010))). Thus, in view of the clear guidance provided by the Supreme Court in *Wolford*, this Court must place the common-use inquiry where it belongs: at *Bruen* step two.

***Third***, *Wolford* forecloses Defendants' argument that the NFA is a presumptively constitutional shall-issue licensing scheme, Defs.' Resp. at 4–5, because it holds that "any restriction[ ]" on "any form of 'Arms'" is "presumptively *unconstitutional*," *Wolford*, 146 S. Ct. at 2043–44 (emphasis added). "[A]ny restriction[ ]" means *any* restriction, *id.* at 2043, and Defendants do not contest that the NFA restricts the use of short-barreled rifles and suppressors. Accordingly, Defendants must justify their registration regime on the basis of history.

Further, even if shall-issue licensing regimes *were* presumptively constitutional under the Second Amendment, the NFA is not a shall-issue licensing regime. *Contra* Defs.' Resp. at 4–5. Unlike a licensing regime, which grants licenses to *persons*, the NFA requires registration of individual *weapons* and imposes onerous requirements on transfers—even if both transferor and transferee are otherwise authorized to possess the arms—backed by severe penalties. *See* Pls.' MSJ Br. at 6–7, 39–40 (Nov. 14, 2025), ECF No. 24; Pls.' MSJ Suppl. Br. at 18–19 (Mar. 31, 2026), ECF No. 65; Pls.' MSJ Reply Suppl. Br. at 11. That is a registration regime, not a licensing regime.

Defendants attempt to recharacterize certain provisions of the NFA as similar to a licensing regime by citing the need for the "Secretary [to] approve[ ]" the transfer or making of firearms, 26 U.S.C. §§ 5812(a), 5822; *see* Defs.' Resp. at 4, but presumably part of gaining the Secretary's approval is complying with the Government's registration requirements. And even if some aspects of the NFA divorced from their statutory context and considered on their own constituted "licensing" provisions—which Plaintiffs do not concede—the Government has put them toward

5

abusive ends by using them in conjunction with a historically unsupportable registration regime. *See* Pls.' MSJ Br. at 39–40; Pls.' MSJ Reply Suppl. Br. at 12.

Finally, Defendants have never before argued, and do not argue here, that the NFA is severable into licensing and non-licensing components. Even if the Court considers the argument that certain components of the NFA qualify as a licensing regime, the remedy would be to exempt those specific provisions from an injunction, not to reject Plaintiffs' Second Amendment claim in its entirety. In no circumstance should the Government be able to leverage an argument about licensing into the authorization to require law-abiding citizens to register their protected firearms with the Government.

**_Fourth_**, *Wolford* makes clear that under *Bruen*'s step two, courts must critically analyze the "why" and the "how" of historical analogues in determining whether they justify a modern regulation. *Wolford*, 146 S. Ct. at 2051–52 (explaining that because the "State's analogues principally targeted unauthorized hunting," they could not support Hawaii's law even though both required prior approval from a landowner to carry a weapon on his or her property). This reasoning supports Plaintiffs' argument that licensing and registration regimes are distinct and should not be conflated, as Plaintiffs have repeatedly explained. Pls.' Suppl. Br. at 8; Pls.' MSJ Suppl. Br. at 18–19; Pls.' MSJ Suppl. Reply at 11; Pls.' MSJ Br. at 40; *contra* Defs.' Resp. at 4–5.

**_Finally_**, Defendants are wrong that *Wolford* does not support Plaintiffs' analysis of Defendants' proposed historical analogues, and they offer no new arguments demonstrating that this Nation has a historical tradition of requiring the registration of protected Arms. *Contra* Defs.' Resp. at 5. *Wolford* emphasized that the Court "must consider whether [an analogue] was widespread, well-known, and widely accepted." 146 S. Ct. at 2053. For the reasons that Plaintiffs have already explained, none of Defendants' proposed analogues would allow this Court to

6

conclude that blanket registration of arms in a central government database "was understood to be compatible with the right codified by the Second Amendment." *Id.* at 2044. Regulations on pocket pistols and the size of militia firearms offer no support for a supposed historical tradition of requiring the registration of protected Arms. Pls.' Suppl. Br. at 6; Pls.' MSJ Oppn. at 35. *Wolford* only makes more evident what the principles underlying *Bruen* already clearly showed: the NFA is unsupported by any relevant historical tradition.

## CONCLUSION

The Court should grant Plaintiffs' motion for summary judgment and deny the Government's motion.

Dated: August 3, 2026                    Respectfully Submitted,


                                         /s/ David H. Thompson
                                         David H. Thompson*
                                         Peter A. Patterson*
                                         Nicholas A. Varone*
                                         COOPER & KIRK, PLLC
                                         1523 New Hampshire Avenue, N.W.
                                         Washington, DC 20036
                                         Tel: (202) 220-9600
                                         dthompson@cooperkirk.com
                                         ppatterson@cooperkirk.com
                                         nvarone@cooperkirk.com

                                         *Admitted *pro hac vice*

                                         *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

On August 3, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of Missouri, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ David H. Thompson
David H. Thompson
COOPER & KIRK, PLLC
