**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| CHRIS BROWN, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, *et al.*,<br><br>*Defendants*. | No. 4:25-cv-1162 |

**DEFENDANTS' THIRD SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendants submit this supplemental brief in response to the Court's order, ECF No. 109, directing them to address whether the state plaintiffs in *Missouri v. ATF*, No. 4:26-cv-1430 (E.D. Mo.), have standing and whether Missouri validly amended its complaint, *see* Am. Compl., ECF No. 107. In short, a routine application of claim preclusion bars several states from joining this lawsuit, and all the states lack standing to seek relief for their residents. But putting those deficiencies aside, Missouri's amended complaint appears to comply with the Federal Rules of Civil Procedure.

***Claim preclusion.*** Under the doctrine of claim preclusion—a species of res judicata—"a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Although this doctrine is widely known and "predates the Republic," *San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323, 336–37 (2005), five states—Kansas, Georgia, Oklahoma, South Dakota, and Utah—seek to join this lawsuit after having just obtained a final judgment based on the *same* claims challenging the *same* National Firearms Act ("NFA") regulations on the *same* constitutional grounds

against the *same* defendants, *see Silencer Shop Found. v. ATF*, 2026 WL 2255460 (N.D. Tex. Aug. 5, 2026). This is a textbook case of claim preclusion; it makes no difference that the states assert different theories of harm or whether they seek a slightly different remedy than they did in *Silencer Shop*.[1] *See Brown v. Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) ("A party cannot avoid the preclusive effect of res judicata by asserting a new theory or a different remedy." (cleaned up)); *accord Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014); *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006). So the Court should dismiss these five states from this case.

***Standing.*** The states ask that the Court enjoin defendants from enforcing the challenged NFA regulations "throughout Plaintiff States and the United States." *See* States' Mot. 2. Supreme Court precedent unequivocally forecloses this relief.

The states' request for a universal injunction ("throughout … the United States") is foreclosed by *Trump v. CASA*, 606 U.S. 831 (2025), where the Supreme Court held that federal courts lack authority to issue such relief. *Id.* at 841, 856; *accord Holmes v. Bax*, 187 F.4th 1028, 1050 (8th Cir. 2026) ("This bears similarity to a universal injunction—a form of relief that federal courts lack authority to issue."). Presumably aware that their request for a universal injunction is unjustifiable, the states don't try to justify it. This Court should therefore deny the request.

The states are no more justified in requesting a statewide injunction ("throughout Plaintiff States"). *See* States' Mot. 2. The states base this request on alleged harms they assert on behalf of their

[1] While it is immaterial for res judicata purposes, there's no daylight between the remedies requested here and in *Silencer Shop*. In *Silencer Shop*, the states sought "a blanket ban on the enforcement" of the challenged NFA regulations "through a universal injunction," 2026 WL 2255460, at *10, whereas here they seek to enjoin enforcement of the same NFA regulations "throughout Plaintiff States and the United States"—*i.e.*, a universal injunction, *see* Resp. to the Court's Order ("States' Mot.") at 2, ECF No. 108. Moreover, these same states are currently requesting that the district court in *Silencer Shop* clarify that its injunction specifically enjoins enforcement of the challenged NFA regulations within their borders, *see* Pl. States' Mot. for Clarification of Scope of Inj. Relief at 2–6, *Silencer Shop Found. v. ATF*, No. 6:25-cv-56 (N.D. Tex. Sept. 11, 2026), ECF No. 144, which is precisely part of the remedy they seek here.

"residents in general," *see* Am. Compl. ¶ 12; *accord* States' Mot. 4 (alleging harms to the states' "populaces"). This is nothing more than a "thinly veiled attempt" to invoke a *parens patriae* theory of standing. *Murthy v. Missouri*, 603 U.S. 43, 76 (2024) (holding that Missouri lacked standing to sue the federal government in a *parens patriae* capacity to protect its residents from alleged harms); *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179–183 (D.C. Cir. 2019) (same). But the states cannot proceed as *parens patriae* against the federal government to protect their residents from the operation of a federal statute. *Murthy*, 603 U.S. at 76; *accord Haaland v. Brackeen*, 599 U.S. 255, 294–95 (2023).[2] That is because the federal government is "the ultimate *parens patriae* of every American citizen." *South Carolina v. Katzenbach*, 383 U.S. 301, 324 (1966). It is thus "no part of [a state's] duty or power to enforce [its residents'] rights in respect of their relations with the federal government," because "[i]n that field it is the United States, and not the state, which represents them as *parens patriae*." *Massachusetts v. Mellon*, 262 U.S. 447, 485–86 (1923). And it makes no difference that the states seek to assert constitutional claims. "It is the State's *representation* that usurps the role of the federal government, not the legal theory underlying its complaint." *Gov't of Manitoba*, 923 F.3d at 183 (emphasis added). There is thus "no reason to treat *parens patriae* actions alleging constitutional claims against the federal government differently from those alleging federal statutory claims," *id.*, as the Supreme Court has made crystal clear, *see, e.g.*, *Haaland*, 599 U.S. at 294–95 (a state "cannot assert equal protection claims on behalf of its citizens" against the federal government); *Katzenbach*, 383 U.S. at 324 (a state has no "standing as the parent of its citizens to invoke [the Fifth Amendment] against the Federal Government").

The states try to "circumvent the limits on *parens patriae* standing," *Murthy*, 603 U.S. at 76, by

[2] The Courts of Appeals have understood Supreme Court precedent to stand precisely for this broad and categorical rule. *See, e.g.*, *Iowa ex rel. Miller v. Block*, 771 F.2d 347, 354–55 (8th Cir. 1985); *Gov't of Manitoba*, 923 F.3d at 179–183; *Washington v. FDA*, 108 F.4th 1163, 1177–78 (9th Cir. 2024); *Town of Milton v. FAA*, 87 F.4th 91, 96 (1st Cir. 2023); *Maryland v. USDA*, 151 F.4th 197, 210 (4th Cir. 2025); *Citizens Against Ruining The Env't v. EPA*, 535 F.3d 670, 676 (7th Cir. 2008); *Wyoming ex rel. Sullivan v. Lujan*, 969 F.2d 877, 883 (10th Cir. 1992).

framing their theories of harm in other terms, none of which do the trick. *First*, while the states claim that the NFA interferes with their "pro-gun policy," all they are alleging is that the NFA imposes regulatory "hurdles" for their residents to obtain short-barreled rifles and shotguns and suppressors, *see* States' Mot. 4, which are nonparty harms that the states cannot assert on behalf of their residents, *Murthy*, 603 U.S. at 76. *Second*, although the states suggest that the NFA prevents them from enforcing a "legal code," *see* States' Mot. 4, they don't point to a *single* state law that the NFA preempts. *Lastly*, the states assert that the NFA indirectly reduces their sales tax revenue by imposing requirements with which some individuals may not want to comply, thereby deterring those individuals from purchasing short-barreled rifles and shotguns and suppressors, transactions that some of the states tax. *See* States' Mot. 4–5. But Eighth Circuit precedent squarely forecloses this theory of harm, *see Block*, 771 F.2d at 353 (holding that alleged "impairment of state tax revenues" resulting indirectly from a challenged federal action is not a cognizable "injury in fact to support state standing" (citation omitted)), which rests on an indirect, attenuated chain of causation that depends on the independent choices of third-party consumers, *see also, e.g.*, *El Paso Cnty. v. Trump*, 982 F.3d 332, 340 (5th Cir. 2020) ("the states alleged that the [challenged federal action] would reduce economic activity in their respective states and therefore cause the loss of general tax revenues," "the exact injury that the Supreme Court reasoned was inadequate for standing in" *Wyoming v. Oklahoma*, 502 U.S. 437 (1992)); *United States v. Texas*, 599 U.S. 670, 680 n.3 (2023) ("federal policies frequently generate indirect effects on state revenues," and when a state claims that "federal law has produced only [that] kind[] of indirect effect[], [its] claim for standing" may be too attenuated to confer standing).

Because no state can proceed in a *parens patriae* capacity, the only other theory of standing the states assert is that some of them are directly regulated by the NFA as acquirers, possessors, and transferors of NFA firearms. *See* States' Mot. 5. But Kansas, Florida, Georgia, Iowa, Nebraska, New Hampshire, Ohio, Oklahoma, South Dakota, and Utah submitted *no* evidence in support of their

standing. They have thus left the record empty of any evidence whatsoever upon which the Court could find that they are entitled to injunctive relief. *See Packard Elevator v. ICC*, 782 F.2d 112, 115 (8th Cir. 1986) (a plaintiff must "substantiate" any claim of irreparable harm with "proof"); *accord*, *e.g.*, *Texas v. United States*, 126 F.4th 392, 421 (5th Cir. 2025) (narrowing injunction to apply only to the state plaintiff that demonstrated an actual injury).

Accordingly, Missouri is the only state that has attempted to substantiate a valid theory of standing, *see* States' Mot. 5 (citing Decl. of Captain Scott B. White), under which they may pursue injunctive relief only to remedy alleged harms resulting from the NFA's direct regulation of the state in its sovereign capacity as an acquirer and possessor of NFA firearms—nothing more.

***The amended complaint.*** Missouri appears to have complied with the Federal Rules of Civil Procedure in amending its complaint. Rule 15(a)(1)(A) allows a plaintiff to amend its pleading once as a matter of course within twenty-one days after serving it. Here, Missouri amended its complaint on September 24, fourteen days after serving its original complaint on defendants.

* * *

Dated: October 7, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Mont. Bar No. 55816869
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005

Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

On October 7, 2026, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Eastern District of Missouri, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice